# EXHIBIT 2

**Defendants' Reply to Plaintiffs' Exhibit B**

*In re Resideo Technologies, Inc. Securities Litigation*

I.    **Defendants' "Risk Factors" Regarding Resideo's Operating History and Financial Success as Part of Honeywell Were Allegedly Inadequate and/or Themselves Misleading**

| Defendants' Disclosure of Risk | Reasons Disclosure Was Allegedly Inadequate and/or Itself Misleading | Defendants' Reply |
|---|---|---|
| "We have no operating history *as an independent, publicly traded company*, and our historical combined financial information is not necessarily representative of the results we would have achieved *as an independent, publicly traded company* and may not be a reliable indicator of our future results." Ex. M at 25; ¶201. | • Inadequate in its *failure to disclose the fact that Resideo had no operating history as anything at all, and misleading because it implied that Resideo had some operating history (albeit not as an independent, public company).* ¶¶201- 205.<br><br>• Misleading in that it implies without basis that the purported historical information was at worst an imperfect proxy for Resideo's ability to perform independently, when, in fact, each piece of Honeywell's business extracted to form Resideo had never operated together, but only as constitutive parts of separate Honeywell divisions. | Adequate and not misleading when considered in the context of other pre-Spin-Off disclosures by Honeywell and Resideo. (Mot. at 7-10; Reply at 6-9.) |
| *"[W]e have neither operated with a residential Comfort & Care, Security & Safety, or home solutions business focus,* nor combined that with a distribution business in the past." Ex. M at 25; ¶201. | Inadequate in that it did *not disclose the fact that both "Comfort & Care" and "Security & Safety" were themselves purely creations of the Spin-Off and that they had been thrown together from various other pieces of Honeywell's business* and misleading in that *it implies that these divisions themselves existed* | Adequate and not misleading because Honeywell and Resideo repeatedly disclosed to investors that the various components that came to form Resideo had not operated together prior to the Spin-Off and that the P&Ls for Homes (which was spun off into Resideo) "physically [had] to [be] create[ed]" in the year leading up to |

**Defendants' Reply to Plaintiffs' Exhibit B**

*In re Resideo Technologies, Inc. Securities Litigation*

| Defendants' Disclosure of Risk | Reasons Disclosure Was Allegedly Inadequate and/or Itself Misleading | Defendants' Reply |
|---|---|---|
| | *previously (separately and with a broader focus)*. ¶203. | the Spin-Off because Homes and its components did not previously exist as a separate distinct entities within Honeywell. (Mot. at 7-11; Reply at 6-9; Ex. E at 3, 8.)<br><br>Plaintiffs also take this disclosure out of context and fail to include the entire sentence which—when read in full—clearly indicates that "Comfort & Care" and "Security & Safety" were new entities formed to consolidate related products and businesses under one umbrella: "Furthermore, *while the individualized businesses or their predecessors have a history of product development going back over 100 years*, we have neither operated with a residential Comfort & Care, Security & Safety, or home solutions business focus, nor combined that with a distribution business in the past." (Ex. M at 25.) (emphasis added) |
| "*Prior to the Spin-Off, we operated as part of Honeywell's broader corporate organization*, and Honeywell performed various corporate functions for us." Ex. M at 25; ¶201. | Misleading in light of the fact that *Resideo did not operate as anything at all within Honeywell's broader corporate organization but was an amalgam of individual product lines*. ¶203. | Adequate and not misleading for the reasons listed in the two rows above.<br><br>Further, Plaintiffs' statement that "Resideo did not operate as anything at all within Honeywell" ignores the fact that Homes existed as a distinct entity within Honeywell in the year leading up to the |

**Defendants' Reply to Plaintiffs' Exhibit B**

*In re Resideo Technologies, Inc. Securities Litigation*

| Defendants' Disclosure of Risk | Reasons Disclosure Was Allegedly Inadequate and/or Itself Misleading | Defendants' Reply |
|---|---|---|
| | | Spin-Off, with Honeywell reporting separate P&L numbers for Homes throughout 2018.  (Reply at 8-9; Ex. F at 4; Ex. G at 13; Ex. H at 8.) |

**Defendants' Reply to Plaintiffs' Exhibit B**

*In re Resideo Technologies, Inc. Securities Litigation*

**II.    Defendants' Risk Factors Regarding Resideo's Supply Chain Were Allegedly Inadequate and/or Themselves Misleading**

