# EXHIBIT 3

**Defendants' Reply to Plaintiffs' Exhibit C**

*In re Resideo Technologies, Inc. Securities Litigation*

**I.    Alleged Facts Demonstrating Falsity and/or Scienter Regarding Resideo's Supply Chain**

| Alleged Facts | Alleged Source | Alleged Basis for Knowledge | Basis for Unreliability |
|---|---|---|---|
| *Resideo had no supply chain-optimizing value engineers* after the Spin-Off, which are necessary to control costs and would take over a year to replace. ¶101; see also ¶¶6, 22, 37, 99. | CW3<br><br>*Responsible for RTS, home comfort and security systems software development at Resideo, 6/17-3/19. ¶60.* | CW3 had firsthand knowledge of Spin-related supply chain issues by virtue of CW3's position with Honeywell and then Resideo, including *oversight of software development for Resideo's home comfort and security businesses and attendance at breakout sessions where supply chain problems were discussed.* ¶60. | • Fired early on in class period (March 2019) (Mot. at 35)<br><br>• Low-level employee (Mot. at 34–35; Reply at 20)<br><br>• Factual mistake in other allegation, rendering witness unreliable (Mot. at 37)<br><br>• Speculative and non-specific allegation (Mot. at 35–37)<br><br>• Purports to attest to facts that occurred at the Company after he was fired (Mot. at 35)<br><br>• No knowledge of Defendants' knowledge as to the allegation (Mot. at 34–35; Reply at 22–23)<br><br>• No alleged connection to Defendants' knowledge of EBITDA projections, or Defendants' knowledge as to the falsity of any of the challenged statements (Mot. at 33, 38)<br><br>• Allegation pertains to already disclosed facts regarding Resideo's |

1

**Defendants' Reply to Plaintiffs' Exhibit C**

*In re Resideo Technologies, Inc. Securities Litigation*

| Alleged Facts | Alleged Source | Alleged Basis for Knowledge | Basis for Unreliability |
|---|---|---|---|
| | | | supply chain issues and history of being formed from various Honeywell subcomponents (Mot. at 13, 17, 19, 30-32; Reply at 9) |
| Resideo's new management – charged with building a supply chain from scratch – *came from failed companies, had no experience with Honeywell's product lines and had no supply chain knowledge.* ¶108. | CW12 *ADI Inside Sales Representative*, 11/12-8/19. ¶69. | CW12 had *firsthand knowledge* Resideo hired new management to build Resideo's supply chain by virtue of CW12's position as an ADI Sales Representative. ¶108. CW12 also personally observed increased shipping charges after the Spin-Off. *Id.* | • Employed at ADI (separate business unit as unit that resulted in disappointing earnings) (Mot. at 39) <br><br>• Left during Class Period (August 2019) (Mot. at 39) <br><br>• Low-level employee (Mot. at 39) <br><br>• No alleged connection to Defendants' knowledge of EBITDA projections, or Defendants' knowledge as to the falsity of any of the challenged statements (Mot. at 33) <br><br>• Allegation pertains to already disclosed facts regarding Resideo's supply chain issues and history of being formed from various Honeywell subcomponents (Mot. at 7–12, 13, 17, 19, 30–32; Reply at 6–9) |
| *Nefkens attended a meeting in London for* | CW2 *General Manager* | CW2 *was one of Nefkens' direct reports for five months in 2019 and* | • Left during Class Period (2019) (Mot. at 39) |

