# EXHIBIT C

# Section 1: 8-K (FORM 8-K)

## UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

## FORM 8-K

**CURRENT REPORT**
**Pursuant to Section 13 or 15(d)**
**of the Securities Exchange Act of 1934**

**Date of Report (Date of earliest event reported): October 21, 2019**

# RESIDEO TECHNOLOGIES, INC.
**(Exact name of registrant as specified in its charter)**

| Delaware | 001-38635 | 82-5318796 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

| 901 E 6th Street, Austin, Texas | 78702 |
|---|---|
| (Address of principal executive offices) | (Zip Code) |

**Registrant's telephone number, including area code: (763) 954-5204**

**(Former name or former address, if changed since last report)**

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐    Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐    Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐    Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐    Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class: | Trading Symbol: | Name of each exchange on which registered: |
|---|---|---|
| Common Stock, par value $0.001 per share | REZI | New York Stock Exchange |

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act of 1933 (§230.405 of this chapter) or Rule 12b-2 of the Securities Exchange Act of 1934 (§240.12b-2 of this chapter).

Emerging growth company  ☐

CASE 0:19-cv-02863-WMW-BRT    Doc. 93-3    Filed 11/09/20    Page 3 of 15

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act.   ☐

**Item 2.02.        Results of Operations and Financial Condition.**

On October 22, 2019, Resideo Technologies, Inc. (the "Company") issued a press release announcing preliminary financial results for the third quarter of fiscal 2019, which is furnished herewith as Exhibit 99. The information furnished pursuant to this Item 2.02, including Exhibit 99, shall not be deemed "filed" for purposes of Section 18 of the Securities Exchange Act of 1934 (the "Exchange Act") or otherwise subject to the liabilities under that Section and shall not be deemed to be incorporated by reference into any filing of the Company under the Securities Act of 1933 or the Exchange Act.

**Item 5.02.        Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers.**

On October 22, 2019, the Company announced that the employment of Joseph D. Ragan III, the Company's Executive Vice President and Chief Financial Officer, will terminate effective at the close of business on November 6, 2019. Robert Ryder has been appointed to serve as the Company's Interim Chief Financial Officer effective November 7, 2019. At the same time, AnnMarie Geddes, the Company's Vice President and Controller, was appointed Interim Chief Accounting Officer, effective October 22, 2019. The Company is commencing a search for a successor chief financial officer.

Mr. Ryder, age 59, currently serves as the President of Horsepower Advisors, LLC, a consulting firm through which his services have been retained by the Company. Mr. Ryder consults with companies on financial algorithms, cost, and revenue structures as well as organizational designs. Immediately prior to that role, he served as the chief financial officer for Constellation Brands, a global beverage and alcohol company, from 2007 to 2015. Mr. Ryder has also held chief financial officer positions with IMG and American Greetings Corporation, as well accounting and finance positions of increasing responsibility at PepsiCo, Inc. Mr. Ryder started his career in public accounting at Price Waterhouse. He received a bachelor's degree from the University of Scranton in Accounting and Finance. Mr. Ryder is also a Certified Public Accountant.

Ms. Geddes, age 46, has served as the Company's Vice President and Controller since October 2018. Prior to joining the Company, Ms. Geddes held various finance positions of increasing responsibility at Boart Longyear, a leading global provider of drilling services and equipment, from February 2007 to September 2018. Ms. Geddes started her career in public accounting at Deloitte. She received a bachelor's degree and a master's of accountancy degree from Utah State University.

In connection with Mr. Ragan's departure from the Company, if Mr. Ragan signs and does not rescind a separation agreement, including a release in favor of the Company, and he complies with certain restrictive covenants, he is entitled to receive severance benefits in accordance with and subject to the conditions of the Company's Severance Plan for Designated Officers (the "Severance Plan"). In addition, subject to the conditions of the Severance Plan and other conditions set forth in the separation agreement provided to Mr. Ragan, Mr. Ragan will also be entitled to receive (i) a pro-rated payout of Mr. Ragan's fiscal 2019 annual incentive award based on the Company's actual performance against the performance goals and one-half of the amount tied to individual performance, (ii) continued vesting of a pro-rated portion of Mr. Ragan's restricted stock units that were granted to him on October 29, 2018 and (iii) reimbursement of the cost of real estate commission fees on the sale of his home and shipment of household goods if Mr. Ragan relocates to the metropolitan area where he resided prior to Austin, TX in the six-month period following the termination of his employment. The restrictive covenants applicable to Mr. Ragan include a one-year non-competition and non-solicitation restriction.

