# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE RESIDEO TECHNOLOGIES, INC. SECURITIES LITIGATION | Civil Action No. 0:19-cv-02863-(WMW/KMM) |

## MEMORANDUM OF LAW IN SUPPORT OF
## LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
## APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT .................................................................................. 1

II.     BACKGROUND ........................................................................................................ 3

        A.      Summary of the Complaint's Allegations ..................................................... 3

        B.      Summary of the Action .................................................................................. 4

        C.      The Mediation and Settlement Process ......................................................... 6

III.    LEGAL STANDARD FOR PRELIMINARY APPROVAL ................................. 7

IV.     THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS OF RULE
        23(E)(2) .................................................................................................................. 10

        A.      The Proposed Settlement is Presumptively Fair ......................................... 10

        B.      The Substantial Benefits for the Settlement Class, Weighed Against
                Litigation Risks, Support Preliminary Approval ........................................ 13

        C.      The Proposed Settlement Does Not Unjustly Favor Any Class
                Member ........................................................................................................ 15

V.      THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23 ...................... 16

        A.      The Settlement Class Satisfies The Requirements Of Rule 23(a) ............... 17

                1.      The Settlement Class Members Are Too Numerous To Be
                        Joined ................................................................................................ 18

                2.      There Are Common Questions Of Law And Fact ........................... 19

                3.      Lead Plaintiffs' Claims Are Typical Of Those Of The
                        Settlement Class ............................................................................... 20

                4.      Lead Plaintiffs Will Fairly And Adequately Protect The
                        Interests Of The Settlement Class .................................................... 20

        B.      The Settlement Class Satisfies The Requirements Of Rule 23(b)(3) .......... 22

                1.      Common Legal And Factual Questions Predominate ...................... 22

                2.      A Class Action Is Superior To Other Methods Of Adjudication
                        .......................................................................................................... 23

VI.    NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED ............ 24

VII.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS ................................... 26

VIII.  CONCLUSION ............................................................................................... 27

**TABLE OF AUTHORITIES**

**Cases**

*Affiliated Ute Citizens v. United States*,
406 U.S. 128 (1972) ...................................................................................... 23

*Alpern v. UtiliCorp United, Inc.*,
84 F.3d 1525 (8th Cir. 1996). ....................................................................... 20

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................................passim

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ................................................................................. 22, 23

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ...................................................................................... 23

*Beaver Cty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*,
No. 0:14-cv-00786-ADM-TNL, 2016 WL 4098741
(D. Minn. July 28, 2016) .............................................................................. 18

*Beaver Cty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*,
No. 0:14-cv-00786-ADM-TNL, 2017 WL 2574005
(D. Minn. June 14, 2017) .......................................................................... 10, 14

*City of Pontiac Gen. Emps.' Ret. Sys. v. Wal–Mart Stores, Inc.*,
No. 5:12–cv–5162, 2016 WL 5400373 (W.D. Ark. Sept. 20, 2016) ..................... 18

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ........................................................................................ 23

*DeBoer v. Mellon Mortg. Co.*,
64 F.3d 1171 (8th Cir. 1995) ................................................................ 10, 17, 20

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011) ...................................................................................... 23

*Första AP-fonden v. St. Jude Med., Inc.*,
No. 12–CV–3070 (JNE/HB), 2016 WL 6647931 (D. Minn. Nov. 9, 2016) ........... 25

*Grier v. Chase Manhattan Auto Fin. Co.*,
No. 99-CV-180, 2000 WL 175126 (E.D. Pa. Feb. 16, 2000) ............................... 8

*Grunin v. Int'l House of Pancakes*,
            513 F.2d 114 (8th Cir. 1975)............................................................................... 8

*Holden v. Burlington N., Inc.*,
            665 F. Supp. 1398 (D. Minn. 1987) ................................................................ 13

*In re CenturyLink Sales Prac. & Sec. Litig.*,
            337 F.R.D. 193 (D. Minn. 2020) ............................................................... 19, 20

*In re Charter Commc'ns Sec, Litig.*,
            No. MDL 1506, 2005 WL 4045741 (E.D. Mo. June 30, 2005) ...................... 16, 19

*In re Emp. Benefit Plans Sec. Litig.*,
            No. 3-92-708, 1993 WL 330595 (D. Minn. June 2, 1993)................................. 11

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
            No. 1:17-md-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020),
            *aff'd* 999 F.3d 1247 (11th Cir. 2021) ...................................................... 11

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
            55 F.3d 768 (3d Cir. 1995) ............................................................................ 8

*In re MGM Mirage Sec. Litig.*,
            708 F. App'x 894 (9th Cir. 2017)..................................................................... 11

*In re Pemstar, Inc. Sec. Litig.*,
            No. 02–1821–DWF/SRN, 2005 WL 1737867 (D. Minn. Mar. 17, 2005) ............. 17

*In re Polaroid ERISA Litig.*,
            240 F.R.D. 65 (S.D.N.Y. 2006)........................................................................ 12

*In re Retek Inc. Sec. Litig.*,
            236 F.R.D. 431 (D. Minn. 2006) ..................................................................... 21

*In re Select Comfort Corp. Sec. Litig.*,
            202 F.R.D. 598 (D. Minn. 2001) ..................................................................... 24

*In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*,
            591 F. Supp. 2d 1023 (D. Minn. 2008) ............................................................. 11

*In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*,
            No. 11-MD-2247 ADM/JJK, 2012 WL 13065005 (D. Minn. Jan. 19, 2012)......... 10

*In re Veeco Instruments Inc. Sec. Litig.*,
            No. 05 MDL 01695(CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) .............. 12

