**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

|  |  |
|---|---|
| IN RE RESIDEO TECHNOLOGIES, INC. SECURITIES LITIGATION | Civil Action No. 0:19-cv-02863 (WMW/BRT) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND FOR FINAL CERTIFICATION OF THE SETTLEMENT CLASS**

## TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................2

ARGUMENT....................................................................................................................4

I.      THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL................4

      A.      The Standards for Final Approval .................................................................4

      B.      Lead Plaintiffs and Co-Lead Counsel Have Adequately Represented
      the Settlement Class ......................................................................................6

      C.      The Settlement Was Reached After Arm's-Length Negotiations with
      the Assistance of An Experienced Mediator .................................................7

      D.      The Relief that the Settlement Provides for the Settlement Class Is
      Adequate, Taking into Account the Costs and Risks of Further
      Litigation and All Other Relevant Factors ................................................. 10

            1.      The Risks of Establishing Liability and Damages Support
            Approval of the Settlement ............................................................... 11

            2.      The Settlement Is Reasonable in Light of the Likely
            Recoverable Damages ........................................................................ 16

            3.      The Costs and Delays of Continued Litigation Support
            Approval of the Settlement ............................................................... 18

            4.      All Other Factors Set Forth in Rule 23(e)(2)(C) Support
            Approval of the Settlement ............................................................... 19

      E.      The Settlement Treats Settlement Class Members Equitably Relative
      to Each Other............................................................................................... 22

      F.      Reaction of the Settlement Class to Date .................................................... 22

II.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ........................ 23

III.    CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED ........... 24

      A.      The Settlement Class Satisfies the Requirements of Rule 23(a) ................. 25

            1.      The Settlement Class Members Are Too Numerous to Be
            Joined ............................................................................................... 25

2.      There Are Common Questions of Law and Fact ............................ 26

3.      Lead Plaintiffs' Claims Are Typical of Those of the
        Settlement Class ................................................................ 27

4.      Lead Plaintiffs Will Fairly and Adequately Protect the
        Interests of the Settlement Class ........................................ 28

B.   The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ............ 29

1.      Common Legal and Factual Questions Predominate ...................... 30

2.      A Class Action Is Superior to Other Methods of Adjudication ....... 31

IV.   NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS
      OF RULE 23 AND DUE PROCESS ................................................... 32

CONCLUSION ...................................................................................... 33

## TABLE OF AUTHORITIES

**Cases**

*Affiliated Ute Citizens v. United States*,
        406 U.S. 128 (1972) ................................................................................. 31

*Alpern v. UtiliCorp United, Inc.*,
        84 F.3d 1525 (8th Cir. 1996). .................................................................. 27

*Amchem Prods. v. Windsor*,
        521 U.S. 591 (1997) ......................................................................25, 30, 32

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
        568 U.S. 455 (2013) .............................................................................6, 30

*Arkansas Teacher Retirement System v. Goldman Sachs Group, Inc.*,
        955 F.3d 254 (2d Cir 2020) ..................................................................... 18

*Basic Inc. v. Levinson*,
        485 U.S. 224 (1988) ................................................................................. 31

*Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*,
        No. 0:14-cv-00786-ADM-TNL, 2017 WL 2574005 (D. Minn. June 14,
        2017).................................................................................15, 17, 26, 33

*Caligiuri v. Symantec Corp.*,
        855 F.3d 860 (8th Cir. 2017) ..................................................................... 8

*City of Pontiac Gen. Emps.' Ret. Sys. v. Wal–Mart Stores, Inc.*,
        No. 5:12–cv–5162, 2016 WL 5400373 (W.D. Ark. Sept. 20, 2016) ...................... 26

*Comcast Corp. v. Behrend*,
        569 U.S. 27 (2013) ................................................................................... 31

*DeBoer v. Mellon Mortg. Co.*,
        64 F.3d 1171 (8th Cir. 1995) .............................................................. 10, 27

*Erica P. John Fund, Inc. v. Halliburton Co.*,
        563 U.S. 804 (2011) ................................................................................. 31

*George v. Uponor Corp.*,
        No. 12-249 (ADM/JJK), 2015 WL 5255280 (D. Minn. Sept. 9, 2015)................. 10

*Goldman Sachs Grp. v. Arkansas Tchr. Ret. Sys.*,
        141 S. Ct. 1951 (2021) ............................................................................. 18

*Grunin v. Int'l House of Pancakes*,
513 F.2d 114 (8th Cir. 1975)..................................................................32

*In re BankAmerica Corp. Sec. Litig.*,
210 F.R.D. 694 (E.D. Mo. 2002)............................................................19

*In re Centurylink Sales Practices & Sec. Litig.*,
No. 18-296, No. 17-2795 (MJD/KMM), 2021 WL 3080960 (D. Minn. July
21, 2021)....................................................................................passim

*In re Charter Commc'ns, Inc. Sec. Litig.*,
No. MDL 1506, 2005 WL 4045741 (E.D. Mo. June 30, 2005).......................23, 26

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
No. 1:17-md-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020),
*aff'd in part, rev'd in part, and remanded on other grounds*,
2021 WL 2250845 (11th Cir. June 3, 2021)................................................8

*In re MGM Mirage Sec. Litig.,*
708 F. App'x 894 (9th Cir. 2017)............................................................8

*In re Retek Inc. Sec. Litig.*,
236 F.R.D. 431 (D. Minn. 2006)............................................................28

*In re Select Comfort Corp. Sec. Litig.*,
202 F.R.D. 598 (D. Minn. 2001)............................................................31

*In re Signet Jewelers Ltd. Sec. Litig.*,
No. 1:16-cv-067280CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ......21

*In re Target Corp. Customer Data Sec. Breach Litig.*,
892 F.3d 968 (8th Cir. 2018)..................................................................5

*In re Uponor, Inc.*, *F1807 Plumbing Fittings Prods. Liab. Litig.*,
No. 11-MD-2247 ADM/JJK, 2012 WL 2512750 (D. Minn. June 29, 2012)...........5

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 01695(CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)................9

*Keil v. Lopez*,
862 F.3d 685 (8th Cir. 2017).......................................................4, 5, 22

*Khoday v. Symantec Corp.*,
No. 11-cv-180 (JRT/TNL), 2016 WL 1637039 (D. Minn. Apr. 5, 2016)
*report and recommendation adopted*, 2016 WL 1626836 (D. Minn. Apr.

