**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE RESIDEO TECHNOLOGIES, INC. SECURITIES LITIGATION | Civil Action No. 0:19-cv-02863-(WMW/BRT) |

**MEMORANDUM OF LAW IN SUPPORT OF CO-LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES AND AWARDS PURSUANT TO 15 U.S.C. ¶ 78u-4(a)(4)**

# **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ...........................................................................2

II.     THE REQUESTED ATTORNEY FEES ARE REASONABLE UNDER
        RULE 23.................................................................................................................4

        A.      The Requested Fees Are Reasonable Under the Johnson Factors
                Typically Considered by This Court ..........................................................6

                1.      The Benefit Conferred on the Settlement Class Supports a
                        25% Fee............................................................................................7

                2.      The Risk to which Plaintiffs' Counsel Were Exposed
                        Supports a 25% Fee..........................................................................8

                3.      The Difficulty of the Legal and Factual Issues in the Case
                        Support a 25% Fee ...........................................................................9

                4.      The Skill of the Lawyers for Both Plaintiffs and Defendants
                        Supports a 25% Fee........................................................................10

                5.      The Time and Labor Involved Supports a 25% Fee .......................11

                6.      The Reaction of the Settlement Class Supports a 25% Fee ............12

                7.      The Comparison Between the Requested Attorney Fee
                        Percentage and Percentages Awarded in Similar Cases
                        Supports a 25% Fee........................................................................13

        B.      The Approval of Lead Plaintiffs Also Supports the Requested Fee ...........14

        C.      The Requested Fee Is Also Reasonable Under a Lodestar Cross-
                Check.......................................................................................................15

III.    PLAINTIFFS' COUNSEL'S LITIGATION EXPENSES ARE
        REASONABLE AND SHOULD BE APPROVED ...........................................17

IV.     LEAD PLAINTIFFS SHOULD BE COMPENSATED FOR THEIR TIME
        EXPENDED IN PROSECUTION OF THE ACTION PURSUANT TO 15
        U.S.C. §78U-4(A)(4)..........................................................................................19

V.      CONCLUSION ..................................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*,
No. 0:14–cv–00786–ADM–TNL, 2017 WL 2588950 (D. Minn. June
14, 2017) .................................................................................................... 7, 9, 10

*Blanchard v. Bergeron,*
489 U.S. 87 (1989) .............................................................................................. 6

*Caligiuri v. Symantec Corp*,
855 F.3d 860 (8th Cir. 2017) ............................................................................. 5

*City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*,
No. 17 Civ. 10014 (LGS), 2020 WL 7413926 (S.D.N.Y. Dec. 17, 2020) ............. 14

*Goldman Sachs Grp. v. Arkansas Tchr. Ret. Sys.*,
141 S. Ct. 1951 (2021) ....................................................................................... 9

*Grunin v. Int'l House of Pancakes*,
513 F.2d 114 (8th Cir. 1975) ............................................................................. 15

*In re AT & T Corp.*,
455 F.3d 160 (3d Cir. 2006) .............................................................................. 19

*In re BankAmerica Corp. Sec. Litig.*,
228 F. Supp. 2d 1061 (E.D. Mo. 2002),
*aff'd*, 350 F.3d 747 (8th Cir. 2003) ................................................................. 19

*In re Centurylink Sales Pracs. & Sec. Litig.*,
No. CV 18-296 (MJD/KMM), 2021 WL 3080960 (D. Minn. July 21,
2021) ..............................................................................................................*passim*

*In re Charter Commc'ns, Inc., Sec. Litig.*,
No. 4:02-CV-1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005)......... 19, 20

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06–CV–1825 (NGG)(RER), 2010 WL 2653354 (E.D.N.Y. June 24,
2010)................................................................................................................. 15

*In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*,
No. 05–1708 (DWF/AJB), 2008 WL 682174 (D. Minn. Mar. 7, 2008) ............... 18

*In re Infospace, Inc.*,
330 F. Supp. 2d 1203 (W.D. Wash. 2004) ........................................................ 18

*In re Pemstar, Inc. Sec. Litig.*,
No. 02-1821 (DWF/SRN), slip op. (D. Minn. May 27, 2005) ..............................13

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005),
*as amended* (Feb. 25, 2005) ...................................................................... 16

*In re U.S. Bancorp Litig.*,
291 F.3d 1035 (8th Cir. 2002) ......................................................................5

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 01695(CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ............... 15

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005) ..........................................................*passim*

*Johnson v. Ga. Highway Express*,
488 F.2d 714 (5th Cir. 1974) ...................................................................... 6

*Johnston v. Comerica Mortg. Corp.*,
83 F.3d 241 (8th Cir. 1996) .........................................................................4

*Jorstad v. IDS Realty Tr.*,
643 F.2d 1305 (8th Cir. 1981) ..................................................................... 15

*Keil v. Lopez*,
862 F.3d 685 (8th Cir. 2017) .................................................................. 6, 15

*Khoday v. Symantec Corp.*,
No. 11–cv–180 (JRT/TNL), 2016 WL 1637039 (D. Minn, Apr. 5, 2016) .....*passim*

