UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re Resideo Technologies, Inc., Securities Litigation | Case No. 19-cv-2863 (WMW/BRT)<br><br>**ORDER GRANTING PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES** |

Plaintiffs, on behalf of themselves and the proposed Settlement Class,[1] seek final approval of a proposed settlement of claims against Defendants Resideo Technologies, Inc. (Resideo); Michael G. Nefkens; Joseph D. Ragan, III; and Niccolo de Masi. (Dkt. 140.) Plaintiffs also move for attorneys' fees, reimbursement of litigation expenses, and service awards. (Dkt. 142.) For the reasons addressed below, the Court finds good cause to grant Plaintiffs' unopposed motions for final approval and attorneys' fees and to enter final judgment in this case.

## BACKGROUND

Plaintiffs[2] and Defendants entered into a Stipulation and Agreement of Settlement dated August 17, 2021 (Stipulation), which provides for a complete dismissal with

---

[1] Unless otherwise indicated, capitalized terms in this Order have the meanings ascribed to those words in the parties' August 17, 2021 Stipulation and Agreement of Settlement.

[2] The Court-appointed Lead Plaintiffs are The Gabelli Asset Fund, The Gabelli Dividend & Income Trust, The Gabelli Focused Growth and Income Fund f/k/a The Gabelli Focus Five Fund, The Gabelli Multimedia Trust Inc., The Gabelli Value 25 Fund Inc., GAMCO International SICAV, and GAMCO Asset Management Inc. (collectively, the "Gabelli Group"), and Naya 1740 Fund Ltd., Naya Coldwater Fund Ltd., Naya

prejudice of the claims against Defendants in this action, as well as a complete release of all claims that could have been asserted against Defendants and the other Released Defendant Parties by each other, by Plaintiffs, or by any other member of the Settlement Class (Settlement). The Settlement provides that Plaintiffs have agreed to settle all claims in this Action in exchange for a cash payment of $55 million, which has been deposited into an interest-bearing escrow account. The parties reached the settlement following settlement negotiations between counsel that included mediation before a retired United States District Judge.

On October 21, 2021, the Court granted Plaintiffs' unopposed motion for preliminary approval of the Settlement. In doing so, on a preliminary basis, the Court certified the Settlement Class, approved the Settlement, and approved the proposed notice plan. To date, no objections to the Settlement have been received and two investors have asked to be excluded from the Settlement Class. On January 27, 2022, the Court held a Settlement Hearing to determine whether the Settlement should be finally approved. Plaintiffs seek a determination that the Settlement is fair, reasonable, and adequate; approval of the Plan of Allocation; final certification of the Settlement Class; and an award of attorneys' fees, litigation expenses, and service awards.

---

Master Fund LP, and Nayawood LP (collectively, the "Naya Group" and, with the Gabelli Group, "Lead Plaintiffs").

# ANALYSIS

## I. Motion for Final Approval

A class action cannot be dismissed or settled without the approval of the district court. *See* Fed. R. Civ. P. 23(e). "Under Rule 23(e) the district court acts as a fiduciary who must serve as guardian of the rights of absent class members." *Kloster v. McColl*, 350 F.3d 747, 751 (8th Cir. 2003) (internal quotation marks omitted). As such, a district court may approve a class action settlement only if it determines that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A class-action settlement agreement is "presumptively valid." *Ortega v. Uponor, Inc.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (internal quotation marks omitted).

### A. Fairness, Reasonableness and Adequacy

When determining whether a class-action settlement is fair, reasonable and adequate, a district court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

3

>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

*Id.* A district court also should consider "(1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement." *Ortega*, 716 F.3d at 1063 (internal quotation marks and brackets omitted).

### 1.  Adequacy of Representation

The Court first considers whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This determination pertains to whether "(1) the class representatives have common interests with members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562–63 (8th Cir. 1982).

Here, the record reflects no conflicts between Lead Plaintiffs and the Settlement Class, whose claims are aligned. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459–60 (2013) (observing that the class would "prevail or fail in unison" because claims were based on common misrepresentations and omissions). Co-Lead Counsel are qualified and experienced in securities litigation and extensively litigated this case. The Lead Plaintiffs also have supervised and participated in the litigation by communicating with counsel, reviewing pleadings and motions, and participating in settlement discussions.

