**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE RESIDEO TECHNOLOGIES, INC. SECURITIES LITIGATION | Case No. 19-cv-02863 (WMW/BRT) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' UNOPPOSED MOTION FOR CLASS DISTRIBUTION ORDER**

## **TABLE OF CONTENTS**

I.      THE NOTICE PROGRAM AND APPROVAL OF THE SETTLEMENT ............ 2

II.     CLAIMS ADMINISTRATION PROCESS ........................................................... 3

        A.      Procedures and Review ................................................................. 4

        B.      Recommended Disposition of the Claims ..................................... 7

        1.      Co-Lead Counsel Recommend that the Claims Administrator's Eligibility
                Determinations Be Approved ........................................................ 7

        2.      Co-Lead Counsel Recommend that the Court Accept Late-Filed But
                Otherwise Valid Claims ............................................................... 8

        C.      Claimants Requesting Judicial Review ........................................ 8

III.    DISTRIBUTION OF THE NET SETTLEMENT FUND ...................................... 9

CONCLUSION ...................................................................................................... 11

Court-appointed Lead Plaintiffs The Gabelli Asset Fund, The Gabelli Dividend & Income Trust, The Gabelli Focused Growth and Income Fund f/k/a The Gabelli Focus Five Fund, The Gabelli Multimedia Trust Inc., The Gabelli Value 25 Fund Inc., GAMCO International SICAV, GAMCO Asset Management Inc., Naya 1740 Fund Ltd., Naya Coldwater Fund Ltd., Naya Master Fund LP and Nayawood LP, together with additional plaintiff Oklahoma Firefighters Pension and Retirement System (collectively, "Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this memorandum in support of their motion ("Motion") for entry of the proposed Order Authorizing Distribution of Net Settlement Fund to Authorized Claimants and Granting Related Relief (the "Class Distribution Order") in the above-captioned class action (the "Action"), consistent with the accompanying Declaration of Luiggy Segura in Support of Plaintiffs' Unopposed Motion for Class Distribution Order ("Distribution Declaration" or "Distribution Decl."), dated June 15, 2023, submitted on behalf of the Court-approved Claims Administrator, JND Legal Administration ("JND").

Pursuant to the Stipulation and Agreement of Settlement, dated August 17, 2021 ("Stipulation"), previously approved by the Court, Defendants have no interest in the relief sought by the Motion.[1]  *See* Stipulation at ¶ 12 ("This is not a claims-made settlement.  As of the Effective Date, Defendants, and/or any other person or entity funding the Settlement on a Defendant's behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason"); ¶ 22 ("Defendants,

---

[1] All capitalized terms not defined herein have the same meanings as set forth in the Stipulation or in the Distribution Declaration.

Defendants' Counsel, Honeywell, and Honeywell's Counsel shall have no responsibility for . . . involvement in, interest in, or liability, obligation, or responsibility whatsoever with respect to the administration of the Settlement or the actions or decisions of the Claims Administrator, and shall have no liability, obligation, or responsibility whatsoever to the Settlement Class in connection with such administration.").

If entered by the Court, the proposed Class Distribution Order will, among other things: (i) approve JND's administrative recommendations for accepting and rejecting submitted Claims; (ii) direct the distribution of the Net Settlement Fund to Settlement Class Members whose Claims have been accepted as valid and approved by the Court; (iii) establish a bar date beyond which no new Claims will be allowed or adjusted; (iv) approve payment of the Claims Administrator's estimated fees and expenses to complete an initial distribution; and (v) authorize destruction of Claim Forms after the distribution is complete.

## I.    THE NOTICE PROGRAM AND APPROVAL OF THE SETTLEMENT

Pursuant to the Stipulation, Defendants agreed to pay, or cause to be paid, $55,000,000 to settle the Claims against them in the Action and related Claims.  The Court granted preliminary approval of the Settlement by an Order dated October 21, 2021 (ECF No. 135) and granted final approval by Judgment entered March 25, 2022, as amended (ECF Nos. 159, 163).

In accordance with the Preliminary Approval Order, JND mailed the Notice of Pendency and Proposed Settlement of Class Action and Motion for Attorneys' Fees and Expenses (the "Notice") and Proof of Claim and Release Form ("Claim Form")

(collectively, the "Notice Packet") to potential Settlement Class Members and to brokers and other nominees. Distribution Decl. at ¶ 5. The Notice informed Settlement Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to submit Claim Forms no later than March 4, 2022.

The Court approved the proposed Plan of Allocation and the Effective Date of the Settlement has occurred. *See* Stipulation at ¶ 38. Accordingly, the Net Settlement Fund may be distributed to Authorized Claimants. Stipulation at ¶ 23.