| Defendants' Disclosure of Risk | Reasons Disclosure Was Allegedly Inadequate and/or Itself Misleading | Defendants' Reply |
|---|---|---|
| "*We must attract and retain qualified people to operate our systems . . . . .* Any disruption to our business due to such issues . . . *could* have an adverse effect on business, financial condition, results of operations and cash flows." Ex. M at 31; Ex. A at 28. | Misleading because: (i) *Honeywell spun off Resideo without any value engineers* (¶¶99-101); and (ii) *Honeywell similarly kept the engineering talent necessary to develop new products* (¶¶101, 151, 155, 161, 181, 190) meaning that Resideo's business *was already experiencing adverse effects on its business and financial condition*. | Plaintiffs' "reasons" for why this disclosure is misleading are themselves misleading:<br><br>• Plaintiffs disingenuously claim here, in their Complaint, and throughout their Opposition that Resideo had *no* value engineers following the Spin-Off, (¶¶99, 101, 315, 417; Opp. at 50), but this is simply not true. Though Resideo's value engineering teams were "largely depleted" prior to the Spin-Off, value engineering did not cease entirely, but instead continued at a diminished level. (¶¶37, 177, 181; Ex. FF at 3, 7-9.)<br><br>• Nefkens made clear in the Q3 2019 earnings call that Resideo had confidence throughout 2018 and 2019 that it had sufficient "capabilities and . . . the right talent to drive" product development and value engineering. (Ex. FF at 8.) Nefkens called this a "poor assumption[]" on the part of |

**Defendants' Reply to Plaintiffs' Exhibit B**

*In re Resideo Technologies, Inc. Securities Litigation*

| | | |
|---|---|---|
| | | Resideo, as it became clear "pretty quickly in Q3 [2019] that those [engineering] teams were not making the right progress," at which point Resideo made "some pretty significant changes" to address these problems. (Ex. FF at 8.)<br><br>Plaintiffs also fail to plead that this disclosure was misleading and instead rely on *ex post* statements made by Defendants (¶¶99-101, 181-182, 190), which is inactionable fraud-by-hindsight (Mot. at 25-29; Reply at 1-2, 6, 9, 21-22). |
| "In addition, organizational changes, attrition, *labor relations difficulties, or workforce stoppage could have an adverse effect on our business . . .*" Ex. M at 41; Ex. A at 29. | Inadequate because it is *vague boilerplate that would apply to any company. Further inadequate in that it did not warn that Resideo currently had no value engineering team* (¶¶99-101) and a paucity of engineering talent (¶¶151, 155, 161, 181, 190). | Adequate and not misleading for the same reasons stated in the row immediately above. |
| "This Information Statement contains 'forward-looking statements' that involve risks and uncertainties . . . including but not limited to . . . *inability to recruit and retain qualified personnel.*" Ex. M at 57. | Inadequate and misleading because *Honeywell kept all of the value engineers in the Spin-Off and did not begin recruiting replacements until the end of the Class Period.* ¶¶99-101, 316. In other words, whereas any company might be unable to recruit and retain qualified personnel, Resideo had not attempted to retain the value | Adequate and not misleading for the same reasons stated in the two rows above.<br><br>Plaintiffs also fail to plead any particularized facts that Resideo "had not attempted to retain" value engineers during the Spin-Off and |

5

**Defendants' Reply to Plaintiffs' Exhibit B**

*In re Resideo Technologies, Inc. Securities Litigation*

| | | |
|---|---|---|
| (The statement is repeated in the Form 10-K and is inadequate and misleading for the same reasons). Ex. A at 20. | engineers that supported its products and was not attempting to recruit new ones. ¶316.  Honeywell likewise retained engineering talent necessary to develop new products. ¶¶101, 161, 190. | "was not attempting to recruit new ones."  Plaintiffs cite only to ¶316, a post-class period statement, but that paragraph merely quotes Nefkens' response to an analyst question about how Resideo had lost value engineering talent.  In the referenced statement, Nefkens explained the value engineering issue, the negative impact it was having, and what Resideo was doing about it, but nowhere does he speak to Resideo's efforts (or alleged lack thereof) as to personnel retention pre-Spin-Off or personnel recruitment post-Spin-Off. |
| "We depend on the recruitment and retention of qualified personnel, and our *failure to attract and retain such personnel could adversely affect our business . . .*" Ex. M at 41; Ex. A at 38. | Inadequate and misleading because it (i) is *vague boilerplate that applies to any company* and (ii) did *not disclose that Honeywell kept all of the value engineers in the Spin-Off and that Resideo did not begin recruiting replacements until the end of the Class Period.* ¶¶99-101. | Adequate and not misleading for the same reasons stated in the three rows above. |
| "Disruptions, or the need to relocate any of our facilities, *could* significantly disrupt our business . . . A disruption, including work stoppage, *supply chain failures*, natural disasters, weather-related disruptions, or *other disruptions at one or more of our production facilities* could have adverse | Inadequate because it *did not disclose that Honeywell had retained the critical manufacturing facilities, already significantly disrupting Resideo's business* (*"Maybe our manufacturing facilities aren't in the right places with the right freight lanes"*).  Misleading because it falsely *portrayed such disruption as a mere* | Plaintiffs fail to plead that this disclosure was misleading at the time it was made and instead base their assertion on *ex post* statements made by Defendants (¶188), which is inactionable fraud-by-hindsight (Mot. at 25-29; Reply at 1-2, 6, 9, 21-22). |