**Defendants' Reply to Plaintiffs' Exhibit C**

*In re Resideo Technologies, Inc. Securities Litigation*

| Alleged Facts | Alleged Source | Alleged Basis for Knowledge | Basis for Unreliability |
|---|---|---|---|
| *the explicit purpose of doing a "deep dive" on the root cause of microprocessor supply chain issues* in EMEA – problems that *precipitated a "crisis" that had a "huge impact" on margins.* ¶¶116, 335. | *Residential Combustion – Europe, 2015-19.* ¶59. | *had firsthand knowledge* of EMEA RTS supply chain issues resulting from CW2's position as General Manager – Residential Combustion. ¶¶59, 116. | • Low-level employee (Mot. at 39)<br><br>• Immaterial localized observations (Mot. at 39–40; Reply at 20–21)<br><br>• No alleged connection to Defendants' knowledge of EBITDA projections, or Defendants' knowledge as to the falsity of any of the challenged statements (Mot. at 33) |
| *Nefkens also attended at least two monthly review meetings at which Resideo's product availability issues were discussed, while Defendant Ragan attended at least one such meeting.* ¶335. | CW2 | CW2 was one of Nefkens' direct reports for five months in 2019 and had *firsthand knowledge* of EMEA RTS supply chain issues resulting from CW2's position as General Manager – Residential Combustion. ¶¶59, 116. | • Left during Class Period (2019) (Mot. at 39)<br><br>• Low-level employee (Mot. at 39)<br><br>• Immaterial localized observations (Mot. at 39–40; Reply at 20–21)<br><br>• No alleged connection to Defendants' knowledge of EBITDA projections, or Defendants' knowledge as to the falsity of any of the challenged statements (Mot. at 33)<br><br>• Allegation pertains to already disclosed facts regarding Resideo's supply chain issues and history of being formed from various Honeywell subcomponents (Mot. at |

**Defendants' Reply to Plaintiffs' Exhibit C**

*In re Resideo Technologies, Inc. Securities Litigation*

| Alleged Facts | Alleged Source | Alleged Basis for Knowledge | Basis for Unreliability |
|---|---|---|---|
| | | | 7–12, 13, 17, 19, 30–32; Reply at 6–9) |
| *Supply chain issues* – including inventory problems due to the split in manufacturing facilities – were *obvious* and *widely known within Resideo. Pervasive inventory problems across both ADI and Products & Solutions* touching virtually every product line of the Company were obvious to individuals in management positions within the Company. ¶104. | CW1 *Honeywell Environmental Controls and Combustion Representative, 9/15-10/18; Resideo Distribution Representative*, 10/18-6/19. ¶58. <br><br> CW5 *ADI Inside Sales Representative*, 8/17-9/19. ¶62. <br><br> CW7 *ADI Senior Inside Sales Representative*, 7/10-7/14; ADI Branch Manager, 7/14-10/19. ¶64. <br><br> CW11 *ADI Branch Manager*, 7/17 to 6/18; *ADI Inside* | • CW1 had *firsthand knowledge of HVAC supply chain problems and personally dealt with upset customers*. ¶58. <br><br> • CW5 had *firsthand knowledge of Honeywell and Resideo security and fire systems inventory and backorder problems*. ¶62. <br><br> • CW7 had *firsthand knowledge of inventory of Resideo products sold through ADI – including security systems – aware of the problems caused by the split in manufacturing facilities after the Spin-Off*. ¶64. <br><br> • CW11, as a Branch Manager and then Inside Sales Representative, had *firsthand knowledge into Resideo's security product inventory both before and after the Spin- Off*. ¶68. <br><br> • CW13, as a Senior Inside Sales Representative, had *firsthand* | • All CWs left during Class Period (CW1 (June 2019); CW5 (September 2019); CW7 (October 2019); CW11 (February 2019); CW13 (February 2019); CW14 (July 2019)) (Mot. at 39) <br><br> • All were low-level employees (Mot. at 39) <br><br> • All but CW1 was an employee of the ADI unit (separate unit from P&S, which was cause for disappointing earnings results) (Mot. at 39) <br><br> • Uncorroborated and localized observations (Mot. at 39–40; Reply at 19–21) <br><br> • No alleged connection to Defendants' knowledge of EBITDA projections, or Defendants' knowledge as to the falsity of any of the challenged statements (Mot. at 33) <br><br> • Allegations pertain to already disclosed facts regarding Resideo's supply chain issues and history of |

**Defendants' Reply to Plaintiffs' Exhibit C**

*In re Resideo Technologies, Inc. Securities Litigation*

| Alleged Facts | Alleged Source | Alleged Basis for Knowledge | Basis for Unreliability |
|---|---|---|---|
| | *Sales Representative, 6/18- 2/19. ¶68.*<br><br>CW13<br>*ADI Senior Inside Sales Representative* 9/15-2/19. *¶70.*<br><br>CW14<br>*Resideo Inside Sales Representative* 10/18-7/19. *¶71.* | *knowledge of supply chain and inventory problems both before and after the Spin-Off, and informed his direct report of backorder issues. ¶¶70,* 109-110.<br><br>• CW14, as an Insider Sales Representative, had firsthand knowledge of supply chain and inventory problems and attended meetings multiple times a week at which inventory backorders came up. ¶¶71, 111-112. | being formed from various Honeywell subcomponents (Mot. at 7–12, 13, 17, 19, 30–32; Reply at 6–9) |