Pursuant to the engagement letter with Horsepower, the Company will pay Horsepower a bi-weekly fee of $115,000 as compensation for Mr. Ryder's services, as well as reimbursement of Mr. Ryder's reasonable and authorized travel expenses related to performance of the services. Mr. Ryder will report to the Chief Executive Officer and the Board of Directors. Horsepower will cause Mr. Ryder to devote substantially all of his full-time efforts to performance of services to the Company. The engagement will continue in effect for six months unless terminated earlier by either party upon 30 day's written notice.

As Interim Chief Accounting Officer, Ms. Geddes will be entitled to participate in the Severance Plan.

**Item 9.01.**        **Financial Statements and Exhibits.**

(d) Exhibits.

| EXHIBIT NO. | DESCRIPTION |
| --- | --- |
| 10.1 | Engagement Letter with Horsepower Advisors, LLC dated October 22, 2019. |
| 99.1 | Resideo Technologies, Inc. Preliminary Earnings Press Release dated October 22, 2019. |

3

## SIGNATURE

Pursuant to the requirements of the Securities Exchange Act of 1934, as amended, the Registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

Date: October 22, 2019                                    RESIDEO TECHNOLOGIES, INC.

|  |  |
|---|---|
| By: | /s/ Jeannine J. Lane |
| Name: | Jeannine J. Lane |
| Title: | Executive Vice President, General Counsel, Corporate Secretary and Chief Compliance Officer |

4

([Back To Top])

# Section 2: EX-10.1 (EX-10.1)

**Exhibit 10.1**



October 22, 2019

Robert Ryder
President
Horsepower Advisors, LLC
192 Knickerbocker Road
Pittsford, NY 14534

xxxxxxxxx@gmail.com

*Re: Engagement Letter*

Dear Bob:

I am pleased to confirm Resideo's engagement of Horsepower Advisors, LLC ("Horsepower") to provide certain interim management services effective November 7, 2019 ("Effective Date"), subject to the terms and conditions of this engagement letter and the attached General Business Terms, incorporated herein by reference.

## SERVICES

Horsepower will make available Robert Ryder, President, to perform the services of Interim Chief Financial Officer ("Interim CFO"). The Interim CFO will exercise the duties and responsibilities customarily associated with the role.

Mr. Ryder will report directly to the Company's Chief Executive Officer and the Board of Directors as required. Horsepower will cause Mr. Ryder to perform these duties and responsibilities in a diligent, efficient, and faithful manner, and to the best of his abilities, and will further cause him to devote substantially all his full-time efforts to the business and affairs of Resideo. The Interim CFO shall oversee the Finance, Accounting, Tax, Controllership, Investor Relations, Information Technology, and Acquisitions & Divestitures functions.

## D&O INSURANCE

Resideo shall provide Mr. Ryder with coverage under the applicable Resideo insurance policies that protect directors and officers from liability.

**FEES AND EXPENSES**

Resideo will pay Horsepower bi-weekly a fixed fee of $115,000 ($57,500 per week beginning on Sunday of each week) for these Services. Resideo will also reimburse Horsepower for reasonable and authorized travel expenses incurred by the Interim CFO as a result of performing the Services.

**GENERAL BUSINESS TERMS**

The attached General Business Terms apply to the engagement. This letter and attached business terms supersede any previous agreement, whether written or verbal, between the parties.

Please indicate your agreement with these terms by signing and returning to me a copy of this letter. We look forward to working with you.

If you have any questions or need any further information about this engagement, please contact me or Steve Kelly directly.

Sincerely,

/s/ Jeannine Lane

Jeannine Lane
General Counsel

Acknowledged and Accepted:

HORSEPOWER ADVISORS, LLC

By:  Robert Ryder
     President

/s/ Robert Ryder                                                    10/21/19
Robert Ryder                                                        Date

**ATTACHMENT TO ENGAGEMENT LETTER dated October 21, 2019**

**between Resideo Technologies, Inc. and Horsepower Advisors, LLC**

**GENERAL BUSINESS TERMS**

These General Business Terms, together with the Engagement Letter (including any attachments, exhibits and schedules) constitute the entire understanding and agreement (the "Agreement") between Resideo Technologies, Inc. ("Resideo") and Horsepower Advisors, LLC ("Horsepower") (collectively, "the Parties") with respect to the services and deliverables described in the Engagement Letter. If there is a conflict between these General Business Terms and the terms of the Engagement Letter, these General Business Terms will govern, except to the extent the Engagement Letter explicitly refers to the conflicting term herein.