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
No. 08-MDL-1958 ADM/AJB, 2013 WL 716088 (D. Minn. Feb. 27, 2013) ......... 8

*King v. Raineri Const., LLC*,
No. 4:14–CV–1828 (CEJ), 2015 WL 631253 (E.D. Mo. Feb. 12, 2015) .................... 12

*Lockwood Motors, Inc. v. Gen. Motors Corp.*,
162 F.R.D. 569 (D. Minn. 1995) ............................................................................. 18

*Petrovic v. Amoco Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) .......................................................................... 7, 10

*Pozzi v. Smith,*
952 F. Supp. 218 (E.D. Pa. 1997) .......................................................................... 17

*Roofers' Pension Fund v. Papa*,
333 F.R.D. 66 (D.N.J. 2019) ................................................................................. 22

*Sullivan v. DB Inv., Inc.*,
667 F.3d 273 (3d Cir. 2011) .................................................................................... 8

*W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
325 F.R.D. 280 (D. Minn. 2018) ............................................................................ 18

*White v. Nat'l Football League*,
822 F. Supp. 1389 (D. Minn. 1993) ......................................................................... 8

**Statutes**

15 U.S.C. § 78u ........................................................................................................ 16

**Other Authorities**

3B *Moore's Federal Practice* (2d ed. 1995) ....................................................... 18

H.R. Rep. No. 104-369 (1995) (Conf. Rep.),
reprinted in 1995 U.S.C.C.A.N. 730 ..................................................................... 21

**Rules**

Fed. R. Civ. P. 23 ............................................................................................ passim

Court-appointed Lead Plaintiffs The Gabelli Asset Fund, The Gabelli Dividend & Income Trust, The Gabelli Focused Growth and Income Fund f/k/a The Gabelli Focus Five Fund, The Gabelli Multimedia Trust Inc., The Gabelli Value 25 Fund Inc., GAMCO International SICAV, GAMCO Asset Management Inc. (collectively, the "Gabelli Group"), Naya 1740 Fund Ltd., Naya Coldwater Fund Ltd., Naya Master Fund LP and Nayawood LP (collectively, the "Naya Group" and, with the Gabelli Group, "Lead Plaintiffs"), together with additional plaintiff Oklahoma Firefighters Pension and Retirement System, respectfully submit this memorandum of law in support of their unopposed motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for entry of the Parties' agreed-upon Order Granting Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order"), which is attached to the Declaration of Andrew J. Entwistle in Support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Entwistle Decl.") as Exhibit 2.[1]

I.    **PRELIMINARY STATEMENT**

The Parties have reached a proposed Settlement of this Action in exchange for a cash payment of $55,000,000 for the benefit of the Settlement Class[2] as more fully

---

[1] All capitalized terms used herein that are not otherwise defined in this memorandum will have the meanings provided in the Stipulation and Agreement of Settlement dated as of August 16, 2021 (the "Stipulation"), which was entered into by and among: (i) Lead Plaintiffs, on behalf of themselves and the Settlement Class; and (ii) Defendant Resideo Technologies, Inc. ("Resideo" or the "Company") and defendants Michael G. Nefkens ("Nefkens") and Joseph Ragan III ("Ragan") (collectively the "Individual Defendants" and, together with Resideo, the "Defendants"). The Stipulation is attached as Exhibit 1 Entwistle Decl.

[2] The Settlement Class, which has been stipulated to by the Parties for settlement purposes

described below.  Lead Plaintiffs now request that the Court preliminarily approve the proposed Settlement.  Entry of the Preliminary Approval Order will begin the process for approval of the proposed Settlement by authorizing notice of the Settlement's terms and conditions be sent to investors who are believed to be members of the Settlement Class.  A final approval hearing (the "Settlement Hearing") will then be conducted so that the Parties and Settlement Class Members may present arguments and evidence for and against final approval of the proposed Settlement, and the Court will then make a final determination as to whether the Settlement is fair, reasonable and adequate.  To facilitate this process, the proposed Preliminary Approval Order will, among other things:

(i)     preliminarily approve the terms of the Settlement set forth in the Stipulation;

(ii)    provisionally certify the Settlement Class for settlement purposes only;

(iii)   approve the form and content of the Notice, Claim Form and Summary Notice, respectively attached as Exhibits A-1, A-2 and A-3 to the Stipulation;

(iv)    find that the procedures established for distribution of the Notice and Claim Form and publication of the Summary Notice, in the manner and form set forth in the Preliminary Approval Order, constitute the best notice practicable under the circumstances, and comply with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure, the United

---

only, consists of all persons and entities who or which purchased or otherwise acquired the common stock of Resideo during the period from October 15, 2018 through November 6, 2019, inclusive, and were damaged thereby.  Excluded from the Settlement Class are: (i) Defendants; (ii) Honeywell; (iii) the officers and directors of Defendants and Honeywell during the Class Period; (iv) Immediate Family of the Individual Defendants and of the excluded officers and directors; (v) any entity in which any Defendant, any excluded officer or director, or any member of their Immediate Family has or had a controlling interest; (vi) any affiliates, parents or subsidiaries of the Defendants and Honeywell; (vii) the legal representatives, agents, affiliates, heirs, successors or assigns of any of the foregoing, in their capacities as such; and (viii) those who timely and validly request exclusion from the Settlement Class in accordance with the requirements set forth in the Notice, or who are otherwise excluded by the Court.