22, 2016) .......................................................................................................... 8

*Lockwood Motors, Inc. v. Gen. Motors Corp.*,
    162 F.R.D. 569 (D. Minn. 1995) ......................................................................... 26

*Paxton v. Union Nat'l Bank*,
    688 F.2d 552 (8th Cir. 1982) ............................................................................... 6

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) ...................................................................... 5, 19

*Rawa v. Monsanto Co.*,
    No. 3:17CV01252 AGF, 2018 WL 2389040 (E.D. Mo. May 25, 2018) .............. 19

*Roofers' Pension Fund v. Papa*,
    333 F.R.D. 66 (D.N.J. 2019) .............................................................................. 30

*Van Horn v. Trickey*,
    840 F.2d 604 (8th Cir. 1988) ........................................................................ 5, 22

*W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
    325 F.R.D. 280 (D. Minn. 2018) ....................................................................... 26

## Rules

Fed. R. Civ. P. 23 .......................................................................................... passim

## Other Authorities

3B *Moore's Federal Practice* (2d ed. 1995) ................................................... 26

Cornerstone Research,
    *Securities Class Action Settlements: 2020 Review and Analysis* (2021) .............. 17

H.R. Rep. No. 104-369 (1995) (Conf. Rep.),
    reprinted in 1995 U.S.C.C.A.N. 730 .................................................................. 29

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiffs The Gabelli Asset Fund, The Gabelli Dividend & Income Trust, The Gabelli Focused Growth and Income Fund f/k/a The Gabelli Focus Five Fund, The Gabelli Multimedia Trust Inc., The Gabelli Value 25 Fund Inc., GAMCO International SICAV, and GAMCO Asset Management Inc. (collectively the "Gabelli Group"), Naya 1740 Fund Ltd., Naya Coldwater Fund Ltd., Naya Master Fund LP, and Nayawood LP (collectively, the "Naya Group" and, with the Gabelli Group, "Lead Plaintiffs"), and Oklahoma Firefighters Pension and Retirement System ("Oklahoma Firefighters") and, collectively with Lead Plaintiffs, "Plaintiffs") on behalf of themselves and the proposed Settlement Class, respectfully submit this memorandum of law in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and for Final Certification of the Settlement Class.[1]

---

[1] Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement, dated August 17, 2021 (the "Stipulation") (ECF No. 127-1)) or in the Joint Declaration of Andrew J. Entwistle and Ira A. Schochet in Support of: (I) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and for Final Certification of the Settlement Class; and (II) Co-Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses and Awards Pursuant to 15 U.S.C. ¶78u-4(a)(4) (the "Joint Declaration" or "Joint Decl."), filed herewith. Citations to "¶ _" in this memorandum refer to paragraphs in the Joint Declaration and citations to "Ex. ___" refer to exhibits in the Joint Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___." The first numerical reference is to the designation of the entire exhibit attached to the Joint Declaration and the second reference is to the exhibit designation within the exhibit itself. Also, unless otherwise noted, all references to "ECF_" are to the docket in *In re Resideo Technologies, Inc. Securities Litigation*, 19-cv-02863 (WMW/BRT), captioned above.

**INTRODUCTION**

Subject to Court approval, Plaintiffs have agreed to settle all claims in the Action[2] in exchange for a cash payment of $55 million, which has been deposited into an interest-bearing escrow account. ¶ 14. Plaintiffs respectfully submit that the proposed Settlement is an outstanding result for the Settlement Class and satisfies the standards for final approval under Rule 23(e)(2) of the Federal Rules of Civil Procedure.

As discussed below and in the accompanying Joint Declaration,[3] the Settlement was reached after extensive arm's-length settlement negotiations between experienced counsel, which included a mediation before retired United States District Court Judge Layn R. Phillips, one of the preeminent mediators for complex securities class action cases. The Settlement Amount represents a substantial percentage of the likely maximum potential damages and has been well received by the proposed class. If approved, the Settlement would be among the largest securities class action settlements ever in the District of Minnesota.

At the time the agreement to settle was reached, Plaintiffs and Co-Lead Counsel Entwistle & Cappucci LLP ("Entwistle & Cappucci") and Labaton Sucharow LLP ("Labaton Sucharow" and, collectively with Entwistle & Cappucci, "Co-Lead Counsel")

---

[2] The releases include any potential claims by Settlement Class Members against Honeywell related to its Spin-Off of Resideo.

[3] The Joint Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for detailed descriptions of, among other things: the nature of the claims asserted in the Action (¶¶ 18-37); the history, prosecution, and settlement of the Action (¶¶ 38-78); the risks and uncertainties of continued litigation of Action (¶¶ 79-95); and the proposed Plan of Allocation (¶¶ 104-110).

had a well-developed understanding of the strengths and weaknesses of the claims asserted in the Action. Before the Settlement was agreed to, Co-Lead Counsel had: (i) conducted an extensive investigation into investors' claims, including through interviews with a significant number of former employees of Resideo, fifteen of whom provided information as Confidential Witnesses; (ii) drafted a detailed consolidated complaint based on Co-Lead Counsel's investigation; (iii) successfully opposed Defendants' motion to dismiss through extensive briefing and oral argument; (iv) prepared for class certification including consulting with experts; (v) engaged in significant fact discovery, including review and analysis of Defendants' document production, which consisted of more than one million pages of documents; and (vi) participated in extensive arm's-length settlement negotiations, including in a mediation under the auspices of Judge Phillips, which involved each side's preparation of detailed mediation submissions, as well as critical analysis from the other side and from Judge Phillips and his team.

Plaintiffs and Co-Lead Counsel believe that the Settlement is particularly favorable given the risks of continued litigation. The Action presented significant risks in establishing both liability and damages through continued litigation that could have resulted in no recovery at all for the Settlement Class. In addition, if the litigation had continued, Plaintiffs would have to prevail at several additional stages, including class certification, summary judgment, trial, and appeals. This process would have taken years and presented risks at each stage. The Settlement avoids these risks and provides a substantial and certain benefit rather than the mere possibility of a recovery after additional years of litigation. Indeed, the Settlement has been well received by Settlement Class Members; to date, no

objections have been received and only two investors have asked to be excluded from the Settlement Class.

In light of these considerations and the other factors discussed below, Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate, and warrants final approval by the Court. Additionally, Plaintiffs request that the Court approve the Plan of Allocation, which was set forth in the Notice previously approved by the Court. The Plan of Allocation, which Co-Lead Counsel developed in consultation with Lead Plaintiffs' expert economist, provides a reasonable method for allocating the Net Settlement Fund among Settlement Class Members who submit valid claims based on damages they suffered on their investment in Resideo common stock. Finally, Plaintiffs request that the Court finally certify the Settlement Class, pursuant to Fed. R. Civ. P 23, for the purposes of entering judgment on the Settlement.