*Petrovic v. Amoco Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) ................................................................. 4, 15

*Tussey v. ABB, Inc.*,
No.: 06-CV-04305-NKL, 2019 WL 3859763 (W.D. Mo. Aug. 16, 2019) ...... 18, 19

*Yarrington v. Solvay Pharm., Inc.*,
697 F. Supp. 2d 1057 (D. Minn. 2010) .................................................. 13, 15, 16

**Statutes**

15 U.S.C. § 78u ...................................................................................... 1, 19

**Rules**

Fed. R. Civ. P. 23(h)............................................................................................... 4

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995),
      reprinted in 1995 U.S.C.C.A.N. 730, 731 .............................................. 14

McIntosh and Starykh, *Recent Trends in Securities Class Action Litig.: 2020
      Full-Year Review*,
      NERA Economic Consulting (Jan. 25, 2021) ......................................... 14

Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, Court-appointed Co-Lead Counsel Entwistle & Cappucci LLP ("Entwistle & Cappucci") and Labaton Sucharow LLP ("Labaton Sucharow") (collectively, "Co-Lead Counsel") respectfully submit this memorandum of law in support of their motion for: (i) an award of attorneys' fees to Plaintiffs' Counsel[1] in the amount of 25% of the Settlement; (ii) reimbursement of their litigation expenses; and (iii) modest awards to Lead Plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(4).[2]

---

[1] "Plaintiffs' Counsel" consist of: (i) Co-Lead Counsel; (ii) Robbins Geller Rudman & Dowd LLP, counsel for additional Plaintiff Oklahoma Firefighters Pension and Retirement System ("Oklahoma Firefighters" and, collectively with Lead Plaintiffs, "Plaintiffs") and (iii) Chestnut Cambronne PA ("Chestnut Cambronne"), liaison counsel for the class. Additional counsel (a) Berman Tabacco, (b) Vanoverbeke, Michaud & Timmony, P.C., and (c) Derryberry & Naifeh, LLP, will also be paid out of any fee award ordered by the Court for their efforts prosecuting the claims asserted in the Action.

[2] Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement, dated August 17, 2021 (the "Stipulation" (ECF 127-1)) or in the Joint Declaration of Andrew J. Entwistle and Ira A. Schochet in Support of: (I) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and for Final Certification of the Settlement Class; and (II) Co-Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses and Awards Pursuant to 15 U.S.C. ¶78u-4(a)(4) (the "Joint Declaration" or "Joint Decl."), filed herewith. Citations to "¶__" in this memorandum refer to paragraphs in the Joint Declaration and citations to "Ex.___" refer to exhibits in the Joint Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___-___." The first numerical reference is to the designation of the entire exhibit attached to the Joint Declaration and the second reference is to the exhibit designation within the exhibit itself. Also, unless otherwise noted, all references to "ECF __" are to the docket in *In re Resideo Technologies, Inc. Securities Litigation*, 19-cv-02863 (WMW/BRT), captioned above.

## I.    PRELIMINARY STATEMENT

After nearly two years of hard-fought litigation, during which Plaintiffs' Counsel advanced all litigation expenses and put more than 11,700 hours into prosecuting this case on a contingency-fee basis, Co-Lead Counsel successfully reached a settlement agreement with Defendants that provides for a cash payment of $55 million for the Settlement Class. As further detailed in the accompanying Joint Declaration,[3] this exceptional result was achieved through Plaintiffs' Counsel's vigorous efforts, including conducting an extensive pre-suit investigation, interviewing numerous former employees of Resideo, drafting a comprehensive 170 page complaint, overcoming Defendants' motion to dismiss, engaging in extensive discovery (including obtaining and analyzing more than one million pages of documents from Defendants and third parties), preparing to file a motion for class certification (which was due in the weeks after the Parties entered into the Settlement), and securing a settlement for a substantial amount for the Settlement Class — all of which was performed while Co-Lead Counsel faced significant risks, at every stage, that the claims here would ultimately prove unsuccessful.

For their efforts on behalf of the Settlement Class, Co-Lead Counsel seek a percentage fee award of 25% of the Settlement Fund, *i.e.*, $13,750,000, plus any accrued

---

[3] The Joint Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for detailed descriptions of, among other things: the nature of the claims asserted in the Action (¶¶ 18-37); the risks associated with the prosecution of Action (¶¶ 79-95; 117-124); and the services Plaintiffs' Counsel provided for the benefit of the Settlement Class (¶¶ 21-78, 125).

interest. This requested fee has been approved by Lead Plaintiffs[4] and is on the low end of the typical award in common fund cases in this District. It is also reasonable given the result achieved and the substantial work Co-Lead Counsel performed, particularly in light of the significant risks in the case.

As is set forth below, the $55 million settlement is an impressive recovery. It is among the largest securities settlements in the history of the District of Minnesota and, on a percentage basis, it is more than the median recovery for securities cases with similar damages. In short, the resolution here was a significant success for the Settlement Class. Moreover, given the scope of Plaintiffs' Counsel's efforts here, the 25% requested fee will ultimately result in a modest lodestar multiplier of approximately 1.30 for Plaintiffs' Counsel.