Accordingly, the record reflects that Lead Plaintiffs and Co-Lead Counsel have adequately represented the Settlement Class. *See* Fed. R. Civ. P. 23(e)(2)(A).

### 2.     Arm's Length Negotiations

The Court next considers whether the Settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Here, the Settlement was reached after months of arm's length negotiations between experienced counsel, including a full-day mediation before retired United States District Judge Layn R. Phillips. The record also reflects that Lead Plaintiffs and Co-Lead Counsel knew the strengths and weaknesses of their claims at the time of the settlement negotiations based on extensive investigation, research, discovery, and litigation. For these reasons, it appears to the Court that the Settlement was negotiated at arms' length and under circumstances demonstrating a lack of collusion.

### 3.     Adequacy of Relief

The Court next considers whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" among other relevant circumstances. Fed. R. Civ. P. 23(e)(2)(C). Considerations relevant to this factor include "the merits of the plaintiff's case weighed against the terms of the settlement" and "the complexity and expense of further litigation." *Ortega*, 716 F.3d at 1063 (internal quotation marks and brackets omitted).

As reflected in Plaintiffs' submissions, continued litigation would involve risks that Plaintiffs would be unable to establish liability, causation, or damages and would impose additional litigation costs and delays on the Settlement Class. The Settlement amount of $55 million represents approximately 10 percent of the *maximum* recoverable

5

damages Plaintiffs expect could be established at trial, which is similar to recovery amounts that courts in this District have approved. *See, e.g.*, *In re Centurylink Sales Pracs. & Sec. Litig.*, No. 18-296 (MJD/KMM), 2021 WL 3080960, at *7 (D. Minn. July 21, 2021) (approving class action settlement of $55 million, representing 8 to 17 percent of estimated maximum recoverable damages); *Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, No. 0:14-cv-00786-ADM-TNL, 2017 WL 2574005, at *3 (D. Minn. June 14, 2017) (concluding that settlement representing 6.8 to 9.5 percent of expected damages "strongly" supports approval, observing that this amount "exceeds the median recovery of estimated damages in similar securities class actions"). The Settlement also allows the Settlement Class to avoid the risks, costs, uncertainties and delays of continued litigation, as detailed in Plaintiffs' submissions. *See Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987) (observing that "many of the immediate and tangible benefits" of settlement would be lost through continued litigation, making the proposed settlement "an attractive resolution" of the case). These factors support finding that the Settlement provides adequate relief to the Settlement Class.

The Court also considers the complexity and expense of continued litigation. *Ortega*, 716 F.3d at 1063. As described in Plaintiffs' submissions, Defendants likely would advance numerous defenses and, therefore, continued litigation would result in considerable time and expense. If the Settlement is approved, this case will be resolved before the parties invest time and resources on further litigation, including summary judgment, trial, and any possible appeals. As such, the complexity and expense of continued litigation are significant.

This factor also requires the Court to consider "the effectiveness of any proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, the Settlement includes detailed procedures for processing Settlement Class Members' claims and distributing the proceeds of the Settlement to eligible claimants. This process includes an opportunity for claimants to cure deficiencies in their claims or request review of a claim denial by the Court.

The Court also considers "the terms of any proposed award of attorney's fees." Fed. R. Civ. P. 23(e)(2)(C)(iii). As addressed below in Part II of this Order, the proposed attorneys' fee award is 25 percent of the Settlement fund, which is reasonable in light of the efforts of counsel and the risks involved in this litigation. Moreover, the Settlement is not contingent on the Court's approval of the requested attorneys' fees award.

The Court also must determine whether the Settlement is fair in light of any other agreements between the parties made in connection with the Settlement. Fed. R. Civ. P. 23(e)(2)(C)(iv). Here, the parties have not identified any such agreements that undermine the fairness of the Settlement.

For these reasons, it appears to the Court that the Settlement provides adequate relief to the Settlement Class.