## II.    CLAIMS ADMINISTRATION PROCESS

Under the terms of the Stipulation and the Notice, all Settlement Class Members wishing to participate in the distribution of the Net Settlement Fund were required to submit Claim Forms no later than March 4, 2022. As set forth in the accompanying Distribution Declaration, JND received and processed 457,027 Claim Forms. Distribution Decl. at ¶ 8. All Claim Forms received through July 6, 2023, a date prior to the preparation of the Distribution Declaration, have been processed and reviewed. *Id*.

JND has prepared detailed reports of: (1) Authorized Claimants that submitted timely and eligible Claims (Exhibit C); (2) Authorized Claimants that submitted late, but otherwise eligible Claims (Exhibit D); and (3) all wholly rejected or ineligible Claims (Exhibit E). These reports are annexed to the Distribution Declaration, respectively. *Id.* at ¶¶ 41-45. Based on these determinations, the Claims Administrator, in consultation with Co-Lead Counsel, recommends that a distribution to the Claimants listed in Exhibits C and D be authorized.

## A.    Procedures and Review

With respect to JND's extensive review process, among the 457,027 Claim Forms received and processed, 5,624 were paper Claims (submitted by mail) and 2,644 were online Claims (uploaded using the Settlement website).  *Id*. at ¶ 10.  Among the 457,027 Claim Forms received and processed, 448,759 were submitted electronically by large investors with thousands of transactions ("Electronic Claims" or "E-Claims") to JND's Electronic Filing Team.  *Id*. at ¶¶ 14-15.  The paper Claim Forms were opened and scanned into an electronic database created for this Settlement.  *Id*. at ¶ 10.  Data from all the Claim Forms were entered into the database created for the Settlement, and then data were evaluated and processed according to a complex coding procedure to identify the types and conditions of the Claim Forms.  *Id*. at ¶¶ 10-18.

Many of the Claims initially submitted were deficient or ineligible for one or more reasons, including for not being signed, not being properly documented, not having any eligible transactions in Resideo common stock during the Class Period or being otherwise deficient.  *Id*. at ¶¶ 12-13, 16.  JND also encountered many "non-conforming" Claims, which, in general, require significantly more work than properly submitted Claims because of the information contained in or missing from the Claim or the manner in which the Claim Form was completed.  *Id*. at ¶ 20.  Non-conforming Claims include, among other conditions, missing pages, no name or address, Claim Forms that are blank but submitted with documentation for JND to complete and Claim Forms that are so materially deficient as to make what is being claimed unrecognizable.  *Id*.

If a paper or online Claim was determined to be defective or ineligible, a Notice of Deficient and/or Ineligible Claim ("Deficiency Notice") was sent to the Claimant describing the defect(s) in his, her or its Claim and what was necessary to cure any "curable" defect(s) in the Claim. *Id*. at ¶ 23. The Deficiency Notice advised the Claimant that the submission of the appropriate information and/or documentary evidence to complete the Claim had to be sent within twenty (20) days from the date of the notice or the Claim would be recommended for rejection to the extent the deficiency or condition of ineligibility was not cured. *Id*. Claimants were also advised that they could request Court review of JND's administrative determinations if they wished to contest the rejection of their Claims. *Id*. Examples of such notices are attached as Exhibit A to the Distribution Declaration.

If an "Electronic Claim," *i.e.*, large Claims with many transactions that are submitted to JND's Electronic Filing Team specializing in handling such Claims, was determined to be deficient and/or rejected, JND notified the filer of the deficiencies or conditions of rejection by emailing a Deficiency Spreadsheet, which listed the specific Claims that were deficient/rejected, along with detailed information about the conditions of ineligibility so that the issues could be cured. *Id*. at ¶¶ 25-27. The email advised the filer that any deficient transactions or Claims that remain uncured would be rejected, and it informed the filer that it could, on behalf of the Claimant (if not the filer itself), request that the Court review JND's administrative determination if it wished to contest the rejection. *Id*.

5

JND carefully reviewed Claimants' and electronic filers' responses to the deficiency notifications and worked with them to resolve deficiencies where possible. *Id*. at ¶¶ 24, 28. JND also emailed and/or initiated automated calls to Claimants with still-deficient Claims to provide them with a final opportunity to cure the deficiencies in their Claims. JND contacted the still-deficient Claimants prior to their deficiency response deadline to inform them that there are still outstanding deficiencies in their Claim(s) and to contact JND by phone or email with any questions about the deficiencies. ¶¶ 29-32. The process was designed to cure as many deficient Claims as possible and advise Claimants of their rights.