**Defendants' Reply to Plaintiffs' Exhibit B**

*In re Resideo Technologies, Inc. Securities Litigation*

| | | |
|---|---|---|
| effects on our business." Ex. M at 35; Ex. A at 31. | *contingency* (i.e., that they might never occur, when they already had.). ¶¶108, 188. | |
| "Raw material price fluctuations, the ability of key suppliers to meet quality and delivery requirements, or catastrophic events can increase the cost of our products and services, impact our ability to meet commitments to customers and cause us to incur significant liabilities." Ex. M at 36; Ex. A at 33. | Did not adequately disclose that the *EMEA RTS business was already being adversely impacted by the near-doubling price in microprocessors*, which began prior to the Spin-Off. ¶116. | Adequate and not misleading because Resideo disclosed the EMEA RTS supply chain issues in its first quarterly earnings call (Q3 2018) on November 14, 2018: "As many of you have heard from Honeywell on their Q3 earnings call, we experienced some spin-related supply chain issues that temporarily increased our backlog. . . . We are actively addressing these supply chain issues, and we're already seeing product flows moving back towards normal values." (¶¶218-219, 350; Ex. O at 5.) Nefkens explicitly highlighted that the supply chain issues were related to the EMEA business: "I'll talk a little bit about the spin-related supply chain issues . . . We also have some plant shifts that we're making in Europe as a result of the spin." (¶220; Ex. O at 9.) |
| "As a stand-alone company, we will not have the same product diversity or scale and may not have similar purchasing power or access to capital markets." Ex. M at 31; Ex. A at 27. | Inadequate and misleading because *it portrayed loss of purchasing power as a contingency when it was unavoidable and had already occurred.* ¶118. Further inadequate because it was *superseded by subsequent false statements to the effect that* | Adequate and not misleading as to "purchasing power" because this disclosure was accurate at the time made and was in no way "unavoidable" as Plaintiffs claim. Plaintiffs support this allegation with nothing more than the unsubstantiated |

**<u>Defendants' Reply to Plaintiffs' Exhibit B</u>**

*In re Resideo Technologies, Inc. Securities Litigation*

| | | |
|---|---|---|
| | *the supply chain issues had largely been resolved.* ¶220. | opinion of CW10. (¶118.) As detailed in the Motion and the Reply, the confidential witnesses Plaintiffs rely on present unreliable speculation. (Mot. at 33-34, 38-41; Reply at 18-21.)<br><br>Plaintiffs also fail to show that this disclosure was "superseded" by allegedly false statements (¶220), which, as detailed in the row above, were accurate statements that reflected contemporaneous disclosure of supply chain issues. |

**Defendants' Reply to Plaintiffs' Exhibit B**

*In re Resideo Technologies, Inc. Securities Litigation*

**III.     Defendants' Risk Disclosures About Resideo's New Product Launches Were Allegedly Inadequate**

| Defendants' Disclosure of Risk | Reasons "Disclosure" Was Allegedly Inadequate and/or Itself Misleading | Defendants' Response |
|---|---|---|
| "Our future results depend upon a number of factors, including our ability to . . . (iv) *develop, manufacture and bring compelling new products to market quickly and cost-effectively*." Ex. M at 28; Ex. A at 24. | Inadequate because this *vague boilerplate would apply to any company*.  It did not warn that *Resideo lacked the technical talent to timely launch products ahead of competitors or develop the very new products that Defendants were falsely touting as in development (or already developed)*. ¶¶99-101, 143-155, 161, 181, 190. | Plaintiffs fail to demonstrate that this disclosure was misleading at the time it was made and instead base their assertion on *ex post* statements made by Defendants (¶99-100, 181, 190), which is inactionable fraud-by-hindsight (Mot. at 25-29; Reply at 1-2, 6, 9, 21-22). |
| "The efficient operation of our business requires *substantial investment in technology infrastructure systems*." Ex. M at 31; Ex. A at 27. | Inadequate and misleading because it *did not warn that Resideo was not making the required substantial investment to eliminate substantial power outages that were occurring with Resideo product line that constituted 85% of its connected thermostats*. ¶¶120-133. | Adequate and not misleading because, as Resideo announced in its 2018 Q4 earnings release, it was making a number of investments—including to bolster the company's infrastructure and to boost R&D. (Mot. at 14; Ex. R at 2, 4-5; Ex. S at 9, 11.) |
| "Our future results depend upon a number of factors, including our ability to (i) identify emerging technological trends, (ii) *develop and maintain competitive products, in part by adding innovative features* that differentiate our products from those of our competitors and prevent commoditization of | Inadequate because this *vague boilerplate would apply to any company*.  It did not warn that *Resideo lacked the technical talent to develop timely launch products ahead of competitors or the new products that Defendants were touting as in* | Plaintiffs fail to demonstrate that this disclosure was misleading at the time it was made and instead base their assertion on *ex post* statements made by Defendants (¶99-100, 181, 190), which is inactionable fraud-by- |

**Defendants' Reply to Plaintiffs' Exhibit B**

*In re Resideo Technologies, Inc. Securities Litigation*

| | | |
|---|---|---|
| our products, (iii) grow our market share, (iv) develop, manufacture and bring compelling new products to market quickly . . ." Ex. M at 24; Ex. A at 28. | *development (or already developed).* ¶¶99-101, 143-155, 161, 181, 190. | hindsight (Mot. at 25-29; Reply at 1-2, 6, 9, 21-22). |

10