5

**Defendants' Reply to Plaintiffs' Exhibit C**

*In re Resideo Technologies, Inc. Securities Litigation*

II.    **Facts Allegedly Demonstrating Falsity and/or Scienter Regarding Project GRIP**

| Alleged Facts | Alleged Source | Alleged Basis for Knowledge | Basis for Unreliability |
|---|---|---|---|
| By February 2019, *Resideo had only sent GRIP to ADT for beta testing*, and the rollout of GRIP was delayed past May 2019. ¶¶138- 140. | CW3 | CW3 *was responsible for the financials and product development for all of Resideo's software products.* ¶¶60, 141. | • Fired early on in class period (March 2019) (Mot. at 35)<br><br>• Low-level employee (Mot. at 34–35; Reply at 20)<br><br>• Factual mistake in other allegation, rendering witness unreliable (Mot. at 37)<br><br>• Purporting to know "facts" that took place after he was fired and gone from Company (Mot. at 35)<br><br>• No evidence that Defendants knew their statements regarding GRIP to be false at time they were made (Reply at 22)<br><br>• Immaterial, no alleged connection to EBITDA projections (Mot. at 33) |

6

**Defendants' Reply to Plaintiffs' Exhibit C**

*In re Resideo Technologies, Inc. Securities Litigation*

| | | | |
|---|---|---|---|
| *Resideo was subject to contractual penalties for missed milestones– including delays in delivery date and in production. ¶¶139-141.* | CW3 | CW3 *reviewed Resideo's contract with ADT and confirmed both the delivery delay and the existence of the penalty provisions that Resideo later characterized as "rebates." ¶259.* | <ul><li>Fired early on in class period (March 2019) (Mot. at 35)</li><li>Low-level employee (Mot. at 34–35; Reply at 20)</li><li>Factual mistake in other allegation, rendering witness unreliable (Mot. at 37)</li><li>Purporting to know "facts" that took place after he was fired and gone from Company (Mot. at 35; Reply at 15–16)</li><li>Allegation based on lay interpretation of a legal document (Reply at 16)</li><li>No allegation of what management knew (Reply at 15–16)</li><li>Immaterial, no alleged connection to EBITDA projections (Mot. at 33)</li></ul> |
| Defendants were aware GRIP would not ship on time because there were *daily meetings at which CW8 repeatedly told* | CW8 *Resideo cloud software* | CW8 *reported directly to Resideo's Director of Software Engineering, attended daily meetings during which he and* | <ul><li>Left during Class Period (June 2019) (Mot. at 39)</li></ul> |

**Defendants' Reply to Plaintiffs' Exhibit C**

*In re Resideo Technologies, Inc. Securities Litigation*

| | | | |
|---|---|---|---|
| *Lauren Legris, VP Engineering, Security, of development delays*, who in turn reported this information to CTO Edgar Tu. ¶¶143, 146, 343, 344. | *developer 11/18-6/19.* ¶65. | *others voiced concerns with regard to the progression of the GRIP product.* ¶¶ 65, 143-145, 343-344. Specifically, CW8 attended daily meetings with VP Engineering, Security Legris at which GRIP's intractable problems were discussed, information that was then conveyed to Nefkens by his righthand man CTO Tu. ¶¶146, 344. | • Low-level employee (Mot. at 39)<br><br>• Speculation as to whether reported to Edgar Tu and whether Individuals Defendants had knowledge (Mot. at 60; Reply at 22–23)<br><br>• Immaterial, no alleged connection to EBITDA projections (Mot. at 33)<br><br>• No evidence that Defendants knew their statements regarding GRIP to be false at time they were made (Mot. at 60; Reply at 22–23) |