**SERVICES**

Horsepower will provide the services and furnish the deliverables (the "Services") described in the Engagement Letter, as may be modified from time to time by mutual consent. Any adjustment must be mutually agreed to by the Parties in writing. Notwithstanding any disagreement between the Parties regarding the impact of a change, Horsepower will proceed diligently with its performance under the Engagement Letter pending resolution of the disagreement.

**PERFORMANCE OF THE SERVICES**

Horsepower will make available Robert Ryder ("Interim CFO") to perform the Services as outlined in the Engagement Letter. Resideo will provide working space, resources and materials to facilitate the Interim CFO's performance of the Services.   Horsepower will ensure that the Interim CFO observes and complies with Resideo's security, safety, health, and environmental procedures, rules, regulations, and policies; failures of Horsepower and/or the Interim CFO to comply with security, safety, health, or environmental issues subject the Interim CFO to immediate dismissal from the site at Resideo's sole discretion.

**TERM AND TERMINATION**

This Agreement will begin on the Effective Date and continue in full force and effect for six (6) months unless terminated earlier as provided below. Notwithstanding anything herein to the contrary in this Agreement, either Resideo or Horsepower may terminate this Agreement for convenience upon 30 days' written notice.

In the event of a material breach of this Agreement, the non-breaching Party may terminate this Agreement immediately.

If Resideo terminates this Agreement, in whole or in part, for either convenience or cause, Resideo's sole liability to Horsepower, and Horsepower's sole and exclusive remedy, is payment for Services completed and accepted by Resideo before the date of termination.

**FEES, EXPENSES AND PAYMENT TERMS**

**Fees.** The fees outlined in the Engagement letter include: (a) all applicable taxes and other charges including but not limited to all sales, use, or excise taxes; and (b) all items, intellectual property, and services necessary or incidental to perform the Services in accordance with this Agreement.

**Reimbursable Expenses.** Each invoice will separately set forth expenses authorized by Resideo. Horsepower will ensure that the Interim CFO follows the travel and expense policies generally applicable to employees of Resideo, with the exception that the Interim CFO may purchase business class tickets as he deems necessary and appropriate. Horsepower will submit invoices describing the Reimbursable Expenses and payments due.

**REPRESENTATIONS AND WARRANTIES**

Horsepower hereby represents and warrants to Resideo that:

(a)   the Interim CFO possesses the proper skill, training and background necessary to perform the Services; and that all Services will be performed in a competent and professional manner and will conform to Resideo's requirements as set forth in the Engagement Letter;

(b)   the Interim CFO will perform his/her obligations in a manner that complies with applicable laws, regulations, ordinances and codes; and

(c)   Interim CFO is free to divulge to Resideo, without any obligation to or violation of any right of others, any and all information, practices or techniques which he will describe, demonstrate, divulge or in any other manner make known to Resideo during the performance of Services.

**INDEPENDENT CONTRACTOR STATUS**

Horsepower acknowledges and agrees that it:

(a)   is an independent contractor and as such its employees, including the Interim CFO, will not be entitled to any benefits applicable to Resideo employees, including any benefits applicable to Resideo executive officers such as those under the Severance Pay Plan for Designated Officers; and

(b)   has sole responsibility for the payment of all applicable governmental taxes including federal, state and local income taxes and for all employment and disability insurance, Social Security and other similar taxes. By reason of Horsepower's independent contractor status, Resideo is not required to and will not withhold federal, state or local income or any other tax from any payment to Horsepower or its employees under this Agreement and may file information returns with the United States Internal Revenue Service or similar state or local agencies regarding such payment under conditions imposed by applicable laws or regulations.