2

States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4*, as amended, and all other applicable law and rules;

(v)     setting out a schedule and procedures for: disseminating the Notice and Claim Form and publishing the Summary Notice; requesting exclusion from the Settlement Class; objecting to the Settlement, the proposed Plan of Allocation and/or Co-Lead Counsel's motion for attorneys' fees and payment of litigation expenses; and submitting papers in support of final approval of the Settlement; and

(vi)    scheduling a Settlement Hearing to consider final approval of the Settlement, the Plan of Allocation and Co-Lead Counsel's application for an award of attorneys' fees and litigation expenses.

As explained below, Lead Plaintiffs respectfully submit that the Settlement warrants preliminary approval in light of the substantial benefits achieved by the Settlement, the significant risks of continued litigation and the fact that the Settlement is the result of arm's-length negotiations by experienced counsel overseen by a well-respected mediator. Lead Plaintiffs further submit that the Court should, for purposes of the Settlement only, provisionally certify the Settlement Class and approve the proposed notice to the Settlement Class.

## II.    BACKGROUND

### A. Summary of the Complaint's Allegations

Resideo is a global provider of security, comfort, and smart-technology solutions and products. The Company emerged out of a corporate spin-off of Honeywell, which was completed on October 29, 2018, whereby Honeywell combined certain unrelated business units and products and spun them off to create Resideo. Resideo became a publicly traded company as a result of a *pro rata* distribution of Resideo's common stock to Honeywell shareholders.

3

In the Action, Plaintiffs alleged that Defendants made materially false and misleading statements and omissions in connection with the operations, financial condition, resources, and lines of business of Resideo following the Spin-Off.  Plaintiffs alleged that Defendants misled investors as to Resideo's viability as a stand-alone company and the quality of the lines of business of Honeywell that were transferred to Resideo. Plaintiffs alleged that Defendants' statements about Resideo, both prior to and after the Spin-Off, were false and misleading because the statements allegedly concealed the shortcomings of Resideo's products and internal operations, which were allegedly known to certain of the Defendants before the Spin-Off.  Plaintiffs further alleged that the price of Resideo common stock was artificially inflated as a result of Defendants' allegedly false and misleading statements and omissions, and that the price declined when the truth was allegedly revealed through a series of corrective disclosures.

### B.  Summary of the Action

The first complaint in this Action was filed on November 8, 2019, alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).  *See St. Clair County Employees' Retirement System v. Resideo Technologies, Inc.*, No. 0:19-cv-02863 (D. Minn.).  On January 27, 2020, this Court issued a stipulated Order that, among other things: (i) appointed the Gabelli Plaintiffs and the Naya Plaintiffs as Lead Plaintiffs for the putative class; and (ii) approved Lead Plaintiffs' selection of Entwistle & Cappucci LLP and Labaton Sucharow LLP as Co-Lead Counsel for the putative class.  On April 10, 2020, Lead Plaintiffs filed the operative Complaint

which, among other things, added de Masi as a Defendant and alleged violations of §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5.  (ECF No. 51).

On July 10, 2020, Defendants filed a motion to dismiss denying they acted with the requisite scienter and arguing the claims in Plaintiffs' Complaint amounted to pleading "fraud by hindsight."  Defendants' motion to dismiss also argued many of their statements were variously statements of opinion, puffery or protected by the PSLRA Safe Harbor. (ECF Nos. 71-76).  Separately, Defendants moved to judicially notice public filings referenced in Plaintiffs' Complaint.  On October 9, 2020, Plaintiffs opposed the motion to dismiss and motion for judicial notice (ECF Nos. 78-81) and on November 9, 2020, Defendants filed a reply brief (ECF Nos. 89-94).

On December 1, 2020, the Court conducted a hearing on the fully briefed motions (ECF No. 91), and on March 30, 2021, the Court entered its Opinion and Order denying Defendants' Motion to Dismiss in its entirety.  (ECF No. 99).  In the same Order, the Court granted Defendants' motion for judicial notice in part.  (*Id.*)

On April 26, 2021, the Parties conducted a Rule 26(f) conference and on April 29, 2021, Lead Plaintiffs served their first set of document requests pursuant to Rule 34 on Defendants. On May 25, 2021, the Court entered its Pretrial Scheduling Order setting deadlines for amended pleadings, close of fact and expert discovery, and class certification discovery and briefing.  (ECF No. 114).

Thereafter, Lead Plaintiffs aggressively pursued discovery, commencing with a robust exchange of letters and related correspondence with Defendants regarding their

compliance with discovery obligations under the Pretrial Order. During July 2021, Defendants began rolling productions of documents and communications previously produced to the SEC in connection with its related investigation. Over the course of several weeks, Defendants produced in excess of one million pages of responsive documents to Lead Plaintiffs, including substantially all documents previously produced to the SEC. Co-Lead Counsel reviewed and analyzed thousands of these documents and communications on an expedited basis.

Separately, Lead Plaintiffs prepared extensively for the filing of their class certification motion. In this regard, Lead Plaintiffs retained Dr. Michael Hartzmark to perform an analysis and draft a related expert report to opine whether the Resideo common stock at issue in this case traded in an efficient market. Lead Plaintiffs also collected documents for production to Defendants.

At the time settlement was reached, Lead Plaintiffs were in the midst of preparing their motion to certify the class and related expert report and supporting documents.

### C. The Mediation and Settlement Process

The Parties began exploring the possibility of settling the Action in January 2021 while Defendants' motion to dismiss remained pending. The Parties retained former United States District Court Judge Layn R. Phillips and participated in a full-day mediation session on February 25, 2021. Judge Phillips is one of the nation's preeminent mediators and has significant experience mediating complex securities class actions.