## ARGUMENT

## I.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23(e) requires that a court find a proposed class-action settlement "fair, reasonable, and adequate" before approving it. Fed. R. Civ. P. 23(e)(2). The Court's role in reviewing a class settlement is "to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *See Keil v. Lopez*, 862 F.3d 685, 693 (8th Cir. 2017).

### A.    The Standards for Final Approval

The Eighth Circuit has recognized that "[a] strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor." *See*

4

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999). This policy is "particularly strong in the class action context." *In re Uponor, Inc.*, *F1807 Plumbing Fittings Prods. Liab. Litig.*, No. 11-MD-2247 ADM/JJK, 2012 WL 2512750, at *7 (D. Minn. June 29, 2012).

In reviewing a settlement for final approval, Rule 23(e)(2) provides that the Court should determine whether a proposed settlement is "fair, reasonable, and adequate" after considering the following factors:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Traditionally, the Eighth Circuit has held that district courts should also consider the following four factors in evaluating a class-action settlement:

> (1) the merits of the plaintiff's case[s] weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement.

*In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 978 (8th Cir. 2018); *Keil*, 862 F.3d at 693 (quoting *Uponor*, 716 F.3d at 1063); *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988) (the "*Van Horn* Factors").

As discussed further below, these factors support approval of the Settlement.

**B.      Lead Plaintiffs and Co-Lead Counsel Have Adequately Represented the Settlement Class**

In determining whether to approve a class-action settlement, the court considers whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Adequacy of representation focuses on two issues: whether "(1) the class representatives have common interests with members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982).

Here, there can be little doubt that Lead Plaintiffs have adequately represented the Settlement Class. To start, there is no antagonism or conflict between Lead Plaintiffs and the Settlement Class. Lead Plaintiffs and the other Settlement Class Members all purchased or otherwise acquired Resideo common stock during the Class Period and were allegedly damaged by the same alleged false and misleading statements about Resideo's historical operation, product capabilities, supply chain woes and new product launches. If Plaintiffs proved their claims at trial, they would also prove the Settlement Class's claims. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459-60 (2013) (the investor class would "prevail or fail in unison" because claims were based on common misrepresentations and omissions). Further, Lead Plaintiffs were active and informed participants in the litigation and regularly communicated with counsel regarding the posture and progress of the Action, reviewed and/or discussed significant pleadings and

6

motions filed in the Action, and participated in settlement discussions, among other things. *See* Declaration of David Goldman (Ex. 8) ("Goldman Decl.") ¶¶ 3-7; Declaration of Ian Wylie (Ex. 9) ("Wylie Decl.") ¶¶ 3-6.

Moreover, Lead Plaintiffs and Co-Lead Counsel have more than adequately represented the Settlement Class in both their vigorous prosecution of the Action for nearly two years and in the negotiation and achievement of the Settlement. Entwistle & Cappucci and Labaton Sucharow are highly qualified and experienced in securities litigation, as set forth in their firm resumes (*see* Exs. 4- C, 5- C), as is counsel for Plaintiff Oklahoma Firefighters, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") (*see* Ex. 6-C).[4] These firms committed extensive resources and skillfully pursued the claims of the Settlement Class and were able to successfully prosecute the litigation against skilled opposing counsel. Indeed, as detailed in the Joint Declaration, ¶¶ 21 to 67, Lead Plaintiffs and their counsel conducted an extensive investigation, overcame Defendants' motion to dismiss, and obtained and reviewed substantial discovery in the face of a vigorous opposition.

### C. The Settlement Was Reached After Arm's-Length Negotiations with the Assistance of An Experienced Mediator

In weighing approval of a class-action settlement, the Court also considers whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Here, the Settlement was reached after months of arm's-length negotiations between experienced

---

[4] As set forth in Exhibit 6, Robbins Geller was active and engaged throughout the prosecution of the Action and provided substantial assistance to Co-Lead Counsel at Co-Lead Counsel's request.

counsel, an initial mediation process conducted under the supervision of Judge Phillips, and further direct and extensive arm's-length negotiations among counsel.

The Parties participated in a full day, videophonic mediation session before Judge Phillips on February 25, 2021. *See* Declaration of Layn R. Phillips (Ex. 1) ("Phillips Decl.) at ¶3. Before the session, the Parties exchanged and submitted to Judge Phillips detailed mediation statements and supporting exhibits concerning liability, loss causation, and damages. *Id*. At the mediation session, the Parties engaged in a full day of vigorous settlement negotiations but were unable to reach any agreement on a resolution of the Action. *Id*. Extensive negotiations between counsel over subsequent months, including direct negotiations and discussions through, and with the assistance of, Judge Phillips resulted in an agreement in principle on July 27, 2021 and, ultimately, the August 17, 2021 Stipulation. *Id*. at ¶4; ¶¶ 68-78; *see Khoday v. Symantec Corp.*, No. 11-cv-180 (JRT/TNL), 2016 WL 1637039, at *8 (D. Minn. Apr. 5, 2016) *report and recommendation adopted*, 2016 WL 1626836 (D. Minn. Apr. 22, 2016), *aff'd sub nom. Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017) (fact that settlement was "reached through the assistance of an experienced, independent mediator" weighed in favor of approval); *see also In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897 (9th Cir. 2017) (unpublished) (referring to Judge Phillips as a "nationally recognized mediator" and affirming settlement approval in part due to his representations); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT, 2020 WL 256132, at *6 (N.D. Ga. Mar. 17, 2020), *aff'd in part, rev'd in part, and remanded on other grounds*, 2021 WL 2250845 (11th Cir. June 3, 2021) (noting that Judge Phillips is "a retired federal judge with a wealth of experience in major complex

8

litigation" and crediting his opinion on the reasonableness of settlement and rigor of the negotiation process).

Plaintiffs and Co-Lead Counsel were well-informed of the strengths and weaknesses of their claims at the time of the settlement negotiations, having: (i) conducted an extensive investigation; (ii) performed extensive legal and factual research in preparing the Complaint; (iii) drafted the briefing in opposition to, and argued against Defendants' motion to dismiss, (iv) prepared to file a motion for class certification; and (v) reviewed defendants' extensive document production. *See* ¶¶ 21-67. The informed conclusion of Plaintiffs and Co-Lead Counsel that the Settlement is fair and reasonable and in the best interests of the Settlement Class further supports the Settlement's approval.

Further, the Settlement is endorsed by the Gabelli Group and the Naya Group, experienced institutional investors who suffered substantial losses. *See* Goldman Decl., Ex. 8 ¶ 8 and Wylie Decl., Ex. 9 ¶ 7. A settlement reached "under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness.'" *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007). Indeed, Lead Plaintiffs and their representatives who oversaw this action exemplify the qualities of the institutional investors Congress sought to empower in enacting the PSLRA to vigorously pursue investors' interests, and they diligently, expertly and faithfully carried out that role in demanding the best possible outcome for the Settlement Class here. *See generally* Exs. 8, 9.