Co-Lead Counsel also request reimbursement of reasonable litigation expenses incurred by Plaintiffs' Counsel in this litigation. Finally, Co-Lead Counsel request modest awards to Lead Plaintiffs to reimburse them for time spent in the prosecution of the Action, pursuant to the PSLRA.

Co-Lead Counsel's fee and expense requests are eminently reasonable, and they should be granted.

---

[4] *See* Declaration of David Goldman (Ex. 8) ("Goldman Decl.") ¶¶ 9-11; Declaration of Ian Wylie (Ex. 9) ("Wylie Decl.") ¶¶ 8-10.

3

## II.    THE REQUESTED ATTORNEY FEES ARE REASONABLE UNDER RULE 23

Despite the extraordinary result achieved in this case, Co-Lead Counsel seek a relatively modest 25% fee award, comfortably within the ordinary range of compensation awarded in this District, using the methodology well established in the Eighth Circuit. "An award of attorney fees is committed to the sound discretion of the district court." *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (citing *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); Fed. R. Civ. P. 23(h)). "Courts utilize two main approaches to analyzing a request for attorney fees." *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996). "Under the 'lodestar' methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action." *Id.* "Another method, the 'percentage of the benefit' approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." *Id.* at 244-45.

"In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established.'" *Xcel Energy*, 364 F. Supp. 2d at 991 (quoting *Petrovic*, 200 F.3d at 1157); *see also Xcel Energy*, 364 F. Supp. 2d at 991 & n.6 (noting that "[t]here are strong policy reasons behind the judicial and legislative preference for the percentage of recovery method of determining attorney fees

4

in these cases" and that "[f]or purposes of the attorney fee award in the Securities Action, the court notes that the PSLRA incorporates the common fund percentage method").

Plaintiffs' Counsel here created a Settlement Fund for the benefit of the Settlement Class of $55 million, an outstanding outcome. Nonetheless, Co-Lead Counsel seeks an award at the low end of the typical range for common fund cases in this District. *See In re Centurylink Sales Pracs. & Sec. Litig.*, No. CV 18-296 (MJD/KMM), 2021 WL 3080960, at *10 (D. Minn. July 21, 2021) ("courts in this circuit and this district have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions.") (citation omitted); *see also Khoday v. Symantec Corp.*, No. 11–cv–180 (JRT/TNL), 2016 WL 1637039, at *11 (D. Minn. Apr. 5, 2016), *aff'd sub. nom. Caligiuri v. Symantec Corp*, 855 F.3d 860 (8th Cir. 2017) (noting typical range of 25 to 36 per cent in such cases and awarding fee of one third of the common fund); *Xcel Energy*, 364 F. Supp. 2d at 998 (collecting cases); *see, e.g.*, *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming award of 36% of common fund in fees).

Further, as discussed below, a 25% fee is eminently reasonable in light of several factors, including the strength of the result obtained, the volume and quality of Plaintiffs' Counsel's work, the significant risks Plaintiffs' Counsel undertook in putting forth those efforts, and fee awards in comparable cases.

The fee requested here is also eminently reasonable under the principles animating the lodestar methodology. As is set forth in more detail in the Joint Declaration and discussed below, Plaintiffs' Counsel expended a total of over 11,700 hours prosecuting this action. Among the work detailed in the Joint Declaration, Plaintiffs' Counsel: (i) conducted

5

an extensive investigation that included, among other things, informal interviews with numerous former Resideo employees and other persons with relevant knowledge, fifteen of whom provided information as Confidential Witnesses; (ii) successfully opposed Defendants' motion to dismiss through voluminous briefing and oral argument; (iii) conducted extensive discovery; (iv) retained and worked with experts; (v) prepared extensively for the filing of their class certification motion, and (vi) engaged in mediation and vigorous follow-on negotiations with Defendants in an effort to resolve the Action. *See* ¶¶ 21-75. Plaintiffs' Counsel's total lodestar is $10,615,215. Therefore, the requested fee here amounts to a modest lodestar multiplier of 1.3.

> ### A. The Requested Fees Are Reasonable Under the Johnson Factors Typically Considered by This Court

In the Eighth Circuit, courts may consider any or all of the twelve factors listed in *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717-20 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87 (1989), to determine whether a requested fee award is reasonable. *See Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017) (noting that district courts in the Eighth Circuit may rely on *Johnson* factors when awarding fees based either on the percentage-of-benefit method or the lodestar method).

In numerous cases, including securities class actions, the District of Minnesota has applied the percentage methodology and considered the following seven *Johnson* factors in awarding attorney fees:

> (1) the benefit conferred on the class, (2) the risk to which plaintiffs' counsel were exposed, (3) the difficulty and novelty of the legal and factual issues in the case, including whether plaintiffs were assisted by a relevant governmental

investigation, (4) the skill of the lawyers, both plaintiffs and defendants, (5) the time and labor involved, including the efficiency in handling the case, (6) the reaction of the class and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases[.]