### 4. Equitable Treatment of Class Members

The Court next considers whether the Settlement treats members of the Settlement Class equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). The Plan of Allocation provides that all eligible claimants, including the Lead Plaintiffs, will receive a *pro rata* share of the recovery based on their purchases or acquisitions of Resideo

common stock during the Class Period. In addition, whereas 468,104 copies of the Notice Packet were mailed by the Claims Administrator, only two investors have requested to be excluded from the Settlement Class and no objections to the Settlement have been received to date. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (providing that the number of class members who object to or opt out of the settlement is relevant to whether the settlement is reasonable). For these reasons, the Court is satisfied that the Settlement treats members of the Settlement Class equitably relative to each other.

In summary, after considering all of the relevant factors, *see* Fed. R. Civ. P. 23(e)(2), the Court concludes that the Settlement is fair, reasonable and adequate.

B.   **Plan of Allocation**

Plaintiffs also contend that the plan for allocating the settlement proceeds should be approved as fair, reasonable and adequate.

"A district court's principal obligation in approving a plan of allocation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (internal quotation marks omitted); *accord In re Charter Commc'ns, Inc. Sec. Litig.*, No. MDL 1506, 4:02-CV-1186 CAS, 2005 WL 4045741, at *10 (E.D. Mo. June 30, 2005) (observing that a "plan of allocation need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel" (internal quotation marks omitted)); *White v. Nat'l Football League*, 822 F. Supp. 1389, 1421–24 (D. Minn. 1993), *aff'd*, 41 F.3d 402 (8th Cir. 1994). Here, the Plan of Allocation was developed by Co-Lead Counsel in

consultation with Lead Plaintiffs' expert economist. Lead Plaintiffs' expert calculated the amount of estimated artificial inflation in the prices of Resideo's common stock during the Class Period caused by Defendants' allegedly false and misleading statements. He did so by considering the price changes in these securities in response to Defendants' allegedly corrective disclosures, adjusting for changes attributable to market and industry factors and case-related assumptions provided by Co-Lead Counsel. To date, no objections to this Plan of Allocation have been received.

On this record, the Court concludes that the Plan of Allocation is fair, reasonable and adequate.

### C. Certification of Settlement Class

Plaintiffs assert, for purposes of settlement only, that the Settlement Class meets all the certification requirements of Federal Rule of Civil Procedure 23(a) and (b)(3). The Court agrees.

The record reflects that the Settlement Class is sufficiently numerous such that joinder would be logistically impossible. Resideo's common stock was actively traded on the New York Stock Exchange during the Class Period and Resideo had approximately 122 million shares of common stock issued and outstanding during the Class Period. *See, e.g.*, *Tile Shop*, 2016 WL 4098741, at *3 (concluding that the class met the numerosity requirement because 5.175 million shares of stock were sold in a public offering). There also is a commonality of interests between the Settlement Class Members, including both questions of law and questions of fact. Plaintiffs' claims depend on the common contentions that, among other things, Defendants misrepresented

9

material facts about products and supply chains during the Class Period, Defendants' alleged misrepresentations and omissions violated federal securities laws, and Defendants' conduct caused Settlement Class Members to suffer compensable loss. The Lead Plaintiffs' claims are typical of those of the Settlement Class Members, as the claims arise from the same alleged course of conduct by Defendants as those of the Settlement Class Members. The Lead Plaintiffs and their counsel are adequate representatives and have no conflicts with the proposed Settlement Class. And a class action is a superior method of resolving the claims of the Settlement Class Members, which are of modest amounts, and promotes judicial efficiency by resolving the claims of thousands of shareholders in a single case.

Accordingly, the Court finally certifies the Settlement Class for settlement purposes and finds that the certification requirements of Rule 23 of the Federal Rules of Civil Procedure are satisfied.

### D.     Adequacy of Notice

Due process under Rule 23 requires that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175–76 (1974) ("[I]ndividual notice must be provided to those class members who are identifiable through reasonable effort."). The mechanics of the notice process are left to the discretion of the district court and are subject only to the "reasonableness" standards required by due process. *See Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975); *see also Tapia v. Zale Del.*

10

*Inc.*, No. 13cv1565-PCL, 2017 WL 1399987, at *4 (S.D. Cal. April 18, 2017) (same); *Rosenburg v. I.B.M.*, No. CV06–00430PJH, 2007 WL 128232, *5 (N.D. Cal. Jan. 11, 2007) (providing that notice should inform class members of essential terms of settlement, including claims procedures and the right to accept, object or opt-out of settlement).