The administration was also subject to JND's rigorous quality assurance reviews and screening for potentially fraudulent filers. *Id*. at ¶¶ 37-40. Among other things, JND's Quality Assurance personnel performed a final Quality Assurance review once all of the accepted Claims were processed, deficiency notices were mailed and deficiency responses were reviewed and processed, to ensure the correctness and completeness of all of the processed Claims before JND prepared its final reports to Co-Lead Counsel. Here, in connection with this final review, JND: (i) verified that Claim Forms had signatures of authorized individuals; verified that true duplicate Claims were identified and rejected; verified that persons and entities excluded from the Settlement Class did not file Claims or their Claims were rejected; (ii) performed a final Quality Assurance audit of Claims and all supporting documentation to ensure completeness of Claims; performed an audit of deficient Claims; performed additional review of Claims with high Recognized Loss amounts; (iii) audited Claims that were designated invalid; (iv) audited Claims with a

6

Recognized Loss amount equal to zero; (v) performed other auditing based on Claim completion requirements and calculation specifications based on the Court-approved Plan of Allocation; and (vi) re-tested the accuracy of the loss calculation program. *Id*. at ¶ 37.

**B.      Recommended Disposition of the Claims**

**1.      Co-Lead Counsel Recommend that the Claims Administrator's Eligibility Determinations Be Approved**

Of the 457,027 Claims received through July 6, 2023, 109,048 were timely and have been determined by JND to be eligible in whole or in part to receive a payment from the Net Settlement Fund. *Id*. at ¶ 42 and Ex. C. A total of 345,498 Claims were rejected, after exhaustion of the deficiency process explained above. *Id*. at ¶ 44 and Ex. E. Many of these rejected Claims (291,876) did not calculate to a Recognized Loss under the Court-approved Plan of Allocation; 40,369 were deficient Claims not cured; 12,822 Claims did not fit the definition of the Settlement Class; 230 were duplicates; and 201 Claims were withdrawn. *Id.*

It is respectfully requested that the Court authorize distribution of the Net Settlement Fund to the eligible Claimants identified by JND (including those that filed after the Claim deadline but on or before July 6, 2023, as set forth below), representing a total Recognized Loss amount of $1,160,464,483.03 (consisting of $1,138,685,564.61 for Timely Submitted and Valid Claims and $21,778,918.42 for Late But Otherwise Eligible Claims) and reject those designated for rejection. Distribution Decl. ¶¶ 42-43.

### 2.    Co-Lead Counsel Recommend that the Court Accept Late-Filed But Otherwise Valid Claims

JND received and processed 8,876 Claims that were postmarked after the Court-established Claim deadline, but on or before July 6, 2023. *Id*. at ¶¶ 35, 43. Among these, 2,481 are, but for their late submission, otherwise valid and calculate to a Recognized Loss amount of $21,778,918.42. *Id*. at ¶ 43.

Although these Claims were late, they were received while the processing of Claims was ongoing. The processing of these late Claims did not delay the Claims administration, nor will it delay the distribution of the Net Settlement Fund. Co-Lead Counsel believe it would be appropriate to allow payment of these otherwise eligible Claims that were received while Claim processing was being completed, and respectfully request that these Claims be approved as eligible for payment.[2]

However, in order to complete the administration, there needs to be a final cut-off date. JND recommends that all Claims received or adjusted after July 6, 2023 be rejected as untimely. *Id*. at ¶ 36.

### C.    Claimants Requesting Judicial Review

JND received requests for judicial review from 13 Claimants. JND was able to resolve all of these requests, either because the Claim was cured or because the Claimant withdrew the request. *Id*. at ¶ 34.

---

[2] Co-Lead Counsel have discretion to accept Claims submitted after the filing deadline. *See* Preliminary Approval Order at ¶ 11 ("Co-Lead Counsel may, at their discretion, accept late claims for processing provided that such acceptance does not delay the distribution of the Net Settlement Fund to the Settlement Class.").

8

## III.    DISTRIBUTION OF THE NET SETTLEMENT FUND

JND, in consultation with Co-Lead Counsel, has developed a distribution plan for the Net Settlement Fund that will allow for the fair distribution of the Settlement proceeds, pursuant to the Plan of Allocation and Stipulation, until the fund is exhausted. *See* Distribution Decl. at ¶ 47.  JND estimates that it will cost $42,747.69 to conduct the initial distribution of the Net Settlement Fund, and Plaintiffs respectfully request approval to pay JND this amount from the Settlement Fund.  *See* Distribution Decl., Ex. F.  If less than this amount is actually incurred, JND will refund the difference to the Net Settlement Fund.[3]