8

**Defendants' Reply to Plaintiffs' Exhibit C**

*In re Resideo Technologies, Inc. Securities Litigation*

**III.    Alleged Facts Demonstrating Falsity and/or Scienter Regarding Project STORM**

| Alleged Facts | Alleged Source | Alleged Basis for Knowledge | Basis of Unreliability |
|---|---|---|---|
| *Defendant Nefkens was informed by CTO Edgar Tu in early 2019 that STORM could not be completed for another two to three years* because the hardware had not yet been developed. ¶147. <br><br> *Defendant Nefkens was informed the timely development and rollout of STORM was impossible at the opening ceremony of Resideo's Austin office*, to which Nefkens replied: "This is what I'm promising the market." ¶148. | CW3 | • CW3 was *responsible for managing STORM's financials and attended meetings about STORM with Resideo's CTO Edgar Tu as well as VP Scott Harkins*. ¶147. <br><br> • CW3 was also *present at Resideo's opening ceremony in Austin, Texas where Nefkens insisted that STORM be developed by May of 2019*. ¶148. | • Fired early on in class period (March 2019) (Mot. at 35) <br><br> • Low-level employee (Mot. at 34–35; Reply at 20) <br><br> • Factual mistake in other allegation, rendering witness unreliable (Mot. at 37) <br><br> • Allegation took place after leaving Resideo (Mot. at 35) <br><br> • Speculation as to whether facts alleged communicated to Nefkens (Mot. at 59) <br><br> • Immaterial, no alleged connection to EBITDA projections (Mot. at 33) <br><br> • No evidence that Defendants knew their statements regarding STORM to be false at time |

**Defendants' Reply to Plaintiffs' Exhibit C**

*In re Resideo Technologies, Inc. Securities Litigation*

| | | | |
|---|---|---|---|
| | | | they were made (Mot. at 59–60) |
| At an April 15, 2019 meeting in Minneapolis, Minnesota, *Defendant de Masi was directly informed that STORM would not be ready to launch by December 2019* because the software had not yet been developed and that the team would need at least another year, to complete STORM. ¶150. | CW15 *Program Manager responsible for mobile app development* 10/18-late Spring 2019. ¶72. | CW15 *attended the April 2019 meeting and observed the communication to Defendant de Masi.* ¶150. | • Left during Class Period (late Spring 2019) (Mot. at 39)<br><br>• Low-level employee (Mot. at 39)<br><br>• Speculation as to what De Masi understood (Mot. at 59–60)<br><br>• Immaterial, no alleged connection to EBITDA projections (Mot. at 33; Reply at 17)<br><br>• No evidence that Defendants knew their statements regarding STORM to be false at time they were made (Mot. at 59–60) |
| *Defendant de Masi was directly informed that STORM would take up to five years to develop* at a meeting with Resideo's Head of Product, Global Connected Home Nate Craft | CW9 *Channel Marketing Manager* 12/14-10/18. ¶66. | CW9, responsible for marketing Resideo's new home products, *attended the meeting with Defendant de Masi.* ¶149. | • Low-level employee (Mot. at 39)<br><br>• Speculation as to what was communicated (Mot. at 40; Reply at 22–23) |

**Defendants' Reply to Plaintiffs' Exhibit C**

*In re Resideo Technologies, Inc. Securities Litigation*

| | | | |
|---|---|---|---|
| and Global Director, Connected Services David Quam. ¶149. | | | • Speculation as to what De Masi understood (Mot. at 40; Reply at 22–23)<br><br>• Immaterial, no alleged connection to EBITDA projections (Mot. at 33; Reply at 17)<br><br>• No evidence that Defendants knew their statements regarding STORM to be false at time they were made (Mot. at 59–60) |

11

**Defendants' Reply to Plaintiffs' Exhibit C**

*In re Resideo Technologies, Inc. Securities Litigation*

**IV.     Alleged Facts Demonstrating Falsity and/or Scienter Regarding Resideo's Thermostats**

| Alleged Facts | Alleged Source | Alleged Basis for Knowledge | Basis of Unreliability |
|---|---|---|---|
| *Defendant Nefkens knew about TCC problems and was one of the executives deciding whether to disclose TCC outages*. ¶121. | CW15 | CW15 was *part of the team responsible for resolving TCC problems, attended "hundreds of meetings" with CTO Edgar Tu to discuss the issues* and had firsthand knowledge of the executives deciding what would or would not be mentioned to the public about the TCC outages. ¶¶121-125. | • Alleged TCC problems immaterial to earnings, no alleged connection to EBITDA projections (Mot. at 27 n.13, 33)<br><br>• Left during Class Period (late Spring 2019) (Mot. at 39)<br><br>• Low-level employee (Mot. at 39)<br><br>• Speculation as to whether Tu informed Nefkens (Mot. at 40–41)<br><br>• Speculation as to what Nefkens understood (Mot. at 40–41)<br><br>• No evidence that Defendants knew their statements regarding TCC app to be false at time they were made (Mot. at 27) |
| Undisclosed *TCC crashes – which affected 85% of Resideo's smart thermostats –* | Internal Company emails, including attachment to an | • The *January 8, 2019 email concerns a request for suggested fixes (that was* | CW15: |