**OWNERSHIP OF DELIVERABLES**

**Ownership of Work Product**. The exclusive right, title and interest in and to all works performed under this Agreement, and all materials, source code, information, know-how and deliverables prepared or developed as a result of Services performed, both as individual items or a combination of components and whether or not the Services are completed ("**Work Product**") will vest in Resideo. The Work Product will be deemed to be work made for hire and made in the course of Services rendered and will belong exclusively to Resideo, with Resideo having the sole right to obtain, hold and renew, in its own name or for its own benefit, patents, copyrights, registrations or other appropriate protection. To the extent that exclusive right, title or interest in the Work Product may not originally vest in Resideo as contemplated in this Agreement (e.g., the Work Product does not constitute works made for hire), Horsepower and/or the Interim CFO hereby irrevocably assign, transfer and convey to Resideo all right, title and interest to the Work Product. Horsepower will, immediately upon request of Resideo, or upon termination, cancellation or expiration of this Agreement, turn over to Reisdeo all Work Product and any Resideo documents or other materials held by or on behalf of Horsepower, together with all copies thereof.

**Records**. Horsepower agrees that all records and copies of records relating to Resideo's operations, investigations and business made or received by it during the period of this Agreement are Resideo's exclusive property, and it agrees to keep the same at all times in its custody and subject to its control, and shall surrender the same at the termination of this Agreement unless earlier requested by Resideo.

**CONFIDENTIALITY, NO-COMPETE, DATA PRIVACY AND SECURITY**

**Confidentiality Obligations.** Horsepower agrees to preserve as confidential all information related to Resideo's business and activities, including those of its customers, suppliers and other entities with whom Resideo does business, which may be obtained by Horsepower from any source or may be developed as a result of this Agreement ("Confidential Information"). Horsepower agrees to hold such information in trust and confidence for Resideo and not to disclose such Confidential information to any person, firm or enterprise, or use any such information for its own benefit, or the benefit of any other party, unless authorized by Resideo in writing. Information shall not be considered confidential to the extent, but only to the extent, that such information is: (i) already known free of any restriction at the time it is obtained; (ii) subsequently learned from an independent third party free of any restriction; or (iii) available publicly.

**Return of Confidential Information.** Horsepower will return or destroy, at Resideo's discretion, Confidential Information and all copies upon the earlier of Resideo's written request or termination of this Agreement and will certify in writing to the return or destruction within 30 calendar days. Notwithstanding the foregoing, Horsepower may retain one copy of the Confidential Information to the extent required for evidentiary purposes, which shall be maintained in accordance with the confidentiality obligations set forth above.

**Competition.** Horsepower acknowledges that services performed for Resideo may relate to past, present or future strategies, plans, business activities, methods, processes and/or information which afford Resideo certain competitive or strategic advantages. Horsepower agrees that during the term of this Agreement and for a period of one (1) year thereafter, Horsepower shall ensure that the Interim CFO shall not perform or agree to perform services or provide materials or information, directly or indirectly, for or in support of any Competitor of Resideo. For purposes of this section, "**Competitor**" means any person, firm or enterprise conducting a business or providing or supporting a product or service substantially similar to any of Resideo's. If there is any doubt whether any person, firm or enterprise is deemed a Competitor, Horsepower shall obtain Resideo's advance written approval (not to be unreasonably withheld) which decision shall be deemed final and controlling for all purposes hereunder.

**Data Privacy Obligations:** Horsepower and/or Interim CFO will comply with those policies generally applicable to Resideo's employees with respect to data privacy obligations. Horsepower agrees to execute any additional documentation reasonably required by Resideo to share information in accordance with data privacy laws in any jurisdiction for which the Interim CFO will be subject to receiving any restricted data.

**Equitable Remedies.** Horsepower acknowledges and agrees that, in the event of a breach or threatened breach of any of the foregoing provisions, Resideo shall have no adequate remedy in damages and, accordingly, shall be entitled to an injunction against such breach or threatened breach.

## GENERAL PROVISIONS

**Entire Agreement and Modifications**. This Engagement Letter and these General Business Terms contains the entire Agreement between the Parties and such Agreement supersedes and replaces any prior or inconsistent agreements, negotiations, representations or promises, written or oral, between the Parties respecting the subject matter hereof. Neither Party has relied on any promises, inducements or representations by the other, except those expressly stated in this Agreement. No modification of this Agreement will be binding on either Party unless set forth in a writing signed by an authorized representative of both Parties. No course of dealing, prior dealings, usage of trade or course of performance will be used to modify, supplement or explain any terms used in this Agreement.

**Waiver**. The failure of either Party to enforce at any time any of the provisions of this Agreement will not be construed to be a continuing waiver of those provisions, nor will any failure prejudice the right of the Party to take any action in the future to enforce any provision.

**Severability**. If any provision of this Agreement is held to be illegal, invalid, or unenforceable by a court of competent jurisdiction, that provision will be severed from this Agreement; the remaining provisions will remain in full force and effect; and a similar legal, valid and enforceable provision will be substituted in lieu of the severed provision.