In advance of the session, Lead Plaintiffs and Defendants exchanged opening mediation statements on January 29, 2021 and reply mediation statements on February 12,

2021.  The Parties then responded to detailed merits- and damages-related questions from Judge Phillips and his staff both in advance of and during the mediation session.  Among other things, the submissions and mediator questions probed the strengths and weaknesses of Lead Plaintiffs' claims, the likelihood of Defendants prevailing in their motion to dismiss and the Parties' anticipated arguments at class certification, summary judgment and trial.

Although the Parties made substantial progress over the course of the February 25 session, they were unable to reach agreement on that day, and they agreed to continue settlement discussions, with the assistance of Judge Phillips and his staff on an as-needed basis.

Following the denial of the motion to dismiss on March 30, 2021 (ECF No. 99), the Parties began discussing the possibility of settlement in earnest.  After approximately three months of further negotiations between counsel for Lead Plaintiffs and counsel for Defendants, during which the Parties continued to challenge one another's arguments and engaged in multiple rounds of bids and offers, the Parties got closer to a deal.  On July 27, 2021, the Parties reached an agreement in principle to settle the case that was memorialized in a confidential term sheet executed on July 30, 2021.  Thereafter, the Parties negotiated a formal Stipulation and Agreement of Settlement, executed on August 16, 2021.

## III.    LEGAL STANDARD FOR PRELIMINARY APPROVAL

The settlement of class action litigation is favored in the Eighth Circuit.  *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (holding that "strong public policy favors [settlement] agreements, and courts should approach them with a presumption in

their favor." (internal citations removed)); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013) ("The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." (citing *White v. Nat'l Footbal League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993)); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). Courts attach "[a]n initial presumption of fairness . . . to a class settlement reached in arm's-length negotiations between experienced and capable counsel after meaningful discovery." *Grier v. Chase Manhattan Auto Fin. Co.*, No. 99-CV-180, 2000 WL 175126, at *5 (E.D. Pa. Feb. 16, 2000); *see also White*, 822 F. Supp. at 1416.

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of class actions. Approval of a class action settlement involves a two-step process. First, the Court reviews the proposed terms of the settlement for a preliminary fairness evaluation.  Rule 23(e) requires that the Court consider whether to preliminarily approve a settlement, whether the class should be certified for settlement purposes, and whether the proposed notice appropriately notifies class members. *White*, 822 F. Supp. at 1399; *Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011).  The second step is for the court to conduct a formal fairness and final approval hearing after notice has been disseminated to settlement class members.  Fed. R. Civ. P. 23(e); *see also, e.g., Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975).

The Federal Rules instruct that a court should grant preliminary approval upon a finding that it "will likely be able" to (i) finally approve the settlement under Rule 23(e)(2),

and (ii) certify the class for purposes of the settlement. *See* Fed. R. Civ. P. 23(e)(1)(B).  In considering final approval, Federal Rule 23(e)(2) provides that the Court consider whether:

> the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment;[3] and (iv) any agreement required to be identified under Rule 23(e)(3);[4] and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Lead Plaintiffs respectfully request that the Court take the first step in the settlement approval process and grant preliminary approval of the Settlement so that notice of the Settlement can be given to the Settlement Class. As summarized below, and as will be set

---

[3] The reasonableness of attorneys' fees will be decided by the Court after Co-Lead Counsel file a motion for attorneys' fees and litigation expenses. The Settlement does not contemplate any specific award.  Co-Lead Counsel will be compensated out of the Settlement Fund, under the common fund doctrine, and will not be compensated by Defendants.  In connection with Co-Lead Counsel's Fee and Expense Application, counsel will seek no more than 25% of the Settlement Fund, an amount that is comparable to the percentages that courts in the Eighth Circuit have approved in class actions with comparable recoveries.

[4] The only agreements between the Parties concerning the Settlement are the Term Sheet memorializing the agreement in principle, the Stipulation and a confidential Supplemental Agreement Regarding Requests for Exclusion (the "Supplemental Agreement"). Stipulation at ¶ 40(a).  The Supplemental Agreement sets forth the conditions under which Defendants have the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold.  As is standard in securities class actions, the Supplemental Agreement is kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement.  Pursuant to its terms, the Supplemental Agreement may be submitted to the Court in camera or under seal.

forth in detail in a subsequent motion for final approval of the Settlement, the Settlement is the product of arm's-length negotiations and provides a substantial benefit to the Settlement Class. Thus, Lead Plaintiffs respectfully submit that the Settlement satisfies the requirements for preliminary approval.

## IV. THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS OF RULE 23(E)(2)

### A. The Proposed Settlement is Presumptively Fair

Courts in the Eighth Circuit have held that "there is a presumption of fairness when a settlement is negotiated at arm's length by well informed counsel." *Beaver Cty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, No. 0:14-cv-00786-ADM-TNL, 2017 WL 2574005, at *2 (D. Minn. June 14, 2017). This presumption is particularly strong when settlement negotiations are facilitated by a mediator. *Id.* ("The assistance of a neutral, well-respected mediator to close out the settlement negotiations further demonstrates that the Settlement was fairly and honestly negotiated."). The judgment of experienced counsel is also entitled to deference. *See, e.g., Petrovic*, 200 F.3d at 1149; *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) (giving considerable weight to the views of experienced class counsel); *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, No. 11-MD-2247 ADM/JJK, 2012 WL 13065005, at *4 (D. Minn. Jan. 19, 2012) ("In the final-approval context, courts have given substantial weight to the experience of the attorneys who prosecuted and negotiated the settlement.").

Here, the Settlement of the Action was the product of negotiations spanning approximately seven months among highly qualified counsel facilitated by one of the

10

preeminent mediators of securities class action matters, counseling in favor of preliminary approval. At all times the negotiations driving the Settlement were contentious and adverse. Indeed, the first mediation was not successful, and extensive subsequent direct negotiations between counsel also proved initially unsuccessful. *See, e.g., In re Emp. Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 WL 330595, at \*5 (D. Minn. June 2, 1993) ("intensive and contentious negotiations likely result in meritorious settlements, rather than collusive ones").