The judgment of Co-Lead Counsel Entwistle & Cappucci and Labaton Sucharow, two firms with significant experience in securities class-action litigation, is also entitled to

9

"great weight" and supports approval of the settlement. *George v. Uponor Corp.*, No. 12-249 (ADM/JJK), 2015 WL 5255280, at *6 (D. Minn. Sept. 9, 2015) ("courts give 'great weight' to and may 'rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement'"); *see also DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) ("the views of counsel are to be accorded deference").

**D.      The Relief that the Settlement Provides for the Settlement Class Is Adequate, Taking into Account the Costs and Risks of Further Litigation and All Other Relevant Factors**

In determining whether a class action settlement is "fair, reasonable, and adequate," the Court also considers whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" as well as other relevant factors. Fed. R. Civ. P. 23(e)(2)(C)(i). This factor under Rule 23(e)(2)(C) encompasses at least two of the four traditional *Van Horn* factors: the merits of the plaintiffs' case weighed against the terms of the settlement and the complexity and expense of further litigation.

As further detailed in the Joint Declaration, continued litigation of the Action presented a number of significant risks that Plaintiffs would be unable to establish liability, loss causation, or damages. ¶¶ 79-95. Continuing the litigation through trial and appeals would also impose substantial additional costs on the Settlement Class and result in extended delays before any recovery could be achieved. The Settlement, which provides a $55 million cash payment for the benefit of the Settlement Class, provides certainty and avoids those further costs and delays. The Settlement is also reasonable when considered in relation to the potential recovery, which was far from certain, that might be obtained if Plaintiffs prevailed at summary judgment, trial, and on any appeals. As stated in the Joint

Declaration (¶ 91), the Settlement Amount of $55 million therefore represents 9 – 11 % of the maximum likely recoverable damages Plaintiffs could reasonably expect to establish at trial, assuming they proved all of their allegations and the jury accepted their damages methodology.

**1.    The Risks of Establishing Liability and Damages Support Approval of the Settlement**

While Plaintiffs and Co-Lead Counsel believe that the claims asserted against Defendants in the Action are meritorious, they recognize that this Action presented several substantial risks to establishing both liability and damages.

**(a)    Risks To Proving Liability**

Plaintiffs recognize that they faced significant challenges in proving that Defendants' statements were materially false and misleading when made and that Defendants acted with the requisite scienter. Assuming the claims survived a motion for summary judgment, a jury trial (which Plaintiffs and Defendants both demanded) would have required substantial factual and expert testimony, which is always uncertain. And, whatever the outcome at trial, it is virtually certain that an appeal would have been taken.

Although it is not seriously disputed that at least one Defendant made each of the statements alleged in the Complaint, Plaintiffs would, as an initial matter, have been required to prove the falsity of the statements, which Defendants vigorously contested in their motion to dismiss and their answer and would no doubt continue to contest throughout the litigation.

11

For example, Defendants argued their statements about having commenced shipping a key product were not false because a "beta" version had indeed shipped; that a different, "fake project," was actually real and simply behind schedule, factual disputes that would have pitted the testimony of current Resideo insiders against Plaintiffs and other outsiders. ¶ 81. While Plaintiffs had taken numerous steps to ensure the veracity of the witnesses and the information they provided, ¶ 82, to the extent the jury determined these witnesses to be mistaken, Plaintiffs might be unable to prove these allegations.

Additionally, Defendants continued to maintain that their statements regarding the state of their supply chain, and the purported cohesive nature of Resideo's business prior to the Spin Off, were neither literally false nor misleading to a reasonable investor, questions which would ultimately require the jury (with the benefit of hindsight) to apply their own analysis and judgment. ¶ 83.

Indeed, Defendants made these arguments in connection with their motion to dismiss, and repeatedly attempted to introduce facts not in the Complaint in support of their arguments. ¶ 84. While the Court correctly declined to consider matters outside the pleadings at the motion to dismiss stage, Defendants would not face such an impediment going forward.

Further, Plaintiffs would need to prove that Defendants acted with scienter, that is, that they made the alleged misstatements knowing they were false or in reckless disregard of their falsity or with the intent to mislead. On the motion to dismiss, which was framed by Plaintiffs' unanswered allegations taken as true, the Court found the inference of scienter at least as compelling as the competing non-culpable inferences that Defendants

12

urged. ECF 99 at 16. Prominent in the Court's reasoning were (1) the statements of confidential witnesses regarding discussions within Resideo about the undisclosed problems, including Resideo's management's instruction to use WhatsApp rather than company email for discussions of those problems, (2) the rapid discovery of the truth by Resideo's new CFO, and (3) Honeywell's positive performance following the spin compared to Resideo's disastrous first year. *See Id.* at 13-15. Defendants, however, had fact-based arguments as to all of these points.

On the last point, Defendants would undoubtedly tout at trial Resideo's success in its second and third year. Plaintiffs would argue these results were driven by increased demand for home solutions with the increase in work-from-home during 2020 and irrelevant in any event, and on that basis would seek through *in limine* motion practice to exclude the introduction of such evidence at trial. However, to the extent that Defendants were successful in defeating those motions, there is no guarantee that this defense would not sway at least some jurors.

Regarding the new CFO's rapid discovery of certain facts that were extant throughout the Class Period, the key witnesses are either controlled by Resideo as current officers or are themselves defendants, portending recalcitrance in their testimony to facts supporting Plaintiffs' theory. Indeed, in line with their purported "fraud by hindsight" theme, Defendants' counsel at the motion to dismiss hearing argued that the CFO's statements were "after-the-fact assessments of performance, not admissions." ECF No. 97 Mot. Hr'g Tr. at 42:10-11. Throughout the Action, Plaintiffs have argued that this defense was implausible — that the availability of sufficient value engineers for cost control, talent

13

engineers for innovation, new and competitive product lines and models for consumer appeal, etc., should have been highly important to the senior executives of a home products technology company. But Plaintiffs cannot be assured that the testimony at trial would persuade the jury as to scienter, on which Plaintiffs have the burden of proof. *See* ¶¶ 85-88.