*Xcel Energy*, 364 F. Supp. 2d at 993 (class action involving securities claims); *see also Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, No. 0:14–cv–00786–ADM–TNL, 2017 WL 2588950, at *1 (D. Minn. June 14, 2017) (securities class action); *Khoday*, 2016 WL 1637039, at *9 (consumer class action). As discussed below, these factors — as well as the modest lodestar multiplier — support a 25% fee here.

### 1.    The Benefit Conferred on the Settlement Class Supports a 25% Fee

There can be little doubt that the $55 million recovery on behalf of the Settlement Class is an impressive result. *See, e.g.*, *Tile Shop*, 2017 WL 2588950, at *2 (recognizing substantial benefit of $9.5 million cash settlement); *Khoday*, 2016 WL 1637039, at *9. Indeed, the settlement ranks among the largest PSLRA settlements ever in the District of Minnesota. *See Centurylink*, 2021 WL 3080960, at *9 (noting that the "$55 million in monetary relief represents one of the largest PSLRA settlements in this District"). The $55 million Settlement also represents a substantial portion of investors' realistically recoverable damages under Lead Plaintiffs' expert's damages estimates, and in fact is well over five times the median recovery in securities class actions from 1996 through 2020. ¶14. This substantial benefit to the Settlement Class supports a 25% fee award in this case.

### 2.   The Risk to which Plaintiffs' Counsel Were Exposed Supports a 25% Fee

Plaintiffs' Counsel have not received any compensation to date, having assumed entirely the risk of no recovery while expending significant attorney time and advancing considerable costs. At every stage of prosecuting this case, Plaintiffs' Counsel faced substantial, case-ending risks and, had any materialized, Plaintiffs' Counsel would have received no fee at all. Despite Co-Lead Counsel's extensive investigation, victory at the motion to dismiss stage was not guaranteed. Moreover, after denial of that motion, significant additional risks remained. Most immediately, class certification posed a potential case-ending risk, particularly in light of Defendants' anticipated arguments regarding price impact and Plaintiffs' damages model, which, if accepted, could have precluded both certification of the class and any recovery whatsoever.

Even if the class were certified, Plaintiffs faced substantial risks. As set forth in detail in the Joint Declaration (*see* ¶¶ 79-95), Plaintiffs faced significant challenges with respect to proving falsity, scienter, loss causation and damages. And even if Plaintiffs had succeeded at trial, they faced the risk of an appeal delaying recovery or even eliminating it entirely. ¶ 122.

In light of Plaintiffs' Counsel's contingency-fee arrangement, these and other factors presented a significant risk that Plaintiffs' Counsel would receive no compensation despite their substantial efforts in the case. Such risks further justify Co-Lead Counsel's fee request.

### 3.    The Difficulty of the Legal and Factual Issues in the Case Support a 25% Fee

In general, "[s]ecurities claims proceeding as a class action present complex and novel issues, and successfully prosecuting these types of actions has become more difficult with the adoption of the Private Securities Litigation Reform Act." *Centurylink*, 2021 WL 3080960, at *9 (quoting *Tile Shop*, 2017 WL 2588950, at *2). This case involved numerous difficult legal and factual issues, including merits issues of falsity[5] and scienter.[6] In addition, there were significant complexities to proving loss causation in this case, including challenges related to the degree of artificial inflation in Resideo's common stock at various points during the Class Period, and as to whether alleged corrective disclosures caused the observed declines in its price. ¶¶ 89-94.

Also, class certification here would have involved complex questions concerning, among other things, the viability and application of the price impact doctrine, which remain the subject of vigorous debates before the federal appellate courts around the country, particularly in light of the Supreme Court's recent decision in *Goldman Sachs Group. v. Arkansas Teacher Retirement System*, 141 S. Ct. 1951 (2021), arguably expanding the types of arguments that defendants may present on these issues.

---

[5] For example, Defendants argued that statements about having commenced shipping a key product were not false because a "beta" version had indeed shipped; that a different, "fake project," was actually real and simply behind schedule; and that their statements regarding the state of their supply chain, and the cohesive nature of Resideo's business prior to the Spin-off, were neither literally false nor misleading to a reasonable investor, all complex factual disputes. ¶¶ 81-83.

[6] The scienter determination would likely involve conflicting testimony and require proof of opponents' state of mind. ¶¶ 85-88.

9

These difficult legal and factual issues weigh in favor of the reasonableness of the fee. *See, e.g*, *Xcel Energy*, 364 F. Supp. 2d at 995 (noting that difficulty and novelty of issues support final approval where plaintiffs survived motion to dismiss and engaged in discovery but faced many legal questions that would have been tested in dispositive motions).

### 4.    The Skill of the Lawyers for Both Plaintiffs and Defendants Supports a 25% Fee

As is set forth in more detail in the Joint Declaration and the concurrently filed Declaration of Layn R. Phillips (Ex. 1) ("Phillips Decl."), both sides here retained counsel with significant experience and expertise in securities class actions, who litigated aggressively and effectively from the very start of the case, and who reached a hard-fought resolution. *See* ¶¶ 21-78. Plaintiffs' Counsel's qualifications are summarized in the Joint Declaration at ¶¶ 131-133 and are detailed in their firm resumes (Exs. 4-C, 5-C, 6-C and 7-C). Defendants were vigorously represented by Willkie Farr & Gallagher LLP, one of the country's most prestigious and experienced defense firms. Plaintiffs' Counsel also had to contend with the formidable law firm Kirkland & Ellis LLP, counsel for key defense-aligned witness Honeywell.[7] This further supports the reasonableness of the 25% fee. *See Tile Shop*, 2017 WL 2588950, at *3.