Here, the Claims Administrator began sending copies of the Notice Packet to potential Settlement Class Members on November 4, 2021. As of December 21, 2021, the Claims Administrator had mailed at least 468,104 copies of the Notice Packet to potential Settlement Class Members. In addition, a Summary Notice was published twice in *The Wall Street Journal* and twice on *PR Newswire*. Moreover, copies of the Notice, Claim Form and other relevant documents were made available on the settlement website, maintained by the Claims Administrator, beginning on November 4, 2021.

Moreover, the substance of the Notice fully apprised Settlement Class Members of their rights. Under Rule 23(e), notice to class members "must generally describe the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (internal quotation marks and alterations omitted). The Notice provided potential Settlement Class Members with material information about the terms of the Settlement and, among other things, their right to opt-out of the Settlement Class; their right to object to any aspect of the Settlement, the Plan of Allocation, or the Fee and Expense Application; and the manner for submitting a Claim Form to be eligible for a payment from the net proceeds of the Settlement.

The Court concludes that the Notice provided in this case complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

## II.     Motion for Attorneys' Fees, Litigation Expenses and Service Awards

In their motion for attorneys' fees, Plaintiffs seek (1) attorneys' fees in the amount of $13,750,000, which is equal to 25 percent of the Settlement Fund, plus any accrued interest; (2) litigation expenses in the amount of $349,575.75; and (3) service awards in the aggregate amount of $22,500 to compensate Lead Plaintiffs.

### A.     Attorneys' Fees

Plaintiffs seek an award of attorneys' fees in the amount of $13,750,000, which is equal to 25 percent of the Settlement Fund. An award of attorneys' fees in a class-action lawsuit is within the discretion of the district court. *Petrovic*, 200 F.3d at 1157; *see also* Fed. R. Civ. P. 23(h). A typical calculation of attorneys' fees in a class action involves the common-fund doctrine, which is based on a percentage of the common fund recovered. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (awarding attorneys' fees of 36 percent from a $3.5 million common fund). Use of a percentage method of awarding attorneys' fees in a common-fund case is "well established." *Petrovic*, 200 F.3d at 1157.

Courts in this Circuit routinely have awarded attorneys' fees ranging from 25 percent to 36 percent of a common fund. *See In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 998 (D. Minn. 2005) (collecting cases). When determining whether a percentage of the common fund is reasonable, courts may consider several factors, including the benefit conferred on the settlement class; the risks to which plaintiffs' counsel were exposed; the

novelty and difficulty of the issues; the time, labor and skill required; the reaction of the class; and the comparison between the requested percentage and percentages awarded in similar cases. *Id.* at 993. The Court addresses the relevant factors in turn.

### 1.     Benefit Conferred on Settlement Class

As addressed above, the Settlement amount of $55 million represents approximately 10 percent of the maximum recoverable damages Plaintiffs expect could be established at trial. This amount is at the high end of recovery amounts that courts in this District have approved in Private Securities Litigation Reform Act (PSLRA) settlements. *See, e.g.*, *Centurylink*, 2021 WL 3080960, at *9 (observing that the "$55 million in monetary relief represents one of the largest PSLRA settlements in this District"). The substantial benefit to the Settlement Class supports the requested percentage-based award of attorneys' fees.

### 2.     Risks to Plaintiffs' Counsel

Plaintiffs' counsel worked on a contingent basis and have received no compensation to date. As addressed above and detailed in Plaintiffs' submissions, Plaintiffs' counsel faced significant litigation risks, including the uncertainty of obtaining class certification and establishing liability, causation and damages. Even if Plaintiffs were to prevail at trial, they would face the risks associated with any appeal. The substantial risks to Plaintiffs' counsel support the requested percentage-based award of attorneys' fees.

### 3. Difficulty of Legal and Factual Issues

Courts in this District have recognized that "[s]ecurities claims proceeding as a class action present complex and novel issues, and successfully prosecuting these types of actions has become more difficult with the adoption of the Private Securities Litigation Reform Act." *Id.* at *9 (quoting *Tile Shop*, 2017 WL 2588950, at *2). In addition, many class-action lawsuits "are inherently complex," and early settlement "avoids the costs, delays and multitude of other problems associated with them." *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001); *accord Marshall v. Green Giant Co.*, 942 F.2d 539, 549 (8th Cir. 1991) ("It goes without saying that class actions are very complex and represent a significant drain on the court in terms of time and management."). This case involved significant legal and factual issues pertaining to falsity, scienter, causation and the calculation of damages. The difficulty of the legal and factual issues supports the requested percentage-based award of attorneys' fees.