The key components of the distribution plan provide for: (i) the distribution of the Net Settlement Fund to all Authorized Claimants whose Claim Forms are valid and whose *pro rata* payment amount meets or exceeds $10.00; (ii) the hold-back of a 5% reserve for use in the event there are unanticipated claims administration-related issues after the initial distribution ("Reserve") and future tax liability; (iii) thereafter, additional distributions of unclaimed funds to Authorized Claimants that cashed their prior distribution checks and would receive at least $10.00, until it is no longer economically feasible to make further distributions. *See* Distribution Decl. at ¶ 47. Once it is not economical to make additional distributions, Co-Lead Counsel recommend that any remaining balance be donated to the American Red Cross, or a non-profit non-sectarian

---

[3] JND's fees and expenses for providing notice of the Settlement and processing the Claims totaled $1,459,208.04 and have been paid from the Settlement Fund. ¶ 46.

organization chosen by the Court. *See generally* https://www.redcross.org/donations/ where-your-money-goes.html.[4]

More specifically, JND will conduct an initial distribution (the "Initial Distribution") of the Net Settlement Fund, after deducting the payment requested here, and after payment of any Taxes, the costs of preparing appropriate tax returns and any bank fees. JND will, pursuant to the terms of the Plan of Allocation, eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share of the Net Settlement Fund is less than $10.00. JND will also deduct and maintain the Reserve. The remaining Authorized Claimants' distribution amounts will be calculated by dividing the total updated Net Settlement Fund by the Recognized Claims of all remaining Authorized Claimants. *Id*. at ¶ 47(a). Thereafter, to the extent the Reserve is not depleted, the remainder will be distributed in subsequent distributions. *Id*. at ¶ 47(d).

With respect to additional distributions, after JND has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, but no earlier than six (6) months after the Initial Distribution, JND will conduct a second distribution of the Net Settlement Fund (the "Second Distribution") in which any unclaimed amounts remaining in the Net Settlement Fund after the Initial Distribution, including the Reserve to the extent not depleted, after deducting JND's fees and expenses

---

[4] As described by the American Red Cross, the organization was "founded by Clara Barton on May 21, 1881, [and] has been dedicated to serving people in need. We received our first congressional charter in 1900 and to this day we are tasked by the federal government with providing services to members of the American armed forces and their families as well as providing disaster relief in the United States and around the world. In 2021, the Red Cross celebrated 140 years of compassionate service." *See* https://www.redcross.org/ about-us /who-we-are/history.html.

incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of such Second Distribution), and after the payment of any Taxes, the costs of preparing appropriate tax returns and any bank fees, will be distributed to Authorized Claimants in the Initial Distribution that cashed their Initial Distribution checks and would receive at least $10.00.  *Id.* at ¶ 47(d).  Additional re-distributions, after deduction of costs and expenses as described above and subject to the same conditions, may occur thereafter until Co-Lead Counsel, in consultation with JND, determine that further re-distribution is not cost-effective.  *Id.* at ¶ 47(d)-(e).  At such time, the unclaimed balance will be donated as set forth above.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Motion be granted in its entirety and that the Court enter the proposed Class Distribution Order submitted herewith.

DATED: August 11, 2023                              Respectfully submitted,


/s/ Andrew J. Entwistle                           /s/ Ira A. Schochet
Andrew J. Entwistle (*pro hac vice*)              Ira A. Schochet (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**                      **LABATON SUCHAROW LLP**
500 West 2nd Street, Suite 1900                   140 Broadway
Austin, Texas 78701                               New York, New York 10005
Telephone: (512) 710-5960                         Telephone: (212) 907-0700
aentwistle@entwistle-law.com                      ischochet@labaton.com

*Lead Counsel for The Gabelli Plaintiffs*         *Lead Counsel for the Naya Group and*
*and Co-Lead Counsel for the Class*               *Co-Lead Counsel for the Class*


/s/ X. Jay Alvarez                                /s/ Bryan L. Bleichner
X. Jay Alvarez (*pro hac vice*)                   Bryan L. Bleichner (MN #326689)

11

Steven W. Pepich (*pro hac vice*)
**ROBBINS GELLER RUDMAN
& DOWD LLP**
655 West Broadway, Suite 1900
San Diego, California 92101
Telephone: (619) 231-1058
jaya@rgrdlaw.com
stevep@rgrdlaw.com

*Counsel for Oklahoma Firefighters
Pension and Retirement System*

**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South
Suite 1700
Minneapolis, Minnesota 55401
Telephone: (612) 339-7300
bbleichner@chestnutcambronne.com

*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

I certify that on August 11, 2023, I caused the foregoing to be electronically filed with Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

*/s/ Andrew J. Entwistle*
Andrew J. Entwistle