12

**Defendants' Reply to Plaintiffs' Exhibit C**

*In re Resideo Technologies, Inc. Securities Litigation*

| Alleged Facts | Alleged Source | Alleged Basis for Knowledge | Basis of Unreliability |
|---|---|---|---|
| "resulted in direct impact to the customers of the company" meaning they could not control their thermostats during outages. ¶¶120-124. | email to CW15 dated January 8, 2019. ¶124.<br><br>CW15 | *ultimately sent to CTO Tu*) stating as the "Justification for the change," that the "Performance and Reliability" issues pertaining to the TCC app had "resulted in direct impact to the customers of the company" meaning that whenever there was an outage, TCC customers could not control their thermostats from the app. ¶124.<br><br>• CW15 heard internally Resideo's customer care team was handling 100 customer complaints per hour during outages. ¶123. | • Alleged TCC problems immaterial to earnings, no alleged connection to EBITDA projections (Mot. at 27 n.13, 33)<br><br>• Left during Class Period (late Spring 2019) (Mot. at 39)<br><br>• Low-level employee (Mot. at 39)<br><br>• Speculative allegation as to what management knew (Mot. at 40–41)<br><br>Internal Company emails:<br><br>• Immaterial to earnings, no alleged connection to EBITDA projections (Reply at 20-21)<br><br>• Unreliable, as Plaintiffs do not attach actual documents (Reply at 21)<br><br>• No allegation of what management knew (Reply at 22) |

13

**Defendants' Reply to Plaintiffs' Exhibit C**

*In re Resideo Technologies, Inc. Securities Litigation*

| Alleged Facts | Alleged Source | Alleged Basis for Knowledge | Basis of Unreliability |
|---|---|---|---|
| In the month of January 2019 alone, Resideo's *TCC app experienced persistent outages on at least January 8th, 9th, 11th, 21st, 22nd, 25th, 28th, 29th and 31st 2019*. ¶125. | Internal PowerPoint. ¶125. | An internal PowerPoint presentation that was prepared stated that in the month of January *2019* alone, "The TCC/LCC Outages occurred on the 8th, 9th, 11th, 21st, 22nd, 25th, 28th, 29th and 31st."¶125. | Internal PowerPoint:<br><br>• Immaterial to earnings, no alleged connection to EBITDA projections (Reply at 20-21)<br><br>• Unreliable, as Plaintiffs do not attach actual documents (Reply at 21)<br><br>• Localized observations (Reply at 20-21)<br><br>• No allegation of what management knew (Reply at 22) |
| The *TCC app problems were widespread and internally acknowledged among Resideo employees*, who recognized customers were leaving for competitors. ¶126. | Internal Company emails, including two January 23, 2019 emails among Resideo employees, Mandy Hopmann, Senior Product Marketing Manager, and Mike J. Bauman, a Product Specialist, in which the authors provided actual complaints as examples of the problems contractors were having. ¶126. | Two emails sent on January 23, 2019 provided an "Example experience from a frustrated contractor below" stating "[i]n general he says using TCC has been a bad experience. Slow registration has been a normal experience for him. He is also upset by the shortcomings of TCC and says that our competitors are passing us by." He also said "the TCC issues are making it | Internal Company emails:<br><br>• Immaterial to earnings, no alleged connection to EBITDA projections (Reply at 20-21)<br><br>• Unreliable, as Plaintiffs do not attach actual documents (Reply at 21)<br><br>• No allegation of what management knew (Reply at 22) |