**Headings and Captions**. Headings and captions are for convenience of reference only and do not alter the meaning or interpretation of any provision of this Agreement.

**Assignment and Subcontracting**. This Agreement will inure to the benefit of and be binding on the Parties and their respective permitted successors and assigns. Horsepower may not assign this Agreement or any rights or obligations under this Agreement or subcontract all or any aspect of the work called for without the prior written approval of Resideo.

**Notices**. All notices relating to this Agreement ("**Notices**") must be in writing. Notices to the Parties will be sent to their respective addresses appearing below. Any Notice will be deemed given on the date delivered if delivered personally; the next business day if sent by recognized overnight courier; 3 business days after being mailed certified first class mail, postage prepaid; or upon confirmation receipt that it was transmitted satisfactorily if transmitted by facsimile or email to addresses or numbers set forth below or as otherwise provided in writing by either Party.

**If to Resideo:**

Mr. Steve Kelly
Executive Vice President & Chief Human Resources Officer
Resideo Technologies, Inc.
901 East 6th Street
Austin, TX 78702
Email: xxxxx.xxxxxx@resideo.com

With an additional copy to:
Ms. Jeannine Lane
Executive Vice President, General Counsel & Chief Compliance Officer
Resideo Technologies, Inc.
901 East 6th Street
Austin, TX 78702
Email: xxxxxxxx.xxxx@resideo.com

**If to Horsepower:**

Robert Ryder
President
Horsepower Advisors, LLC
192 Knickerbocker Road
Pittsford, NY 14534
Email: xxxxxxxxx@gmail.com

**Publicity**. Horsepower will not use Resideo's name or marks or refer to or identify Resideo in any advertising or publicity releases or promotional or marketing materials without Resideo's prior written approval.

**Survival**. All provisions of this Agreement which by their nature should apply beyond its term will remain in force after any termination or expiration of this Agreement.

LIMITATION LIABILITY. EXCEPT AS SPECIFICALLY SET FORTH IN THIS AGREEMENT, IN NO EVENT WILL RESIDEO BE LIABLE TO HORSEPOWER OR THE INTERIM CFO FOR INDIRECT, INCIDENTAL, EXEMPLARY, PUNITIVE, SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING WITHOUT LIMITATION DAMAGES FOR LOST PROFITS, REGARDLESS OF THE FORM OF ACTION, WHETHER IN CONTRACT, TORT OR OTHERWISE AND EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE AGGREGATE LIABLITY OF RESIDEO UNDER THIS AGREEMENT WILL IN NO CASE EXCEED $1 MILLION DOLLARS.

**Integrity and Compliance**. When performing Services at Resideo's facility, Horsepower will ensure that the Interim CFO observes and complies with Resideo's security procedures, rules, regulations, policies, working hours and holiday schedules. Horsepower will ensure that the Interim CFO complies with all laws, regulations and ordinances and with Resideo's Code of Business Conduct ("**Code**") in performing this Agreement.

**US Equal Employment Opportunity Regulations**. To the extent employment activities of Independent Contractor occur in the United States and if otherwise applicable this contractor and subcontractor shall abide by the requirements of 41 CFR §§ 60-1.4(a), 60-300.5(a) and 60-741.5(a). These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex, sexual orientation, gender identity or national origin. Moreover, these regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, sexual orientation, gender identity, national origin, disability or protected veteran status.

**Governing Law and Forum**. The construction, interpretation and performance of this Agreement and all transactions under this Agreement will be governed by the laws of the State of New York, without regard to or application of its principles or laws regarding conflicts of laws and the federal and state courts in New York, New York will have exclusive jurisdiction of any Dispute.

**Counterparts**. This Agreement may be signed in one or more counterparts (including faxed or electronically scanned copies), each of which will be deemed one and the same original. Reproductions of this executed original (with reproduced signatures) will be deemed to be original counterparts of this Agreement.