Moreover, Judge Phillips' involvement as mediator further demonstrates the Settlement was fairly and honestly negotiated. In this regard, Judge Phillips was instrumental in assisting the Parties to identify the strengths and weaknesses of their respective claims and in providing ongoing mediation assistance driving the closing of negotiations resulting in the Settlement. *See, e.g., In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 591 F. Supp. 2d 1023, 1034 (D. Minn. 2008) (noting Judge Phillips is "an experienced and independent mediator"); *see also In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897 (9th Cir. 2017) (calling Judge Phillips a "nationally recognized mediator" and affirming settlement approval in part due to his representations); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT, 2020 WL 256132, at \*6 (N.D. Ga. Mar. 17, 2020), *aff'd* 999 F.3d 1247 (11th Cir. 2021) (noting that Judge Phillips is "a retired federal judge with a wealth of experience in major complex litigation" and crediting his representations about reasonableness of settlement and sound negotiation process). During the negotiations, Lead Plaintiffs – as sophisticated institutional investors that have achieved numerous securities class action recoveries –

were highly incentivized to obtain the largest possible recovery from Defendants. *See, e.g., In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("[U]nder the PSLRA, a settlement reached . . . under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness.'"); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Co-Lead Counsel's experience and involvement in this Action further supports preliminary approval. *See King v. Raineri Const., LLC*, No. 4:14–CV–1828 (CEJ), 2015 WL 631253, at *3 (E.D. Mo. Feb. 12, 2015) (approving settlement that was "reached by arm's length negotiation," between parties "represented by experienced counsel throughout the litigation"). Co-Lead Counsel have successfully obtained some of the largest securities class action settlements since the passage of the PSLRA.

Moreover, Co-Lead Counsel conducted an extensive investigation into the alleged fraud in this case by, among other things, reviewing SEC filings, analyst research reports, investor conference calls, press releases, media reports, and conducting numerous interviews of former Resideo employees before filing a detailed amended complaint. Co-Lead Counsel also performed extensive legal research in preparing the complaint and briefing the opposition to Defendants' motion to dismiss and consulted with experts regarding market efficiency and damages. Co-Lead Counsel also engaged in extensive fact

discovery – including the review of hundreds of pages of emails and communications pertaining to the Action.

Thus, the Parties had more than sufficient evidence to allow them to make an informed decision about the strengths and weaknesses of their respective cases. *See, e.g., Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1423- 24 (D. Minn. 1987) (approving settlement reached after parties engaged in extensive written and oral discovery).

## B. The Substantial Benefits for the Settlement Class, Weighed Against Litigation Risks, Support Preliminary Approval

The $55 million cash payment pursuant to the Settlement represents an excellent result for Class Members when considering the substantial risks of continued litigation and the anticipated expenses to be incurred through trial and possible appeals.

*First*, while Plaintiffs' allegations were sufficient to survive Defendants' motion to dismiss, proving the claims at trial through admissible evidence is far from a certitude. Plaintiffs faced significant risks that, at either the summary judgment stage or after a trial, they would not be able to establish that Defendants' statements about Resideo's operating history, financial results, supply chain or new product introductions were actionable under the federal securities laws. Defendants are likely to argue that their statements to investors at all times were materially accurate to the best of their knowledge at the time they were made, and they possessed no adverse information tending to show that their public statements were false or misleading. Defendants would also likely assert that, even if their statements were false or misleading when made, they are protected as forward-looking and/or inactionable puffery or statements of opinion. If the Court or a jury was to credit

13

any of these arguments at summary judgment or trial, the class's recovery would have been significantly reduced or eliminated.

*Second,* Plaintiffs would have faced challenges in proving loss causation and damages. Defendants would argue at class certification and at trial that declines in Resideo's stock price were driven by non-fraud factors, that the alleged corrective disclosures did not "correct" any prior alleged misstatement, that the release of such information to the market was not material and/or such information was already known to the market. The resolution of these and other issues likely would have come down to an unpredictable "battle of the experts." *See Tile Shop*, 2017 WL 2574005, at *3 (Plaintiffs "faced significant risks establishing causation and damages. The parties had retained highly qualified experts whose damages assessments were at considerable variance."). Accordingly, in the absence of a settlement, there was a substantial risk that the Court or a jury would have credited Defendants' experts in whole or in part, and therefore that the class would recover an amount far less than the total cash Settlement Amount—or may not have recovered anything at all.

*Third*, the $55 million Settlement represents a substantial portion of investors' realistically recoverable damages under Lead Plaintiffs' consulting expert's damages estimates and compares favorably to recoveries in other securities class actions. The $55 million recovery is significantly above the median settlement amount of $9 million for securities class actions between 1996 and 2019, is higher than the median recovery in 2020 of $10.1 million and is well-above the $10 million median recovery within the Eighth Circuit. *See*, Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements*

14

– *2020 Review and Analysis*, at 1 and 20 (Cornerstone Research 2021), Entwistle Decl., Ex. 3. Thus, compared to other similarly situated cases in 2020, and during the span of the PSLRA, the Settlement is a very favorable outcome for the Settlement Class.