Finally, while the allegations about active concealment are damning as pleaded, Defendants would undoubtedly offer alternate explanations at trial, as they attempted to do in support of their motion to dismiss. In the end, the true reasons for the concealment would require a jury to weigh the credibility of the confidential witness who provided Plaintiffs with this information (and any others Plaintiffs may identify during their continuing discovery and investigation). Those who Plaintiffs presented to testify about these events and conversations — by then several years in the past — would be subject to cross-examination, and Defendants might call as witnesses current Resideo employees inclined to contradict Plaintiffs' witnesses in this regard. Thus, Plaintiffs' ability to ultimately prove scienter remained uncertain. *See, e.g., In re Centurylink Sales Practices & Sec. Litig.*, No. 18-296, No. 17-2795 (MJD/KMM), 2021 WL 3080960, at *6 (D. Minn. July 21, 2021) (noting that plaintiffs faced a risk of losing based on the difficult of proving scienter and approving settlement).

All of the foregoing would have also posed considerable expense to the Parties and would have delayed the potential recovery for several years.

### (b)    Risks To Proving Loss Causation and Damages

Assuming Plaintiffs overcame the above risks and successfully established liability, Defendants could be expected to vigorously challenge Plaintiffs' ability to establish loss

causation and damages at every point possible had the Action continued — resulting in lengthy and expensive expert-driven summary judgment and *in limine* motion practice. While Defendants did not address loss causation issues in their Motion to Dismiss, that is likely because this element is subject only to Rule 8 notice pleading, the requirements of which were easily met here. But Defendants denied these allegations in their answer and were expected to present a robust defense on those issues through fact and expert discovery and at trial.

Among other things, both the alleged misstatements and the alleged corrective disclosures occurred contemporaneously with other news about Resideo (such as in a quarterly report or earnings call) which Defendants would argue was responsible for the movement in Resideo's stock price and unrelated to the alleged fraud. Plaintiffs have good counterarguments, including the reality that all of Resideo's problems were at least exacerbated by the undisclosed facts that it had no history operating as a unit, and that Honeywell had secretly stripped it of personnel, facilities, and intellectual property. However, Plaintiffs recognize that disentangling those losses attributable to fraud from those that may have occurred regardless is typically a challenging task that involves a battle of experts and a parsing of contemporaneous technical and economic records before a lay jury *See, e.g, Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, No. 0:14-cv-00786-ADM-TNL, 2017 WL 2574005, at *3 (D. Minn. June 14, 2017) (approving settlement and noting that challenges in establishing damages given that the parties retained qualified experts whose damages assessments were at "considerable variance").

15

As stated above, Lead Plaintiffs' expert's analysis and calculations indicate that maximum likely recoverable damages are in the range of $493 to $602 million, assuming that liability and all corrective disclosure dates were proven at trial. ¶91. However, Defendants would likely seek to undermine any award of damages by arguing, among other things:

- that a significant portion of the stock price declines were caused by the materialization of known risks as to which Defendants will argue they provided sufficient prior warnings. ¶ 92. Plaintiffs have pushed back consistently against this contention, noting, for example, that in each instance the Company discussed its supply chain issues, it falsely provided assurances that they had been largely overcome. *Id*. Nonetheless, a jury may be convinced by the volume of the Company's references to particular problems throughout the Class Period to accept some or all Defendants' arguments on this issue; and

- that some of the observed price declines could not be attributed to certain of the alleged disclosures as a matter of law because they did not meet a 95% statistical confidence level. ¶ 93. Plaintiffs have robust counterarguments that are well supported by decisional authority and academic literature, but they recognize that they faced uncertainty on this issue as well. *Id*.

While Plaintiffs believe their counterarguments on these points are well founded in fact and fully supported by law, if the jury were to credit Defendants' damages evidence and arguments over that of Plaintiffs, this could significantly reduce the recovery for the Settlement Class, even assuming liability were proven.

### 2. The Settlement Is Reasonable in Light of the Likely Recoverable Damages

The Settlement is also a favorable result when considered in relation to the amount of damages that could realistically be established at trial. Indeed, the Settlement here would be among the largest securities class action recoveries on behalf of investors in a publicly traded company in the District of Minnesota for claims under Section 10(b) and Section

20(a) of the Exchange Act — a fact that strongly supports the reasonableness of the settlement here. ¶ 14.

As noted above, Lead Plaintiffs' consulting damages expert estimated maximum damages in the range of $493 to $602 million if Plaintiffs prevailed on all liability issues and all corrective disclosure dates were proven, representing approximately 9% to 11% of the realistic maximum recoverable damages for the Settlement Class.

The level of recovery achieved through the Settlement is significantly greater than the recovery amount in comparable securities class action settlements with similar maximum damages — a factor that strongly supports approval. *See* Cornerstone Research, *Securities Class Action Settlements: 2020 Review and Analysis* (2021) (Fig. 5), Ex. 10 hereto at 6 (reporting that from 2011 to 2019, the median settlement recovery in securities fraud class actions with damages estimated between $500 and $999 million was 3.3%, and in 2020 it was 2.6%); *see also, e.g.*, *id.* at 20 (App'x 5) (in securities class actions in the Eighth Circuit from 2011 to 2020, the median settlement recovery was 6.1% of estimated damages); *Tile Shop*, 2017 WL 2574005, at *3 (holding settlement representing 6.8% to 9.5% of provable damages "strongly" supported approval, noting amount "exceeds the median recovery of estimated damages in similar securities class actions"); *see also Centurylink*, 2021 WL 3080960, at *7 (approving settlement of $55 million, representing 8% to 17% of estimated maximum recoverable damages).

**3.      The Costs and Delays of Continued Litigation Support Approval of the Settlement**

The substantial time and cost that would be required before any recovery could be obtained through litigation also strongly support approval of the Settlement. If the litigation had continued, Plaintiffs would have had to prevail at several additional stages: summary judgment, trial, and, if Plaintiffs had prevailed at trial, on the appeal that likely would have followed. *See* ¶ 80. This process would have taken years and presented new risks at each stage, including the risk of intervening changes in the law.

Indeed, for example, after the commencement of this case, the U.S. Supreme Court granted certiorari, heard argument and delivered a ruling with regard to the Second Circuit's decision in *Arkansas Teacher Retirement System v. Goldman Sachs Group, Inc.*, 955 F.3d 254 (2d Cir 2020) relating to the sufficiency of evidence Defendants are required to present on the issue of price impact to rebut the presumption of reliance on the market at class certification proceedings. *See Goldman Sachs Grp. v. Arkansas Tchr. Ret. Sys.*, 141 S. Ct. 1951 (2021). While Plaintiffs believe the implications of the Court's ruling in this case would be immaterial to their showing at class certification, it provides another potential quiver to Defendants' arsenal. More significantly, this sequence of events, all taking place during the pendency of this case, illustrates that the law upon which Plaintiffs rely may give way to unexpected developments.