---

[7] Honeywell International Inc. has ongoing business relations with Resideo, entered into a tolling agreement to avoid being named in the Complaint, asserted a joint privilege with Defendants, and obtained releases in the Settlement.

10

### 5.    The Time and Labor Involved Supports a 25% Fee

As noted above and as described in more detail in the Joint Declaration (*see* ¶¶ 21-78), this case has been vigorously litigated since its inception in 2019. Co-Lead Counsel expended significant efforts investigating the claims, including through numerous witness interviews. Plaintiffs' Counsel then drafted the 455-paragraph Complaint, plus exhibits, during the disruptions of the first wave of the COVID-19 pandemic. Plaintiffs' Counsel then successfully opposed Defendants' motion to dismiss by means of a 66-page opposition, an elaborate set of charts summarizing the alleged misstatements (together with the evidence supporting falsity and scienter and reasons why the safe harbor did not apply), witness interview summaries and other details.

After defeating Defendants' motion to dismiss, Co-Lead Counsel negotiated a case schedule and protocols for protecting confidentiality and exchanging electronically stored documents and exchanged initial disclosures and first sets of document requests and interrogatories with Defendants. Plaintiffs' Counsel then moved swiftly to obtain significant discovery in spite of Defendants' resistance to providing any such material. For example, Resideo initially refused to produce the documents it had previously provided to the United States Securities and Exchange Commission ("SEC") in a related investigation (the "SEC Documents") and asserted various objections over broad categories of other requested documents. Plaintiffs' Counsel persuasively advocated for Plaintiffs' position through three weeks of correspondence and telephonic discussion, eventually resulting in Resideo producing the SEC documents and withdrawing another key objection. ¶ 51.

11

In addition, Lead Plaintiffs were fully prepared to move for class certification when the case settled on the eve of their filing deadline. Lead Plaintiffs had taken sufficient steps to enable them to establish, among other things, predominance of class-wide issues under Supreme Court and Eighth Circuit precedents, the length of the Class Period, and the Lead Plaintiffs' typicality and adequacy to serve as class representatives. ¶ 74. Indeed, in connection with class certification, Co-Lead Counsel consulted with an expert economist regarding loss causation and market efficiency. ¶ 74.

At the same time as they undertook the above litigation efforts, Co-Lead Counsel extensively negotiated over seven months to obtain the best results possible for Plaintiffs and the Settlement Class. In sum, a significant amount of time and work went into Co-Lead Counsel's investigation and prosecution of this case, supporting Co-Lead Counsel's request for a 25% fee.

### 6.    The Reaction of the Settlement Class Supports a 25% Fee

The reaction of the Settlement Class to date also supports the requested fee. Through December 21, 2021, the Claims Administrator, JND, has disseminated more than 468,000 copies of the Notice to potential Settlement Class Members or nominees informing them, among other things, that Co-Lead Counsel intended to apply for an award of attorneys' fees not to exceed of 25% of the Settlement Fund, *i.e.*, $13,750,000, plus any accrued interest, and for payment of expenses not to exceed $500,000. Ex. 2 ¶ 14; Ex. 2-A ¶¶ 4, 40. The deadline for objecting to the fee and expense application is January 6, 2022. To date, there have been no objections to the request for attorneys' fees or expenses. ¶ 8.

12

### 7. The Comparison Between the Requested Attorney Fee Percentage and Percentages Awarded in Similar Cases Supports a 25% Fee

A review of fee awards in similar securities class actions confirms that an attorney fee award of 25% of a $55 million settlement fund is eminently reasonable here. First, a 25% fee is in fact at the low end of the range of fees typically awarded in this District, where "courts have frequently awarded attorney fees between 25 and 36 percent of a common fund in class actions." *Khoday*, 2016 WL 1637039, at *11 (awarding an attorney fee award of 33.33% of a $60 million settlement fund). The 25% requested fee is also well within the range of percentage fees awarded within the Eighth Circuit — including by this Court — in similar class actions. *See, e.g.*, *Centurylink*, 2021 WL 3080960, at *10 (awarding 25% of $55 million settlement in securities class action settlement). *See also Xcel Energy*, 364 F. Supp. 2d at 991 (awarding 25% of $80 million settlement in securities class action settlement); *In re Pemstar, Inc. Sec. Litig.*, No. 02-1821 (DWF/SRN), slip op. at 2 (D. Minn. May 27, 2005) (awarding 25% of $12 million settlement in securities class action settlement) (Ex. 13); *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1061 (D. Minn. 2010) (awarding 33% of $26.6 million settlement in consumer class action settlement).