### 4. Time, Labor and Skill Required

The record includes firm resumes and summaries of Plaintiffs' counsel's qualifications, which reflect that Plaintiffs' counsel has significant experience and expertise in securities and class-action litigation. In addition, the record reflects that Plaintiffs' counsel undertook substantial efforts in this litigation, including factual and legal research, drafting pleadings and other filings, successfully opposing Defendants' motion to dismiss, engaging in discovery and reviewing documents, preparing for and participating in mediation, and successfully negotiating the Settlement. The record reflects that Plaintiffs' counsel expended more than 11,700 hours of attorney time at the

risk of receiving little or no recovery. As such, the time, labor and skill required in this case supports the requested percentage-based award of attorneys' fees.

### 5.  Reaction of the Settlement Class

As addressed above, 468,104 copies of the Notice Packet were mailed by the Claims Administrator, and the Notice advised potential Settlement Class Members that Co-Lead Counsel intended to apply for a percentage-based award of attorneys' fees not to exceed 25 percent of the Settlement Fund. Only two investors requested to be excluded from the Settlement Class and no objections to the Settlement were received. In addition to the lack of any objections, the record reflects that Lead Plaintiffs—who were actively involved in the litigation and settlement of this Action—have considered and approved of the requested attorneys' fees award. As such, the reaction of the Settlement Class supports the requested percentage-based award of attorneys' fees.

### 6.  Comparison to Similar Cases

Courts in this Circuit routinely have awarded attorneys' fees ranging from 25 percent to 36 percent of a common fund. *See Xcel Energy*, 364 F. Supp. 2d at 998 (collecting cases); *accord Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (observing that "courts have frequently awarded attorneys' fees ranging up to 36% in class actions" and affirming award of 38 percent of the net settlement fund). The 25 percent award requested in this case is at the low end of typical percentage-based awards and is consistent with percentage-based attorneys' fees awarded in similar securities class actions. *See, e.g., Centurylink*, 2021 WL 3080960, at *10, *12 (awarding attorneys' fees of 25 percent of $55 million settlement in securities class action settlement); *Xcel Energy*,

364 F. Supp. 2d at 993–94, 999 (awarding 25 percent of $80 million settlement in securities class action settlement). Accordingly, the requested 25 percent award requested in this case is consistent with awards in similar cases.

      **B.**      **Litigation Expenses**

Plaintiffs also seek an award of litigation expenses in the amount of $349,575.75. "Courts generally allow plaintiffs' counsel in a class action to be reimbursed for costs and expenses out of the settlement fund, so long as those costs and expenses are reasonable and relevant to the litigation." *Khoday v. Symantec Corp.*, No. 11-cv-180 (JRT/TNL), 2016 WL 1637039, at *12 (D. Minn. Apr. 5, 2016). "Counsel in common fund cases may recover those expenses that would normally be charged to a fee paying client." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, No. 05-1708 (DWF/AJB), 2008 WL 682174, at *4 (D. Minn. Mar. 7, 2008) (quoting *In re Infospace, Inc.*, 330 F. Supp. 2d 1203, 1216 (W.D. Wash. 2004)). Permissible categories of expenses include, but are not limited to, "photocopying, postage, messenger services, document depository, telephone and facsimile charges, filing and witness fees, computer-assisted legal research, expert fees and consultants, and meal, hotel, and transportation charges for out-of-town travel." *Xcel Energy*, 364 F. Supp. 2d at 999–1000.