14

**Defendants' Reply to Plaintiffs' Exhibit C**

*In re Resideo Technologies, Inc. Securities Litigation*

| Alleged Facts | Alleged Source | Alleged Basis for Knowledge | Basis of Unreliability |
|---|---|---|---|
| | | difficult for him to continue to use our thermostats." ¶ 126. | |
| Resideo's management had *no plan to address the TCC app crashes* created by increased demand, and the app suffered from "terrible implementation." ¶¶131-132. | Internal emails including 5/21/2019 Email from DevOps Manager Cristian Sturek, who reported to Vic Cutrone, the Global CoE (Centers of Excellence) Leader of the Connected Technologies Group – problems remained unresolved. ¶¶131-132; CW15 | • A May 21, 2019 email summarizes the TCC outage problem, and the fact that Resideo continued to sell TCC app thermostats without regard to the fact that the "TCC load increases approx. 1000 devices / day and this means approx. 1000 users / day are getting added new to the system. *But LITTLE or NO focus given to Size or Scale infra to meet the increasing growth/demands.*" ¶131.<br><br>• A May 21, 2019 follow-up email in which Sturek remarked: "I stand by what I said, *we DO NOT know the entire system, no way, no how!* We guess, and sometimes we guess right. I know *you believe the implementation of TCC is great. I disagree 100%.* | CW15:<br><br>• Alleged TCC problems immaterial to earnings, no alleged connection to EBITDA projections (Mot. at 27 n.13, 33)<br><br>• Left during Class Period (late Spring 2019) (Mot. at 39)<br><br>• Low-level employee (Mot. at 39)<br><br>• Speculative allegation of what management knew (Mot. at 41)<br><br>• No evidence that Defendants knew their statements regarding TCC app to be false at time they were made (Mot. at 27)<br><br>Internal Emails:<br><br>• Immaterial to earnings, no alleged connection to |

**Defendants' Reply to Plaintiffs' Exhibit C**

*In re Resideo Technologies, Inc. Securities Litigation*

| Alleged Facts | Alleged Source | Alleged Basis for Knowledge | Basis of Unreliability |
|---|---|---|---|
| | | You mentioned the architect who worked on it; when said architect, who worked on the system, doesn't know all the ins and outs, it's because of a terrible implementation…" ¶132.<br><br>According to CW15, CTO Tu provided no recommendations as to how to get the job done, but merely instructed the engineers to fix the problem. ¶128. | EBITDA projections (Reply at 20-21)<br><br>• Unreliable, as Plaintiffs do not attach actual documents (Reply at 21)<br><br>• No allegation of what management knew (Reply at 22) |
| *Defendants were given a presentation discussing the reasons for Resideo's delayed introduction of the T9 and T10 thermostats.* ¶152.<br><br>*T-Series delays were widely discussed* within Resideo, including during a breakout session at Resideo's annual meeting in Orlando in January 2019. ¶162. | CW3 | • CW3 had *firsthand knowledge* of the T-Series thermostats, including *oversight of all software development for all Resideo products, including for the T9 and T10 thermostats and attended breakout sessions where problems were discussed.* ¶162.<br><br>• CW3 *attended the Orlando meeting and the breakout session at which employees* | • Alleged TCC problems immaterial to earnings, no alleged connection to EBITDA projections (Mot. at 27 n.13, 33)<br><br>• Fired early on in class period (March 2019) (Mot. at 35)<br><br>• Factual mistake as to date and location of meeting, rendering allegation and |

16

**Defendants' Reply to Plaintiffs' Exhibit C**

*In re Resideo Technologies, Inc. Securities Litigation*

| Alleged Facts | Alleged Source | Alleged Basis for Knowledge | Basis of Unreliability |
|---|---|---|---|
| | | *were instructed to communicate via WhatsApp because it was "less discoverable."* ¶166. Specifically, at the meeting, the following issues were discussed: (1) challenges presented by Resideo's competition to the T-series thermostats; (2) loss of major channel/security partners; (3) problems with the "Cloud," and customer churn on the security side of the business; (5) Resideo had no pathway forward to introduce new products; and (6) TCC app outages. | witness unreliable (Mot. at 37)<br><br>• Allegation based on hearsay (Mot. at 36–37)<br><br>• Low-level employee (Mot. at 34–35; Reply at 20)<br><br>• Speculative allegation (Mot. at 60)<br><br>• No evidence that Defendants knew their statements regarding T-series to be false at time they were made (Mot. at 55) |

17