**Interpretation**. This Agreement has been negotiated at arm's length between Parties who are experienced and knowledgeable in the matters contained in this Agreement, and the Parties hereby agree that any statute, law or common law principles or other authority that would require interpretation of any ambiguities in this Agreement against the Party who has drafted it are not applicable and are hereby waived.
(Back To Top)

# Section 3: EX-99.1 (EX-99.1)

EXHIBIT 99.1

**resideo**

**RESIDEO ANNOUNCES SELECTED PRELIMINARY THIRD QUARTER REVENUE AND ADJUSTED EBITDA RESULTS, REVISES GUIDANCE FOR FULL YEAR 2019**

- *Third Quarter Revenue Expected to be $1.226 Billion and Third Quarter Adjusted EBITDA (Non-GAAP) Expected to be Approximately $77 Million to $79 Million*

- *Full Year 2019 Revenue Expected to be Between $4.92 Billion and $5.0 Billion and Full Year 2019 Adjusted EBITDA (Non-GAAP) Expected to be in the Range of $330 Million to $350 Million*

- *Products & Solutions Headwinds Primarily Driven by Reduced Customer Demand in RTS Gas Combustion Business and Certain Product Families of Comfort Non-Connected Thermostats*

- *Company Launches a Comprehensive Operational and Financial Review Focused on Product Cost/Gross Margin Improvement and G&A Simplification*

**AUSTIN, Texas, Oct. 22, 2019** – Resideo Technologies, Inc. (NYSE: REZI), a leading global provider of home comfort and security solutions, today announced that its adjusted EBITDA (non-GAAP) for the third quarter of 2019 is estimated to be approximately $77 million to $79 million. Revenue for the third quarter is anticipated to be $1.226 billion, representing a 2% growth rate year-over-year.

In the third quarter, the ADI Global Distribution business continued to grow as planned. The Products & Solutions segment experienced revenue decline in certain product families of the Comfort business and in its Residential Thermal Solutions (RTS) gas combustion business. We believe the RTS slowdown was driven by certain recent regulatory changes and a general slowdown across large OEM customers in the sector.

The Comfort business declines were primarily due to lower sales volumes in non-connected thermostats. We believe a poor pre-spin cutover from the prior generation of non-connected thermostats to the T-Series line impacted the adoption of mid-level T-Series thermostats. The cutover effects became markedly more pronounced in the third quarter after the prior generation of non-connected thermostats were discontinued. The company is working with its channel partners to enhance and better position the T-Series and expects significant improvement in 2020.

The company expects these headwinds to continue into the peak winter demand period, which is expected to reduce previously anticipated full-year 2019 Products & Solutions segment revenue by approximately $110 million. Approximately $66 million of this expected shortfall is from Comfort and $22 million from RTS, with the related gross margin and adjusted EBITDA impacts. While the Security business continues to grow, a single large new customer delayed the start date of its purchases beyond the fourth quarter, resulting in an expected negative impact on fourth-quarter revenue of approximately $22 million.

1

The company's new generation security products and connected thermostats have experienced solid growth. However, with the transition, these products have yet to benefit from lifecycle value engineering, adversely impacting full-year 2019 Products & Solutions segment gross margins. The company is actively investing in its value engineering team and expects meaningful improvement to gross margins over the next 18 months.

As a result, the company is updating its full-year 2019 adjusted EBITDA guidance to be in the range of $330 million to $350 million, compared to previously expected $410 million to $430 million. The company also is updating its full-year 2019 guidance for revenue growth to 2% to 4%, as compared to previously expected 2% to 5%.

**Operational and Financial Review**

Resideo has begun a comprehensive operational and financial review, focused on improving gross margins and optimizing its organizational footprint. The aim of the review is to simplify internal processes that will enable Resideo to be more agile in responding to changing customer and marketplace dynamics. The company has retained industry-recognized experts in supply chain optimization and organizational excellence to assist in the review.

The review will build upon the previously announced cost optimization program, which is on track to achieve approximately $15 million in realized savings in 2019 and $50 million in run-rate savings by the end of 2020. The new operational and financial review is expected to capture incremental gross margin and operating expense savings in 2020. We believe significant gross margin opportunity exists in Comfort and Security products through value engineering cost reductions. Resideo plans to provide a detailed report of planned actions, anticipated timelines, and progress made to date in conjunction with the announcement of its fourth-quarter and full-year 2019 financial results, expected in February 2020.

"While I am disappointed in our preliminary results for the third quarter, we remain confident in the fundamentals of our business," said Mike Nefkens, president and CEO of Resideo. "The issues impacting our second-half 2019 results underscore the urgency to simplify our operations, reduce our cost structure, increase agility throughout the organization and drive adoption of our products in the professional, do-it-for-me channel where Resideo is a market leader. We are aggressively addressing challenges through a comprehensive operational and financial review of the company, with a particular focus on the Products & Solutions segment. We are targeting areas to drive improved financial performance and are confident we are pursuing the necessary changes to deliver superior shareholder value."