Put simply, without the immediate cash benefit of the Settlement, Lead Plaintiffs would have had to prevail at multiple stages, including at class certification, summary judgment and trial—and then again on the appeals that likely would have followed.   Each of these stages posed meaningful risks, could have taken years, and would have subjected Plaintiffs to the additional risk of intervening changes in the law.   The Settlement avoids these risks and will provide a prompt and certain benefit to the Settlement Class, rather than risk a smaller recovery—or none at all—after additional years of litigation and appeals. The Settlement is also reasonable when considered in relation to the range of potential recoveries and risks to establishing damages for the Settlement Class had Lead Plaintiffs prevailed at trial and on any appeals.

## C. The Proposed Settlement Does Not Unjustly Favor Any Class Member

In evaluating a proposed settlement, the Court must also assess the Settlement's effectiveness in equitably distributing relief to members of the Settlement Class. Fed. R. Civ. P. 23(e)(2)(C)(ii).  Here, the Court can readily find that the Settlement will likely earn final approval. The proposed Plan of Allocation treats Class Members "equitably relative to each other" based on their transactions in publicly traded Resideo common stock.

The Plan of Allocation provides for distribution of the Net Settlement Fund to Class Members demonstrating a loss on their transactions in Resideo common stock and on a *pro rata* basis in proportion to their loss.  The formula to apportion the Net Settlement Fund

among Class Members, which was developed by Lead Plaintiffs' consulting damages expert in consultation with Co-Lead Counsel, is based on the estimated amount of artificial price inflation in Resideo common stock during the Class Period allegedly caused by Defendants' alleged misconduct.[5] Once the Claims Administrator has processed all submitted claims it will make distributions to eligible Class Members, until additional redistributions are no longer cost effective. At such time, any remaining balance will be contributed to nonsectarian, not-for-profit, 501(c)(3) organization(s) approved by the Court.  Courts routinely approve plans of allocation like the one contemplated in this case. *See e.g.*, *In re Charter Commc'ns Sec, Litig.*, No. MDL 1506, 2005 WL 4045741, at \*10 (E.D. Mo. June 30, 2005).

## V.   THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23

In determining whether to grant preliminary approval, the Court should also determine whether it "will likely be able to" certify the proposed Settlement Class for purposes of the Settlement at final approval. Fed. R. Civ. P. 23(e)(1)(B). The proposed Settlement Class, which has been stipulated to by the Parties, consists of:

> All persons and entities who or which purchased or otherwise acquired the common stock of Resideo during the period from October 15, 2018 through November 6, 2019, inclusive, and were damaged thereby.

---

[5] The calculation of "Recognized Loss Amounts" under the Plan will depend on when the claimant purchased and/or sold their shares, whether the claimant held the shares through the statutory 90-day look-back period, *see* 15 U.S.C. § 78u-4(e), and the value of the shares when the claimant purchased, sold, or held them. Under the Plan, a claimant's "Recognized Loss" will be the sum of the claimant's Recognized Loss Amounts, and the Net Settlement Fund will be allocated to Class Members on a *pro rata* basis based on the relative size of their Recognized Losses.

16

Courts have long acknowledged the propriety of a settlement class. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-22 (1997); *see also Pozzi v. Smith,* 952 F. Supp. 218, 221 (E.D. Pa. 1997) ("The Third Circuit has declared that class actions created for the purpose of settlement are recognized under the general scheme of Federal Rule of Civil Procedure 23, provided that the class meets the certification requirements under the Rule."); *DeBoer*, 64 F.3d at 1175 (Eighth Circuit upheld district court's preliminary certification of class for settlement purposes and affirming the settlement); *In re Pemstar, Inc. Sec. Litig.*, No. 02–1821–DWF/SRN, 2005 WL 1737867, at *1 (D. Minn. Mar. 17, 2005) (Court conditionally certifying settlement class). A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b), although the manageability concerns of Rule 23(b)(3) are not at issue. *See Amchem,* 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is not a consideration when settlement- only certification is requested[.]").

While the Court need only determine at this preliminary approval stage whether it "will likely be able to" certify the Settlement Class at final approval, as demonstrated below, certification of the Settlement Class for purposes of the Settlement is appropriate because the proposed Settlement Class satisfies all the requirements of Rule 23(a) and Rule 23(b)(3).

## A.   The Settlement Class Satisfies The Requirements Of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to

17

the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also Amchem*, 521 U.S. at 613.

### 1.    The Settlement Class Members Are Too Numerous To Be Joined

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a).    The "numerosity requirement is generally satisfied in class actions involving nationally traded securities." *W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 325 F.R.D. 280, 286 (D. Minn. 2018); *City of Pontiac Gen. Emps.' Ret. Sys. v. Wal–Mart Stores, Inc.*, No. 5:12–cv–5162, 2016 WL 5400373 at *4 (W.D. Ark. Sept. 20, 2016).    While "[t]here is no absolute number that satisfies the numerosity requirement," a proposed class with approximately 40 members has been found to satisfy the numerosity requirement. *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 574 (D. Minn. 1995) (quoting 3B *Moore's Federal Practice* ¶ 23.05[1] at 23- 143-45 (2d ed. 1995)).

Here, the numerosity requirement is met because: (i) Resideo's common stock was actively traded on the New York Stock Exchange during the Class Period; and (ii) Resideo had approximately 122 million shares of common stock issued and outstanding on average during the Class Period.    This more than meets the numerosity requirement.    *See, e.g., Beaver Cty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, No. 0:14-cv-00786-ADM-TNL, 2016 WL 4098741, at *3 (D. Minn. July 28, 2016) (class met numerosity requirement where 5.175 million shares of stock were sold in public offering).