The Settlement avoids these risks and will provide a prompt and certain benefit to the Settlement Class, rather than risk a smaller recovery — or none at all — after additional years of litigation and appeals. *See In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694,

702 (E.D. Mo. 2002) (finding that "the complexity, expense and duration of litigation weigh in favor of approving the proposed settlement" because trial of the securities action "would be lengthy, costly and complex," and, "[r]egardless of the outcome at trial, post-judgment appeals were likely").[5]

### 4. All Other Factors Set Forth in Rule 23(e)(2)(C) Support Approval of the Settlement

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" "the terms of any proposed award of attorney's fees, including timing of payment;" and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors also supports approval of the Settlement or is neutral and does not suggest any basis for inadequacy of the Settlement.

First, the procedures for processing Settlement Class Members' claims and distributing the proceeds of the Settlement to eligible claimants in this case are well-established, effective methods that have been widely used in securities class-action litigation. As set forth in the notice approved by the Court at the preliminary approval stage, the proceeds of the Settlement will be distributed to class members who submit eligible

---

[5] Defendants' ability to pay an amount greater than the Settlement Amount does not suggest that the Settlement is inadequate. *See Petrovic,* 200 F.3d at 1152 ("While it is undisputed that [defendant] could pay more than it is paying in this settlement, this fact, standing alone, does not render the settlement inadequate."; *Rawa v. Monsanto Co.,* No. 3:17CV01252 AGF, 2018 WL 2389040, at *7 (E.D. Mo. May 25, 2018) (this factor was "neutral" where Defendants' financial condition would not prevent it paying a larger amount).

Claim Forms with required documentation to the Court-appointed Claims Administrator, JND Legal Administration ("JND"). ¶ 107. JND will provide claimants with an opportunity to cure any deficiencies in their claims or request review by the Court of a denial of their claim and will mail or wire eligible claimants their *pro rata* share upon completion of the claims process.[6]

After the Effective Date of the Settlement, in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund will be distributed to Authorized Claimants. If there is any balance remaining in the Net Settlement Fund after the initial distribution, and it would be feasible and economical to conduct a further distribution, JND will conduct a further distribution of remaining funds among Authorized Claimants who have cashed their checks in an equitable and economic fashion. Any *de minimis* balance that still remains after re-distributions and after payment of outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, shall be contributed to a non-sectarian, not-for-profit charitable organization(s) serving the public interest designated by Lead Plaintiffs and approved by the Court. Ex. 2-A ¶72.

---

[6] The appropriateness of the details of the Plan of Allocation, that is, the fairness of the algorithm for determining the amount to be distributed to each claimant is discussed in Part I.E and Part II, *infra*. The Settlement is not a claims-made settlement. If the Settlement is approved, Defendants will have no right to the return of any portion of Settlement based on the number or value of Claims submitted. *See* Stipulation, ECF 127-1, ¶ 12.

Second, the relief provided for the Settlement Class is also adequate when the terms of the proposed award of attorney's fees are taken into account. As discussed in the accompanying Fee and Expense Brief, the proposed attorneys' fees of 25% of the Settlement Fund, to be paid upon approval by the Court, are reasonable in light of the efforts of Plaintiffs' Counsel and the risks in the litigation. Moreover, approval of attorneys' fees is entirely separate from approval of the Settlement in this case, and neither Plaintiffs nor Co-Lead Counsel may terminate the Settlement based on any ruling with respect to attorneys' fees. *See* Stipulation (ECF 127-1) at ¶ 39.

Third, Rule 23 asks the court to consider the fairness of the proposed settlement in light of any agreements required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). Here, the only agreements between the Parties concerning the Settlement are the Term Sheet memorializing the agreement in principle, the Stipulation and the Parties' confidential Supplemental Agreement Regarding Requests for Exclusion ("Supplemental Agreement"), which sets forth the conditions under which Defendants have the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed a certain specified threshold. *See* Stipulation ¶ 40(a). This does not weigh against approval. *Centurylink*, 2021 WL 3080960 at *7, ("The Court routinely approves class action settlements when there is a confidential agreement allowing the defendant to terminate the settlement if a particular threshold of class members opt out. The existence of such an agreement does not weigh against approval."). *See also In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-cv-067280CM-SDA, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020) ("This type of agreement is a standard provision in securities

21

class actions and has no negative impact on the fairness of the Settlement.").  As is standard in securities class actions, the Supplemental Agreement is kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement, to the detriment of the Settlement Class.[7]

### E.    The Settlement Treats Settlement Class Members Equitably Relative to Each Other

The proposed Settlement treats members of the Settlement Class equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). As discussed below in Part II, pursuant to the Plan of Allocation, eligible claimants approved for payment by the Court will receive their *pro rata* share of the recovery based on their purchases or acquisitions of Resideo common stock during the Class Period. ¶¶ 107-110. Plaintiffs will receive the same level of *pro rata* recovery as all other Settlement Class Members.[8]

### F.    Reaction of the Settlement Class to Date

In considering approval of a settlement, the court also may consider "the amount of opposition to the settlement." *See, e.g.*, *Keil*, 862 F.3d at 693; *Van Horn*, 840 F.2d at 607. To date, the reaction of the Settlement Class has been positive. JND began mailing copies of the Notice and Claim Form (the "Notice Packet") to potential Settlement Class Members and nominees on November 4, 2021. *See* Declaration of Luiggy Segura (Ex. 2) ("Segura Decl.") ¶ 6. As of December 21, 2021, JND had mailed a total of 468,104 copies of the

---

[7] Pursuant to its terms, the Supplemental Agreement may be submitted to the Court in camera under seal.

[8] Lead Plaintiffs have separately moved for modest awards to compensate them for their time expended on this action, pursuant to the PSLRA. The Settlement is in no way contingent upon whether any such awards are granted.

Notice Packet. *See id*. ¶ 14. The Notice set out the essential terms of the Settlement and informed potential Settlement Class Members of, among other things, their right to opt out of the Settlement Class or object to any aspect of the Settlement, and the procedure for submitting Claim Forms. While the deadline set by the Court for Settlement Class Members to exclude themselves or object to the Settlement has not yet passed, to date, no objections to the Settlement or the Plan of Allocation has been received and only two requests for exclusion have been received. ¶ 7; Ex. 2 ¶ 18.[9]

In sum, all of factors to be considered under Rule 23(e)(2) and Eighth Circuit law support a finding that the Settlement is fair, reasonable, and adequate.

## II.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable, and adequate. *See In re Charter Commc'ns, Inc. Sec. Litig.*, No. MDL 1506, 2005 WL 4045741, at *10 (E.D. Mo. June 30, 2005). A plan of allocation "need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *Id.* (citation omitted).