Additionally, a general review of fees over the last ten years in securities class actions demonstrates broad accord. A 2020 report from NERA Economic Consulting states that, from 2011-2020, 25% was the median fee percentage for securities class action settlements between $25 million and $100 million. *See* McIntosh and Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review*, NERA Economic

13

Consulting (Jan. 25, 2021) (Fig. 19) (Ex. 11) at 23; *see City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*, No. 17 Civ. 10014 (LGS), 2020 WL 7413926, at *2-3 (S.D.N.Y. Dec. 17, 2020) (citing NERA reports as authority).

*    *    *

In sum, each of the *Johnson* factors support the reasonableness of a 25% fee in this case.

**B.    The Approval of Lead Plaintiffs Also Supports the Requested Fee**

Lead Plaintiffs, which were actively involved in the prosecution, mediation, and settlement of this Action, have carefully considered and approved the requested fee. *See* Goldman Decl., Ex. 8 ¶¶ 9-11 and Wylie Decl., Ex. 9 ¶¶ 8-10. Lead Plaintiffs are paradigmatic examples of the type of sophisticated and financially interested investors that Congress envisioned serving as a fiduciary for the class when it enacted the PSLRA. Indeed, the PSLRA was intended to encourage institutional investors like Lead Plaintiffs to assume control of securities class actions in order to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Conf. Rep. No. 104-369, at *32 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 731. Congress believed that institutions like Lead Plaintiffs would be in the best position to monitor the ongoing prosecution of the litigation and to assess the reasonableness of counsel's fee request.

Lead Plaintiffs have played an active role in the Action and closely supervised the work of Plaintiffs' Counsel. *See* Goldman Decl., Ex. 8 ¶¶ 3-7 and Wylie Decl., Ex. 9 ¶¶ 3-6.

14

Accordingly, the endorsement of the fee request by Lead Plaintiffs as fair and reasonable supports its approval. *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06–CV–1825 (NGG)(RER), 2010 WL 2653354, at *4 (E.D.N.Y. June 24, 2010) ("The fact that this fee request is the product of arm's length negotiation between Lead Counsel and the lead plaintiff is significant."); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115808, at *8 (S.D.N.Y. Nov. 7, 2007) ("public policy considerations support the award in this case because the Lead Plaintiff . . . — a large public pension fund — conscientiously supervised the work of lead counsel and has approved the fee request").

### C.    The Requested Fee Is Also Reasonable Under a Lodestar Cross-Check

Courts applying the percentage of the benefit approach may "verif[y] the reasonableness of its award by cross-checking it against the lodestar method." *Keil*, 862 F.3d at 701. The lodestar method involves "totaling the hours worked, multiplying them by a typical hourly fee, and then multiplying that amount by a 'multiplier' that takes into account 'the contingent nature of success, and . . . the quality of the attorney's work.'" *Khoday*, 2016 WL 1637039, at *11 (quoting *Petrovic*, 200 F.3d at 1157; *Jorstad v. IDS Realty Tr.*, 643 F.2d 1305, 1312-14 (8th Cir. 1981)); *Khoday*, 2016 WL 1637039, at *11 (noting that "[m]ultipliers can range from two to five").

The Eighth Circuit has identified four factors in setting a reasonable lodestar fee: "(1) the number of hours counsel expended; (2) counsel's 'reasonable hourly rate'; (3) the contingent nature of success; and (4) the quality of the attorneys' work." *Yarrington*, 697 F. Supp. 2d at 1065 (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 127 (8th Cir. 1975)). "The lodestar cross-check need entail neither mathematical precision nor bean

15

counting but instead is determined by considering the unique circumstances of each case.

The resulting multiplier need not fall within any pre-defined range, so long as the court's

analysis justifies the award, such as when the multiplier is in line with multipliers used in

other cases." *Xcel Energy, Inc.*, 364 F. Supp. 2d at 999 (citing *In re Rite Aid Corp. Sec.*

*Litig.*, 396 F.3d 294 (3d Cir. 2005), *as amended* (Feb. 25, 2005)). As stated in *In re Rite*

*Aid Corp. Securities Litigation*:

> The 2002 Third Circuit Task Force On Selection of Class
> Counsel supports this view. It states that the lodestar cross-
> check is "not a full-blown lodestar inquiry" and a court "should
> be satisfied with a summary of the hours expended by all
> counsel at various stages with less detailed breakdown than
> would be required in a lodestar jurisdiction." *Report of the*
> *Third Circuit Task Force, Selection of Class Counsel*, 208
> F.R.D. 340, 423 (2002). The cross-check would "enable the
> court to make a judgment as to whether the percentage appears
> too high or low given the time required to handle the case." *Id.*

*Rite Aid*, 396 F.3d at 307 n. 16.