Here, the record reflects that Plaintiffs' requested litigation expenses include expert fees, online research, mediation fees, electronic document production, storage and management, court reporting and transcripts. In particular, nearly 40 percent of the requested litigation expenses arise from online research services, and approximately 35 percent of the requested litigation expenses arise from expert and consultant fees. These

are the types of expenses that courts recognize as reasonably recoverable. *Id.* In addition, the amount of requested litigation expenses is consistent with litigation expenses awarded in similar cases. *See, e.g.*, *Centurylink*, 2021 WL 3080960, at *11–12 (approving reimbursement of $888,775.83 in litigation expenses); *Xcel Energy*, 364 F. Supp. 2d at 999–1000 (approving reimbursement of $481,422.94 in litigation expenses); *Charter Commc'ns*, 2005 WL 4045741, at *24–*25 (approving reimbursement of $671,734.64 in litigation expenses). Moreover, the Notice sent to potential Settlement Class Members reflected that Co-Lead Counsel would apply for payment of litigation expenses in an amount not to exceed $500,000, and there have been no objections in response to the Notice.

Accordingly, Plaintiffs' request for litigation expenses in the amount of $349,575.75 is granted.

### C.   Service Awards

Plaintiffs also seek service awards of $12,500 to the Gabelli Group and $10,000 to the Naya Group, for an aggregate amount of $22,500, to compensate Lead Plaintiffs.

"The PSLRA permits the court to order an award to lead plaintiffs for the services they rendered in a securities class action." *Xcel Energy*, 364 F. Supp. 2d at 1000 (citing 15 U.S.C. § 78u–4(a)(4)). "Courts often grant service awards to named plaintiffs in class action suits to promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017). And "courts in this circuit regularly grant service awards of $10,000 or greater." *Id.* Factors relevant to whether a service award is reasonable include the

17

actions the plaintiffs took to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and efforts the plaintiffs expended in pursuing the litigation. *Id.*; *accord Xcel Energy*, 364 F. Supp. 2d at 1000. Courts also consider the "important policy role" representative plaintiffs play in enforcing federal securities laws, without whom "many violations of law might go unprosecuted." *Xcel Energy*, 364 F. Supp. 2d at 1000.

Here, the record reflects that Lead Plaintiffs expended significant time participating in this litigation. During the course of the litigation, Lead Plaintiffs communicated with counsel regarding case strategy and developments, reviewed pleadings and other filings, responded to discovery requests, consulted with counsel regarding settlement negotiations, and evaluated and approved settlement offers. The Settlement Class has benefited from these actions for the reasons addressed herein, and the time and efforts expended in this case were significant. Moreover, no Settlement Class Member has objected to the requested service awards, which are well within the amount typically awarded. *See, e.g.*, *id.* (awarding a total of $100,000 to group of eight lead plaintiffs); *Charter Commc'ns*, 2005 WL 4045741, at *25 (awarding $26,625.00 to lead plaintiff).

Accordingly, Plaintiffs' request for service awards of $12,500 to the Gabelli Group and $10,000 to the Naya Group, for an aggregate amount of $22,500, is granted.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiffs' unopposed Motion for Final Approval of Class Action Settlement, (Dkt. 140), is **GRANTED**.

    a. The Settlement Agreement and Plan of Allocation are finally approved as being fair, reasonable and adequate pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

    b. The Settlement Class is finally certified, for settlement purposes only, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

    c. The Court confirms that the Notice provided to the Settlement Class was the best notice practicable under the circumstances and satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and the Private Securities Litigation Reform Act.

    d. All Settlement Class Members who timely requested exclusion are excluded from the Settlement. The Settlement Class Members who did not timely request exclusion are hereby bound by the terms of the Settlement Agreement.

2. Plaintiffs' unopposed Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Awards, (Dkt. 142), is **GRANTED**.

    a. The Court awards $13,750,000, plus any accrued interest, in attorneys' fees to Plaintiffs' counsel.

    b. The Court awards $349,575.75 in litigation expenses to Plaintiffs' counsel.

      c. The Court approves service awards of $12,500 to the Gabelli Group and $10,000 to the Naya Group, for an aggregate amount of $22,500, to compensate Lead Plaintiffs for the time spent directly related to their representation of the Settlement Class.

3. Without affecting the finality of this Order and the judgment, the Court retains jurisdiction over this matter for the purpose of resolving disputes related to the interpretation, administration, implementation, effectuation and enforcement of the Settlement.

    LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: March 24, 2022

    s/Wilhelmina M. Wright  
    Wilhelmina M. Wright  
    United States District Judge