**Earnings Conference Call**

The company expects to announce third quarter 2019 results on Wednesday, Nov. 6, and host a conference call and webcast with investors on Thursday, Nov. 7. Conference call and webcast details will be provided approximately one week prior to earnings.

**About Resideo**

Resideo is a leading global provider of critical comfort and security solutions primarily in residential environments, and distributor of low-voltage electronic and security products. Building on a 130-year heritage, Resideo has a presence in more than 150 million homes, with 15 million systems installed in homes each year. We continue to serve more than 110,000 contractors through leading distributors, including our ADI Global Distribution business, which exports to more than 100 countries from more than 200 stocking locations around the world. Resideo is a $4.8 billion company with approximately 13,000 global employees. For more information about Resideo, please visit www.resideo.com.

**Contacts:**

**Media:**
Trent Perrotto
(512) 726-3512
trent.perrotto@resideo.com

**Investors:**
Michael Mercieca
(512) 779-8646
michael.mercieca@resideo.com
investorrelations@resideo.com

**Forward-Looking Statements**

This release contains "forward-looking statements." All statements, other than statements of fact, that address activities, events or developments that we or our management intend, expect, project, believe or anticipate will or may occur in the future are forward-looking statements. Although we believe forward-looking statements are based upon reasonable assumptions, such statements involve known and unknown risks, uncertainties, and other factors, which may cause the actual results or performance of the company to be materially different from any future results or performance expressed or implied by such forward-looking statements. Such risks and uncertainties include, but are not limited to, those described under the headings "Risk Factors" and "Cautionary Statement Concerning Forward-Looking Statements" in our Annual Report on Form 10-K for the year ended Dec. 31, 2018 and our other periodic reports filed with the Securities and Exchange Commission ("SEC"). You are cautioned not to place undue reliance on these forward-looking statements, such as guidance regarding full-year 2019, our ability to realize cost reductions over the lifecycle of our products and realize related gross margin opportunity, the commencement, progress and results of the comprehensive operational and financial review, including our ability to improve gross margins, optimize our organizational footprint, and simplify our internal processes, our cost optimization program and our ability to achieve $15 million of

3

realized savings in 2019 and $50 million of run-rate savings by the end of 2020, and our ability to work with our professional partners to better position the T-Series and the related expected significant sales improvement in 2020, each of which speak only as of the date of this release. Forward looking statements are not guarantees of future performance, and actual results, developments and business decisions may differ from those envisaged by our forward-looking statements.

The company has not yet closed and finalized its financial statement review process for the third quarter and full year of 2019. As a result, the information in this release is preliminary and based upon information available to the company as of the date of this release, and thus remains subject to the completion of the normal quarter-end accounting procedures and adjustments. During the course of the company's review process, items may be identified that would require the company to make adjustments, which could result in changes to its preliminary selected financial information above. As a result, the preliminary selected financial information above is forward-looking information and subject to risks and uncertainties, including possible adjustments to such information, as further described above.

**Non-GAAP Financial Measures**

This release includes adjusted EBITDA which is not a metric that is compliant with generally accepted accounting principles in the United States (GAAP). This non-GAAP financial measure is adjusted for certain items (including environmental expense, the Honeywell reimbursement agreement expense, stock-based compensation, repositioning costs, spin-related and other expenses) and may not be directly comparable to similar measures used by other companies in our industry, as other companies may define such measures differently. Management believes that this measure is useful to investors and management in understanding our ongoing operations and in analysis of ongoing operating trends and provides useful additional information relating to our operations and financial condition. This metric should be considered in addition to, and not as a replacement for, the most comparable GAAP measure. The company is unable to provide preliminary results for the comparable GAAP measure of adjusted EBITDA for the third quarter and full-year 2019 results without unreasonable efforts because the exact amount of certain items added to the comparable GAAP measure to determine adjusted EBITDA is not currently determinable until the closing procedures for the quarter and full-year 2019 are complete. Accordingly, the company is unable to provide reconciliations from GAAP to non-GAAP for adjusted EBITDA without unreasonable effort. It is important to note that the items that are added to the comparable GAAP measure to determine adjusted EBITDA may be material to the company's third quarter and full-year 2019 results in accordance with GAAP.

###

4

(Back To Top)