**2.      There Are Common Questions Of Law And Fact**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "In securities fraud class actions, questions of misrepresentation, materiality and scienter are the paradigmatic common question[s] of law or fact." *In re CenturyLink Sales Prac. & Sec. Litig.*, 337 F.R.D. 193, 202 (D. Minn. 2020) (citation omitted); *see also Charter Commc'ns*, 2005 WL 4045741, at *11 ("Courts repeatedly have held that common questions regarding defendants' liability are appropriate for class-wide treatment, even if there are individual differences in Class members' damages.").

Here, there are numerous common questions of law and fact, including: (i) whether Defendants' alleged misrepresentations and omissions violated the federal securities laws; whether Defendants misrepresented material facts about the Company's product lines, supply chain and new product introductions during the Class Period; (iii) whether Defendants are liable for the alleged misrepresentations and omissions described herein; (iv) whether the Individual Defendants acted with scienter; (v) whether Defendants' alleged misrepresentations and omissions caused Settlement Class Members to suffer a compensable loss; and (vi) whether the members of the Settlement Class have sustained damages, and the proper measure of damages. Because these questions of law and fact are common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met. *See, e.g., CenturyLink,* 337 F.R.D. at 202.

19

### 3. Lead Plaintiffs' Claims Are Typical Of Those Of The Settlement Class

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174. "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

Here, Lead Plaintiffs' claims and injuries are typical of the Settlement Class because they all arise from the same alleged course of conduct by Defendants. Lead Plaintiffs allege that they, like the rest of the Settlement Class, purchased Resideo common stock at prices artificially inflated by Defendants' misrepresentations and omissions. In addition, Lead Plaintiffs, like all other Settlement Class Members, were subsequently damaged when the price of Resideo's common stock declined after the truth of Defendants' fraud was revealed. The shared factual circumstances and legal arguments supporting the claims of Lead Plaintiffs and the Settlement Class demonstrate typicality under Rule 23(a)(3). *See, e.g., CenturyLink* 337 F.R.D. at 202.

### 4. Lead Plaintiffs Will Fairly And Adequately Protect The Interests Of The Settlement Class

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). The Court must measure the adequacy of representation by two standards: (1) whether the class representatives have

20

common interests with the members of the class; and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel. *In re Retek Inc. Sec. Litig.*, 236 F.R.D. 431, 435 (D. Minn. 2006). Lead Plaintiffs readily satisfy both prongs of that standard.

First, like other members of the Settlement Class, Lead Plaintiffs purchased Resideo common stock during the Class Period at prices artificially inflated by Defendants' misrepresentations and omissions and suffered significant damages when the price of Resideo's common stock declined when the truth was revealed. Moreover, Lead Plaintiffs have been diligently overseeing counsel's efforts and are committed to fulfilling their responsibility to maximize the recovery on behalf of the Settlement Class. In addition, the fact that Lead Plaintiffs are comprised of institutional investors that share the Settlement Class's common interests supports a finding of adequacy. *See* H.R. Rep. No. 104-369, 34 (1995) (Conf. Rep.), reprinted in 1995 U.S.C.C.A.N. 730, 733 (the Private Securities Litigation Reform Act of 1995 was enacted "to increase the likelihood that institutional investors will serve as lead plaintiffs.").

Second, Lead Plaintiffs have also retained qualified counsel, further supporting a finding of adequacy. In appointing class counsel, the court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

21

Here, Lead Plaintiffs retained Entwistle & Cappucci LLP and Labaton Sucharow LLP, two firms that are eminently qualified to represent the Settlement Class in this case and have a wealth of experience and history of successfully prosecuting securities fraud actions. As Co-Lead Counsel, the firms successfully defeated Defendants' motion to dismiss, negotiated a case schedule and ESI protocol, propounded discovery, pursued third-party subpoenas and have conducted significant work with experts to pursue the claims of the Settlement Class. Moreover, both firms have substantial experience in securities class action litigation and have successfully prosecuted class actions in state and federal court.

**B.    The Settlement Class Satisfies The Requirements Of Rule 23(b)(3)**

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class satisfies these requirements.

**1.    Common Legal And Factual Questions Predominate**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. This inquiry is satisfied where "questions of law or fact common to the class will 'predominate over any questions affecting only individual members' as the litigation progresses." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 467 (2013); see also *Roofers' Pension Fund v. Papa*, 333 F.R.D. 66, 78-79 (D.N.J. 2019) ("[T]he predominance inquiry turns on whether the evidence necessary to prove the essential

22

elements of the underlying claims will vary from class member to class member, causing the Court to engage in individual treatment of the issues."). This "test [is] readily met in certain cases alleging . . . securities fraud." *Amchem*, 521 U.S. at 625.

Here, the predominance standard is easily met, because the core factual and legal questions in the Action are common to all Settlement Class Members. Indeed, courts have held that the elements of materiality, falsity, and loss causation are all paradigmatic common questions for the Section 10(b) claims at issue here. *See, e.g., Amgen*, 568 U.S. at 467 ("materiality is a 'common questio[n]' for purposes of Rule 23(b)(3)"); *id*. at 475 ("this Court has held that loss causation and the falsity or misleading nature of the defendant's alleged statements or omissions are common questions that need not be adjudicated before a class is certified"); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011) (holding that plaintiff need not prove loss causation at class certification).[6]

### 2. A Class Action Is Superior To Other Methods Of Adjudication

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun

---

[6] While Defendants do not dispute the certification of the Settlement Class, in any event, the predominance requirement is met here because reliance can be presumed under the presumptions set forth in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) and *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), and damages are measurable using a common methodology as required by *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).

23

by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3).