Here, the proposed Plan of Allocation, which was developed by Co-Lead Counsel in consultation with Lead Plaintiffs' expert economist, provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms. ¶ 107. In developing the Plan of Allocation, Lead Plaintiffs' expert

---

[9] The deadline for submitting objections and requesting exclusion from the Settlement Class is January 6, 2022. As provided in the Preliminary Approval Order, Plaintiffs will file reply papers by January 20, 2022 addressing the requests for exclusion and any objections that may be received.

calculated the amount of estimated artificial inflation in the prices of Resideo's common stock during the Class Period that allegedly was proximately caused by Defendants' alleged false and misleading statements. He did so by considering the price changes in these securities in reaction to the alleged corrective disclosures, adjusting for changes attributable to market and industry factors and assumptions related to the case provided by Co-Lead Counsel. ¶ 106; Ex. 2-A ¶ 57-59.

Under the Plan of Allocation, a "Recognized Loss Amount" will be calculated for each share of Resideo common stock listed in the Claim Form and adequately documented that was acquired during the Class Period. Ex. 2-A ¶¶ 60-61. In general, the Recognized Loss Amount will be the difference between the estimated artificial inflation on the date of purchase and the estimated artificial inflation on the date of sale, or the difference between the actual purchase price and sales price, whichever is less. Ex. 2-A ¶ 61. Claimants who acquired and sold all their shares of Resideo common stock before the first corrective disclosure, or who acquired and sold all their shares or notes between two consecutive dates on which at least a portion of artificial inflation was allegedly removed from the price of Resideo common stock, will have no Recognized Loss Amount under the Plan of Allocation with respect to those transactions because any loss they suffered would not have been caused by the disclosure of the alleged fraud. *Id*. To date, no objections to the proposed Plan of Allocation have been received. *See* ¶ 8.

## III.   **CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED**

For purposes of the Settlement only, Lead Plaintiffs seek certification of the Settlement Class. The Court previously granted preliminary certification to the Settlement

24

Class under Rules 23(a) and (b)(3). *See* ECF No. 135 at 2-3. Because nothing has occurred since then to cast doubt on the propriety of class certification for settlement purposes, and no objections to certification have been received to date, the Court should grant final certification. Accordingly, for all the reasons stated in the Memorandum of Law in Support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 126) at 16-23, which are repeated in substance below for the Court's convenience, Lead Plaintiffs request that the Court reaffirm its determinations and finally certify the Settlement Class for purposes of carrying out the Settlement, appoint Lead Plaintiffs as Class Representatives, and Entwistle & Cappucci and Labaton Sucharow as Class Counsel.

### A.    The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997).

### 1.    The Settlement Class Members Are Too Numerous to Be Joined

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a). The "numerosity requirement is generally satisfied in class actions involving nationally traded securities." *W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 325 F.R.D. 280,

286 (D. Minn. 2018); *City of Pontiac Gen. Emps.' Ret. Sys. v. Wal–Mart Stores, Inc.*, No. 5:12–cv–5162, 2016 WL 5400373, at \*4 (W.D. Ark. Sept. 20, 2016). While "[t]here is no absolute number that satisfies the numerosity requirement," a proposed class with approximately 40 members has been found to satisfy the numerosity requirement. *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 574 (D. Minn. 1995) (quoting 3B *Moore's Federal Practice* ¶ 23.05[1] at 23- 143-45 (2d ed. 1995)).

Here, the numerosity requirement is met because: (i) Resideo's common stock was actively traded on the New York Stock Exchange during the Class Period; and (ii) Resideo had approximately 122 million shares of common stock issued and outstanding on average during the Class Period. This more than meets the numerosity requirement. *See, e.g., Tile Shop*, 2016 WL 4098741, at \*3 (class met numerosity requirement where 5.175 million shares of stock were sold in public offering).

### 2. There Are Common Questions of Law and Fact

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "In securities fraud class actions, questions of misrepresentation, materiality and scienter are the paradigmatic common question[s] of law or fact." *CenturyLink*, 337 F.R.D. at 202 (citation omitted); *see also Charter Commc'ns*, 2005 WL 4045741, at \*11 ("Courts repeatedly have held that common questions regarding defendants' liability are appropriate for class-wide treatment, even if there are individual differences in Class members' damages.").

Here, there are numerous common questions of law and fact, including: (i) whether Defendants' alleged misrepresentations and omissions violated the federal securities laws;

(ii) whether Defendants misrepresented material facts about the Company's product lines, supply chain and new product introductions during the Class Period; (iii) whether Defendants are liable for the alleged misrepresentations and omissions described herein; (iv) whether the Individual Defendants acted with scienter; (v) whether Defendants' alleged misrepresentations and omissions caused Settlement Class Members to suffer a compensable loss; and (vi) whether the members of the Settlement Class have sustained damages, and the proper measure of damages. Because these questions of law and fact are common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met. *See, e.g., CenturyLink,* 337 F.R.D. at 202.

### 3.   Lead Plaintiffs' Claims Are Typical of Those of the Settlement Class

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174. "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

Here, Lead Plaintiffs' claims and injuries are typical of the Settlement Class because they all arise from the same alleged course of conduct by Defendants. Lead Plaintiffs allege that they, like the rest of the Settlement Class, purchased Resideo common stock at prices artificially inflated by Defendants' misrepresentations and omissions. In addition, Lead

Plaintiffs, like all other Settlement Class Members, were subsequently damaged when the price of Resideo's common stock declined after the truth of Defendants' fraud was revealed. The shared factual circumstances and legal arguments supporting the claims of Plaintiffs and the Settlement Class demonstrate typicality under Rule 23(a)(3). *See, e.g., CenturyLink*, 337 F.R.D. at 202.

> **4.     Lead Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class**

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). The Court must measure the adequacy of representation by two standards: (1) whether the class representatives have common interests with the members of the class; and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel. *In re Retek Inc. Sec. Litig.*, 236 F.R.D. 431, 435 (D. Minn. 2006). Lead Plaintiffs readily satisfy both prongs of that standard.

First, like other members of the Settlement Class, Lead Plaintiffs purchased Resideo common stock during the Class Period at prices artificially inflated by Defendants' misrepresentations and omissions and suffered significant damages when the price of Resideo's common stock declined when the truth was revealed. Moreover, Lead Plaintiffs have been diligently overseeing counsel's efforts and are committed to fulfilling their responsibility to maximize the recovery on behalf of the Settlement Class. *See* Goldman Decl., Ex. 8 ¶¶ 3-7 and Wylie Decl., Ex. 9 ¶¶ 3-6. In addition, the fact that Lead Plaintiffs are institutional investors that share the Settlement Class's common interests supports a

finding of adequacy. *See* H.R. Rep. No. 104-369, 34 (1995) (Conf. Rep.), reprinted in 1995 U.S.C.C.A.N. 730, 733 (the Private Securities Litigation Reform Act of 1995 was enacted "to increase the likelihood that institutional investors will serve as lead plaintiffs.").