Because of the significant challenges in this case, Plaintiffs' Counsel were required

to invest considerable time to achieve the milestones described above. This more than

merits a 25% fee. Indeed, given Plaintiffs' Counsel's extensive efforts, a 25% fee will

amount to only a modest lodestar multiplier here of approximately 1.3 for Plaintiffs'

Counsel — meaning that Plaintiffs' Counsel will be compensated at close to the going

hourly rate for the sophisticated legal services they provided, notwithstanding the

contingent nature of this case and the quality of Plaintiffs' Counsel's work. *See Yarrington*,

697 F. Supp. 2d at 1067 (describing a 2.26 multiplier as "modest" and "reasonable, given

16

the risks of continued litigation, the high-quality work performed, and the substantial benefit to the Class").[8]

### III.    PLAINTIFFS' COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

As set forth in detail in the Joint Declaration, Co-Lead Counsel request payment of $349,575.75 for litigation expenses, which were reasonably incurred by Plaintiffs' Counsel to prosecute the Action. ¶ 135. These expenses are reported at the cost actually incurred and include, among others, expert fees, on-line research, mediation fees, electronic document production, storage and management, court reporting and transcripts. ¶¶ 137-142. The largest category of expense was for online factual and legal research services, including Thomson West (Westlaw), Lexis/Nexis and Bloomberg, which came to $137,022.84 or approximately 39% of aggregate expenses. ¶ 137. Plaintiffs' Counsel also incurred $123,039.35, or approximately 35% of their total litigation expenses, from their retention of experts or in incurred by Plaintiffs' Counsel. ¶ 138. A further breakdown by category of the expenses incurred by Plaintiffs' Counsel is set forth in Exhibit 3 to the Joint Declaration and additional details are provided in Exs. 4-7. The Notice informed potential Settlement Class Members that Co-Lead Counsel would apply for payment of litigation expenses in an amount not to exceed $500,000. The total amount of expenses, including requested reimbursements to Lead Plaintiffs, is $372,075.75, well below the amount listed in the Notice. To date, there has been no objection to the request for expenses. ¶ 8.

---

[8] The details of the lodestar calculation, including the hours Plaintiffs' Counsel expended and Plaintiff's Counsel's reasonable hourly rates are set forth in the declarations attached to the Joint Declaration as Exhibits 3-7.

The expense request is also well supported by precedent; "[c]ourts generally allow plaintiffs' counsel in a class action to be reimbursed for costs and expenses out of the settlement fund, so long as those costs and expenses are reasonable and relevant to the litigation." *Khoday*, 2016 WL 1637039, at \*12. "Counsel in common fund cases may recover those expenses that would normally be charged to a fee paying client." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, No. 05–1708 (DWF/AJB), 2008 WL 682174, at \*4 (D. Minn. Mar. 7, 2008) (quoting *In re Infospace, Inc.*, 330 F. Supp. 2d 1203, 1216 (W.D. Wash. 2004)).

The categories of litigation expenses for which reimbursement is sought here are of the type ordinarily recognized and reimbursed by the courts out of settlement funds in class actions. Notably, "[r]eimbursable expenses include many litigation expenses beyond those narrowly defined 'costs' recoverable from an opposing party under Rule 54(d)." *Tussey v. ABB, Inc.*, No. 06-CV-04305-NKL, 2019 WL 3859763, at \*5 (W.D. Mo. Aug. 16, 2019). Permissible categories of expenses include but are not limited to "photocopying, postage, messenger services, document depository, telephone and facsimile charges, filing and witness fees, computer-assisted legal research, expert fees and consultants, and meal, hotel, and transportation charges for out-of-town travel." *Xcel Energy*, 364 F. Supp. 2d at 999-1000. These are precisely the sort of expenses Plaintiffs' Counsel seek in this case.

The requested amount is also well within the range ordinarily incurred and awarded by this and other courts in similar cases. *See, e.*g., *Centurylink*, 2021 WL 3080960, at \*11-12 (approving reimbursement of $888,775.83 in litigation expenses); *Xcel Energy*, 364 F. Supp. 2d at 999-1000 (approving reimbursement of $481,422.94 in litigation expenses); *In*

18

*re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *24 (E.D. Mo. June 30, 2005) (approving reimbursement of $671,734.64 in litigation expenses).

Indeed, courts have approved reimbursement of costs and expenses of several million dollars or more. *See, e.g.*, *In re AT & T Corp.*, 455 F.3d 160, 163 (3d Cir. 2006) (approving reimbursement of $5,465,996.79 in costs and expenses); *Tussey*, 2019 WL 3859763, at *5 (approving reimbursement of costs and expenses totaling $2,256,805); *In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061, 1066-67 (E.D. Mo. 2002), *aff'd*, 350 F.3d 747 (8th Cir. 2003) (approving reimbursement of $5,448,530.96 in costs and expenses).

## IV.   LEAD PLAINTIFFS SHOULD BE COMPENSATED FOR THEIR TIME EXPENDED IN PROSECUTION OF THE ACTION PURSUANT TO 15 U.S.C. §78U-4(A)(4)

"The PSLRA permits the court to order an award to lead plaintiffs for the services they rendered in a securities class action." *Xcel Energy*, 364 F. Supp. 2d at 1000 (citing 15 U.S.C. § 78u–4(a)(4) ("Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class.")). "In granting compensatory awards to the representative plaintiff in PSLRA class actions, courts consider the circumstances, including the personal risks incurred by the plaintiff in becoming a lead plaintiff, the time and effort expended by that plaintiff in prosecuting the litigation, any other burdens sustained by that plaintiff in lending himself or herself to prosecuting the claim, and the ultimate recovery." *Xcel Energy*, 364 F. Supp. 2d at 1000.