Here, each of these factors shows that the superiority requirement is met in this case. First, Lead Plaintiffs seek to represent a class of thousands of Resideo stock purchasers whose individual damages may be too small to make the expense of litigation worthwhile. Second, with the exception of the derivative actions pending against Resideo, counsel for Lead Plaintiffs is unaware of any other litigation concerning this controversy already begun by or against Class members. Third, concentrating the litigation in this forum will promote judicial efficiency by resolving the claims of thousands of shareholders in one case. *In re Select Comfort Corp. Sec. Litig.*, 202 F.R.D. 598, 611 (D. Minn. 2001). Finally, this case does not present any manageability concerns. *See Amchem*, 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").

## VI.    NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

As set forth in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will mail the Notice and Claim Form (Exhibits A-1 and A-2 to the Preliminary Approval Order) to all Settlement Class Members who can be identified with reasonable effort, as well as post the Notice and the Claim Form on the Settlement Website.  The Claims Administrator will utilize a proprietary list of the largest and most common banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice. The Notice will

24

advise Settlement Class Members of (i) the pendency of the class action, (ii) the essential terms of the Settlement, and (iii) information regarding Co-Lead Counsel's application for attorneys' fees and expenses. The Notice will also provide specifics on the date, time, and place of the Settlement Hearing and state the procedures for objecting to the Settlement, the proposed Plan of Allocation, and the motion for attorneys' fees and expenses, and for requesting exclusion from the Settlement Class. The Summary Notice will be published in *The Wall Street Journal* and transmitted via *PR Newswire*.

Accordingly, the proposed notice program represents the best notice practicable under the circumstances and satisfies all applicable requirements under Rule 23, the PSLRA, and due process. *See, e.g.*, *Första AP-fonden v. St. Jude Med., Inc.,* No. 12–CV–3070 (JNE/HB), 2016 WL 6647931, at *2 (D. Minn. Nov. 9, 2016) (similar notice program "constituted the best notice practicable under the circumstances . . . and constituted due and sufficient notice to all persons and entities entitled thereto"). Lead Plaintiffs respectfully submit that the proposed notice and related procedures are appropriate and should be approved.

In connection with preliminary approval of the Settlement, Lead Plaintiffs also respectfully request the appointment JND Legal Administration ("JND") as Claims Administrator. JND is a nationally recognized notice and claims administration firm that has successfully administered numerous complex securities class action settlements. JND will be responsible for, among other things, mailing Claim Packets to potential Class Members and nominees, publishing the Summary Notice, processing Claims, and

25

distributing the Net Settlement Fund to eligible Class Members.  *See* Entwistle Decl., Ex. 4.

## VII.  PROPOSED SCHEDULE OF SETTLEMENT EVENTS

In connection with the preliminary approval of the Settlement, the Court should set a date for a final approval hearing, deadlines for mailing the Notice and Claim Form and publishing the Summary Notice; and deadlines for submitting objections, requesting exclusion from the Settlement Class, submitting claims to recover from the Settlement, and filing papers in connection with final approval of the Settlement, the Plan of Allocation, and Co-Lead Counsel's fee and expense application. Lead Plaintiffs respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

| Event | Proposed Timing |
|---|---|
| Commence Mailing of the Notice and Proof of Claim to Class Members (the "Notice Date") | No later than 14 calendar days after the date of entry of the Preliminary Approval Order |
| Publish the Summary Notice | No later than 14 calendar days after the Notice Date |
| File papers in support of final approval of the Settlement, the Plan of Allocation, and Co-Lead Counsel's application for an award of attorneys' fees and expenses | 35 calendar days prior to the date of the Settlement Hearing |
| Deadline for receipt of objections and requests for exclusion | 21 calendar days prior to the date of the Settlement Hearing |
| File papers in response to any objections and in further support of final approval of the Settlement, the Plan of Allocation, and Co-Lead Counsel's application for an award of attorneys' fees and expenses | 7 calendar days prior to the date of the Settlement Hearing |
| Settlement Hearing | November 29, 2021 |
| Deadline for submitting Proofs of Claim | 120 calendar days after the Notice Date. |

## VIII.  CONCLUSION

For the reasons set forth above, Lead Plaintiffs respectfully request that the Court enter an order: (1) granting preliminary approval of the proposed Settlement; (2) approving the proposed form and manner of providing notice of the Settlement to the Settlement Class and appointing JND as the Claims Administrator; and (3) setting a schedule for completion of further Settlement-related proceedings, including providing notice to the Settlement Class and a date for the Settlement Hearing.

27

Dated:  August 18, 2021

/s/ Andrew J. Entwistle
Andrew J. Entwistle (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
Frost Bank Tower
401 Congress Avenue, Suite 1170
Austin, Texas 78701
Telephone: (512) 710-5960
aentwistle@entwistle-law.com

*Lead Counsel for The Gabelli Plaintiffs
and Co-Lead Counsel for the Class*

/s/ Ira A. Schochet
Ira A. Schochet (*pro hac vice*)
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
ischochet@labaton.com

*Lead Counsel for the Naya Group and
Co-Lead Counsel for the Class*

X. Jay Alvarez
X. Jay Alvarez (*pro hac vice*)
Steven W. Pepich (*pro hac vice*)
**ROBBINS GELLER RUDMAN
 & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, California 92101
Telephone: (619) 231-1058
jaya@rgrdlaw.com
stevep@rgrdlaw.com

*Counsel for Oklahoma Firefighters
Pension and Retirement System*

/s/ Bryan L. Bleichner
Karl L. Cambronne (MN #14321)
Bryan L. Bleichner (MN #326689)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South
Suite 1700
Minneapolis, Minnesota 55401
Telephone: (612) 339-7300
kcambronne@chestnutcambronne.com
bbleichner@chestnutcambronne.com

*Plaintiffs' Liaison Counsel*

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*/s/ Andrew J. Entwistle*
Andrew J. Entwistle