Second, Lead Plaintiffs have also retained qualified counsel, further supporting a finding of adequacy. In appointing class counsel, the court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Here, Lead Plaintiffs retained Entwistle & Cappucci and Labaton Sucharow, and Plaintiff Oklahoma Firefighters retained Robbins Geller, three firms that are eminently qualified to represent the Settlement Class in this case and have a wealth of experience and history of successfully prosecuting securities fraud actions. Exs. 4-C, 5-C, and 6-C. Plaintiffs' Counsel successfully defeated Defendants' motion to dismiss, negotiated a case schedule and ESI protocol, propounded discovery, pursued third-party subpoenas and have conducted significant work with experts to pursue the claims of the Settlement Class. Moreover, these firms have substantial experience in securities class action litigation and have successfully prosecuted class actions in state and federal court.

### B.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly

and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class satisfies these requirements.

### 1.     Common Legal and Factual Questions Predominate

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. This inquiry is satisfied where "questions of law or fact common to the class will 'predominate over any questions affecting only individual members' as the litigation progresses." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 467 (2013); see also *Roofers' Pension Fund v. Papa*, 333 F.R.D. 66, 78-79 (D.N.J. 2019) ("[T]he predominance inquiry turns on whether the evidence necessary to prove the essential elements of the underlying claims will vary from class member to class member, causing the Court to engage in individual treatment of the issues."). This "test [is] readily met in certain cases alleging . . . securities fraud." *Amchem*, 521 U.S. at 625.

Here, the predominance standard is easily met, because the core factual and legal questions in the Action are common to all Settlement Class Members. Indeed, courts have held that the elements of materiality, falsity, and loss causation are all paradigmatic common questions for the Section 10(b) claims at issue here. *See, e.g., Amgen*, 568 U.S. at 467 ("materiality is a 'common questio[n]' for purposes of Rule 23(b)(3)"); *id*. at 475 ("this Court has held that loss causation and the falsity or misleading nature of the defendant's alleged statements or omissions are common questions that need not be adjudicated before

a class is certified"); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011) (holding that plaintiff need not prove loss causation at class certification).[10]

## 2.    A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3).

Here, each of these factors shows that the superiority requirement is met in this case. First, Lead Plaintiffs seek to represent a class of thousands of Resideo stock purchasers whose individual damages may be too small to make the expense of litigation worthwhile. Second, with the exception of the derivative actions pending against Resideo, Co-Lead Counsel is unaware of any other litigation concerning this controversy already begun by or against class members. Third, concentrating the litigation in this forum will promote judicial efficiency by resolving the claims of thousands of shareholders in one case. *In re Select Comfort Corp. Sec. Litig.*, 202 F.R.D. 598, 611 (D. Minn. 2001). Finally, this case

---

[10] While Defendants do not dispute the certification of the Settlement Class, in any event, the predominance requirement is met here because reliance can be presumed under the presumptions set forth in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) and *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), and damages are measurable using a common methodology as required by *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).

does not present any manageability concerns. *See Amchem*, 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").

## IV.   NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

The Notice to the Settlement Class satisfied the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Notice also satisfied Rule 23(e)(1), which requires that notice of a settlement be "reasonable" — *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975) (citation omitted).

JND began sending copies of the Notice Packet to potential Settlement Class Members on November 4, 2021. *See* Ex. 2-A at ¶ 6. As of December 21, 2021, JND has disseminated over 468,104 copies of the Notice Packet to potential Settlement Class Members and nominees. *Id*. ¶ 14. In addition, JND caused the Summary Notice to be published twice in *The Wall Street Journal* and transmitted twice over *PR Newswire* (on November 18, 2021 and November 26, 2021). *Id*. ¶ 15. Copies of the Notice and Claim Form, as well as other relevant documents, including the Complaint, the Stipulation, and the Preliminary Approval Order, were made available on the settlement website maintained by JND beginning on November 4, 2021. *Id*. ¶ 17. These documents were also made

available on Entwistle & Cappucci's and Labaton Sucharow's websites. ¶ 148. This combination of individual mail to all Settlement Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely circulated publication, transmitted over newswires, and set forth on internet websites, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *Tile Shop*, 2017 WL 2574005, at *1-2 (approving comparable notice).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate and finally certify the Settlement Class for the purposes of entering judgment.

Dated: December 22, 2021

Respectfully submitted,

*/s/ Andrew J. Entwistle*
Andrew J. Entwistle (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
Frost Bank Tower
401 Congress Avenue, Suite 1170
Austin, Texas 78701
Telephone: (512) 710-5960
aentwistle@entwistle-law.com

*Lead Counsel for The Gabelli Plaintiffs and Co-Lead Counsel for the Class*

*/s/ Ira A. Schochet*
Ira A. Schochet (*pro hac vice*)
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
ischochet@labaton.com

*Lead Counsel for the Naya Group and Co-Lead Counsel for the Class*

*/s/ X. Jay Alvarez*
X. Jay Alvarez (*pro hac vice*)
Steven W. Pepich (*pro hac vice*)
**ROBBINS GELLER RUDMAN & DOWD LLP**

*/s/ Bryan L. Bleichner*
Karl L. Cambronne (MN #14321)
Bryan L. Bleichner (MN #326689)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South
Suite 1700
Minneapolis, Minnesota 55401

33

655 West Broadway, Suite 1900
San Diego, California 92101
Telephone: (619) 231-1058
jaya@rgrdlaw.com
stevep@rgrdlaw.com

*Counsel for Oklahoma Firefighters
Pension and Retirement System*

Telephone: (612) 339-7300
kcambronne@chestnutcambronne.com
bbleichner@chestnutcambronne.com

*Plaintiffs' Liaison Counsel*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

IN RE RESIDEO TECHNOLOGIES, INC.
SECURITIES LITIGATION

Civil Action No. 0:19-cv-02863
(WMW/BRT)

**CERTIFICATE OF COMPLIANCE FOR MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION
AND FOR FINAL CERTIFICATION OF THE SETTLEMENT CLASS**

I, Andrew J. Entwistle, certify that the accompanying Memorandum of Law in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Final Certification of the Settlement Class was prepared using Microsoft Word and when applied specifically to include all text, including headings, footnotes and quotations, generated a word count 9,029 in 13-point Times New Roman font.

Dated: December 22, 2021

Respectfully submitted,

*/s/ Andrew J. Entwistle*
Andrew J. Entwistle (*pro hac vice*)