19

Courts also consider the "important policy role" representative plaintiffs play in enforcing federal securities laws, without whom "many violations of law might go unprosecuted." *Id.*

Pursuant to the PSLRA, Co-Lead Counsel request reimbursement of $12,500 for the Gabelli Group, and $10,000 for the Naya Group. As detailed in the Goldman and Wylie declarations, Lead Plaintiffs, through their officers and employees, expended significant time this litigation. *See* Goldman Decl., Ex. 8 ¶¶ 3-7 and Wylie Decl., Ex. 9 ¶¶ 3-6.

Each of the Lead Plaintiffs took an active role in the litigation and has been fully committed to pursuing the claims on behalf of the class since they became involved in the case. During the course of the litigation, Lead Plaintiffs, among other things: communicated with counsel regarding case strategy and developments, reviewed pleadings and briefs filed in the Action, responded to discovery requests, consulted with counsel regarding settlement negotiations, approved settlement demands and evaluated Defendants' offers, and ultimately approved the Settlement Amount and the material terms of the Stipulation. *Id*. Additionally, the Gabelli Group spoke directly to Resideo officials, in an effort to resolve the matter. Goldman Decl., Ex. 8 ¶ 6. These efforts required representatives of Lead Plaintiffs to dedicate considerable time and resources to the Action that they would have otherwise devoted to their regular duties.

Courts in the Eighth Circuit regularly grant similar and greater awards in these cases for similar efforts. *See Xcel Energy*, 364 F. Supp. 2d at 1000 (awarding $100,000 in total to group of eight lead plaintiffs); *Charter Commc'ns*, 2005 WL 4045741, at *24 (awarding

20

$26,625.00 to lead plaintiff, an investment advisor, for time spent by its managing partner for the benefit of the class).

## V.     CONCLUSION

For the reasons detailed above, Co-Lead Counsel request that the Court (a) award Plaintiffs' Counsel 25% of the Settlement Fund, *i.e.*, $13,750,000, plus any accrued interest, in attorneys' fees, (b) authorize reimbursement of Plaintiffs' Counsel's litigation expenses incurred in the amount of $349,575.75, and (c) authorize reimbursement for Lead Plaintiffs' time expended for the benefit of the class, pursuant to the PSLRA, in the aggregate amount of $22,500.

Dated: December 22, 2021                                    Respectfully submitted,

*/s/ Andrew J. Entwistle*                                   */s/ Ira A. Schochet*
Andrew J. Entwistle (*pro hac vice*)          Ira A. Schochet (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**            **LABATON SUCHAROW LLP**
Frost Bank Tower                                         140 Broadway
401 Congress Avenue, Suite 1170             New York, New York 10005
Austin, Texas 78701                                    Telephone: (212) 907-0700
Telephone: (512) 710-5960                        ischochet@labaton.com
aentwistle@entwistle-law.com

                                                                   *Lead Counsel for the Naya Group and*
*Lead Counsel for The Gabelli Plaintiffs*    *Co-Lead Counsel for the Class*
*and Co-Lead Counsel for the Class*

/s/ X. Jay Alvarez
X. Jay Alvarez (*pro hac vice*)
Steven W. Pepich (*pro hac vice*)
**ROBBINS GELLER RUDMAN
  & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, California 92101
Telephone: (619) 231-1058
jaya@rgrdlaw.com
stevep@rgrdlaw.com

*Counsel for Oklahoma Firefighters
Pension and Retirement System*

/s/ Bryan L. Bleichner
Karl L. Cambronne (MN #14321)
Bryan L. Bleichner (MN #326689)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South
Suite 1700
Minneapolis, Minnesota 55401
Telephone: (612) 339-7300
kcambronne@chestnutcambronne.com
bbleichner@chestnutcambronne.com

*Plaintiffs' Liaison Counsel*

22

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE RESIDEO TECHNOLOGIES, INC. SECURITIES LITIGATION | Civil Action No. 0:19-cv-02863 (WMW/BRT) |

**CERTIFICATE OF COMPLIANCE MEMORANDUM OF LAW IN SUPPORT OF CO-LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES AND AWARDS PURSUANT TO 15 U.S.C. § 78U-4(A)(4)**

I, Andrew J. Entwistle, certify that the accompanying Memorandum of Law in Support of Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses was prepared using Microsoft Word and, when applied specifically to include all text, including headings, footnotes and quotations, generated a word count of 5,589 in 13-point Times New Roman font.

Dated: December 22, 2021

Respectfully submitted,

*/s/ Andrew J. Entwistle*
Andrew J. Entwistle (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
Frost Bank Tower
401 Congress Avenue, Suite 1170
Austin, Texas 78701
Telephone: (512) 710-5960
aentwistle@entwistle-law.com

*Lead Counsel for The Gabelli Plaintiffs and Co-Lead Counsel for the Class*

1