**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE RESIDEO TECHNOLOGIES, INC. SECURITIES LITIGATION | Case No. 19-cv-02863 (WMW/BRT) |

**DECLARATION OF LUIGGY SEGURA IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS DISTRIBUTION ORDER**

I, LUIGGY SEGURA, declare and state as follows:

1.    I am a Vice President at JND Legal Administration ("JND").[1]  I am over 21 years of age and am not a party to the above-captioned action (the "Action").  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently thereto.

2.    Pursuant to the Court's Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, dated October 21, 2021 (ECF No. 135, the "Preliminary Approval Order"), Co-Lead Counsel were authorized to retain JND as the Claims Administrator to supervise and administer the notice procedure in connection with the Settlement of the Action, as well as the processing of Claims.  On March 24, 2022, the Court entered the Order Granting Plaintiffs' Motions for Final Approval of Class Action

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated August 17, 2021 (the "Stipulation"), previously filed with the Court (ECF No. 127-1).  The Settlement is governed by the Stipulation.

Settlement and Attorneys' Fees, ECF No. 158, and entered a Judgment dismissing the Action on April 13, 2022, ECF No. 163. Pursuant to the Settlement, $55,000,000.00 was deposited into an interest-bearing Escrow Account (the "Settlement Fund"). The Effective Date of the Settlement has occurred, Settlement Class Members' claims have been processed and the Net Settlement Fund may be distributed to Authorized Claimants pursuant to Order of this Court. *See* Stipulation, ¶ 23.

3.      As Claims Administrator, JND has, among other things: (a) mailed the Notice of Pendency and Proposed Settlement of Class Action and Motion for Attorneys' Fees and Expenses (the "Notice") and the Proof of Claim and Release Form (the "Claim Form" or "Proof of Claim Form," and together with the Notice the "Notice Packet"); (b) created and continues to maintain a toll-free helpline for inquiries during the course of the administration; (c) designed, implemented and launched the Settlement website (the "Settlement Website"), which became operational on or about November 4, 2021, and includes the claim-filing deadline, copies of the Stipulation, Preliminary Approval Order, Notice and Proof of Claim Form and the claim submission portal; (d) published the Summary Notice; (e) provided, upon request, copies of the Notice Packet to potential Settlement Class Members, brokers and other nominees; and (f) received and processed Claim Forms submitted in connection with the Settlement ("Claims").

4.      JND has completed processing all Claims received through July 6, 2023, in accordance with the terms of the Stipulation and the Court-approved Plan of Allocation governing the allocation of the proceeds of the Settlement, and hereby submits its administrative determinations accepting and rejecting the Claims in preparation for a

distribution of the Net Settlement Fund to Authorized Claimants and in support of Plaintiffs' Motion for Class Distribution Order.

## DISSEMINATION OF NOTICE

5.      As more fully described in the Declaration of Luiggy Segura Regarding: (A) Mailing of the Notice Packet; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date, dated December 22, 2021 (ECF No.144-2, the "Initial Mailing Decl.") and the Supplemental Declaration of Luiggy Segura Regarding (A) Mailing of Notice and Claim Form; (B) Report on Requests for Exclusion and Objections; and (C) Claims Received to Date, dated January 20, 2022 (ECF No. 155, the "Suppl. Mailing Decl."), JND mailed Notice Packets to potential Settlement Class Members.  Suppl. Mailing Decl. ¶ 4.

6.      JND established and continues to maintain the Settlement Website dedicated to this Action (www.ResideoTechnologiesSettlement.com) and a toll-free telephone helpline (1-833-823-0043) to assist potential Settlement Class Members.  The Settlement Website (which provides access to important documents relevant to the Settlement) and the telephone helpline enable Settlement Class Members to obtain information about the Settlement.  In connection with establishing and maintaining the Settlement Website and toll-free telephone helpline, JND, among other things, formulated a system to ensure that proper responses were provided to all telephonic and electronic inquiries.  That work included training telephone agents to respond to inquiries specific to the Settlement; developing a series of common questions and the answers thereto, known as Frequently Asked Questions, or "FAQs;"

loading key documents onto the Settlement Website; and programming the Settlement Website to permit the viewing and downloading of those documents.

7.      In accordance with Paragraph 7 (d) of the Preliminary Approval Order, on November 18, 2021 and again on November 26, 2021, JND caused the Summary Notice to be transmitted over *PR Newswire* and published in *The Wall Street Journal.*  Initial Mailing Decl. ¶ 15.

## PROCEDURES FOLLOWED IN PROCESSING CLAIMS

8.      Under the terms of the Preliminary Approval Order and as set forth in the Notice, each Settlement Class Member that wished to be eligible to receive a distribution from the Net Settlement Fund was required to complete and submit to JND a properly executed Claim Form postmarked or received by March 4, 2022, together with adequate supporting documentation for the transactions and holdings reported in the Claim Form. Through July 6, 2023, JND has received and fully processed 457,027 Claims.

9.      In preparation for receiving and processing Claims, JND: (a) conferred with Co-Lead Counsel to define the guidelines for processing Claims; (b) created a unique database to store Claim details, images of Claims and supporting documentation (the "Settlement Database"); (c) trained staff in the specifics of the Settlement so that Claims would be properly processed; (d) formulated a system so that telephone and email inquiries would be properly responded to; (e) developed various computer programs and screens for entry of Claimants' identifying information and their transactional information; and (f)

developed a proprietary "calculation module" that would calculate Claims pursuant to the Court-approved Plan of Allocation.

## PROCESSING CLAIMS

### A.    Paper and Online Claims

10.    Of the 457,027 Claims received through July 6, 2023, 5,624 are paper Claims and 2,644 are "online" Claims received through the online filing component of the Settlement Website.  Once received, the paper Claims were opened and prepared for scanning.  This process included unfolding documents, removing staples, copying nonconforming-sized documents and sorting documents.  This manual task of preparing the paper Claims is laborious and time-intensive.  Once prepared, paper Claims were scanned into the Settlement Database together with all submitted documentation.

11.    Each paper and online Claim was assigned a unique Claim number.  The information from each Claim (including the Claimant's name, address, account number/information from his, her or its supporting documentation and the Claimant's purchase/acquisition transactions, sale transactions and holdings listed on the Claim) was entered into the Settlement Database.  Once entered into the Settlement Database, Claims were reviewed to verify that all required information had been provided. The documentation provided by the Claimant in support of his, her or its Claim was reviewed for authenticity and compared to the information provided in the Claim to verify the Claimant's identity and

the purchase/acquisition transactions, sale transactions and holdings listed on the Claim. Some Claimants provided hundreds of pages of supporting documentation.

12.    To process the transactions detailed in the Claims, JND utilized internal messages to identify and classify deficiency or ineligibility conditions existing within those Claims.  Appropriate messages were assigned to the Claims as they were processed.  For example, where a Claim was submitted by a Claimant that did not have any eligible transactions in Resideo common stock during the Class Period, that Claim would receive a "Claim-level" message that denoted ineligibility.  Similar Claim-level ineligible messages were used to denote other ineligible conditions, such as duplicate Claims.  These messages would indicate to JND that the Claimant was not eligible to receive any payment from the Net Settlement Fund with respect to that Claim unless the deficiency was cured in its entirety. Examples of Claim-level messages are as follows:

- Inadequate Documentation Submitted for Entire Claim

- No Supporting Documentation Submitted for Entire Claim

- No Purchase Transaction in the Class Period

13.    Because a Claim may be deficient only in part, but otherwise acceptable, JND also utilized messages that were applied only to specific transactions within a Claim.  For example, if a Claimant submitted a Claim with supporting documentation for all but one purchase transaction, that one transaction would receive a "transaction-level" message.  The message indicated that although the transaction was deficient, the Claim was otherwise eligible for payment if other transactions in the Claim calculated to a Recognized Loss according to the Court-approved Plan of Allocation.  Thus, even if the transaction-level

deficiency was never cured, the Claim could still be partially accepted. Examples of transaction-level messages are as follows:

- No Supporting Documentation for Specific Transaction/Position

- Inadequate Documentation for Specific Transaction/Position

- Illegible Documentation for Specific Transaction/Position

**B.    <u>Electronic Claims</u>**

14.    Of the 457,027 Claims received through July 6, 2023, 448,759 were filed electronically by, primarily, institutions ("Electronic Claims" or "E-Claims"). Electronic Claim filers ("Electronic Claim Filers" or "E-Claim Filers") are typically banks, brokers, nominees and other-third party filers that file Claims on behalf of numerous Claimants. Because E-Claim Filers typically submit a high volume (hundreds or thousands) of transactions during a class period on behalf of the beneficial owners of the security in question, JND provides E-Claim Filers with the opportunity to mail a computer disc or electronically submit a file containing all the transactions — rather than provide reams of paper requiring data entry — so that JND can upload all transactions to the Settlement Database.

15.    JND maintains an electronic filing operations team (the "Electronic Filing Team") to coordinate and supervise the receipt and handling of all Electronic Claims. In this case, the Electronic Filing Team reviewed and analyzed each electronic file to ensure that it was formatted in accordance with JND's required format and to identify any potential data issues or inconsistencies within the file. If any issues or inconsistencies arose, JND notified

the E-Claim Filer.  If the electronic file was deemed to be in an acceptable format, it was then loaded to the Settlement Database.

16.    Once each electronic file was loaded, the Electronic Claims were coded with messages to denote any deficient or ineligible conditions that existed within them.  These messages are similar to those applied to paper/online Claims.  In lieu of manually applying messages, the Electronic Filing Team performed programmatic reviews on Electronic Claims to identify deficient and ineligible conditions (such as, but not limited to, price out-of-range issues, out-of-balance conditions, transactions outside the Class Period, *etc*.).  The output was thoroughly verified and confirmed as accurate.

17.    The review process also included message coding Electronic Claims that were submitted with a cover email, but not accompanied by a signed Claim Form, which serves as a "Master Proof of Claim Form" for all Claims referenced in the electronic file submitted. This process was reviewed by JND's Electronic Filing Team and, when appropriate, JND contacted the E-Claim Filers whose submissions were missing information.  This process ensured that only fully completed Claims, submitted by properly authorized representatives of the Claimants, were considered eligible for payment from the Net Settlement Fund.

18.    Finally, at the end of this process, JND performed various targeted reviews of Electronic Claims.  Specifically, JND used criteria such as the calculated Recognized Loss amounts and other criteria to flag and reach out to a number of E-Claim Filers and request that various sample purchases/acquisitions, sales and holdings selected by JND be further documented through the provision of confirmation slips or other transaction-specific supporting documentation. In addition, JND reviewed irregularities in the data, such as

Resideo common stock shares being reported as acquired via the Honeywell Spin-Off ("Spin-Off shares") where the trade dates were outside the timeframe when Spin-Off shares were issued or holdings of Resideo common stock being reported as an eligible purchase or acquisition. These targeted reviews helped to ensure that electronic data supplied by Claimants did not contain inaccurate information.

### C.   Additional Complexities Encountered in Processing Claims

19.   JND has processed a total of 457,027 Claims.  Approximately 351,232, or about 76.8%, of the 457,027 Claims received through July 6, 2023, were partially or wholly ineligible for one or more reasons, and were therefore subjected to additional processing, correspondence and/or telephonic communications described in the section below entitled "The Deficiency Process."

20.   During the processing of Claim Forms, JND encountered "non-conforming" Claims, which, in general, require significantly more work than standard Claims because of the information contained in or missing from the Claim Form, or because of the manner in which the Claim Form was completed.  Non-conforming Claims include, among other conditions, missing pages, no name or address, Claim Forms that are blank but submitted with documentation for JND to complete and Claim Forms that are so materially deficient as to make what is being claimed unrecognizable. In addition, JND encountered Claims that did not properly indicate Resideo common stock obtained via the Honeywell Spin-Off, where the Claims included shares in both the purchases and Spin-Off sections of the Claim Form, or they included Spin-Off shares only in the purchase section.  Claims also reported the purchase of Honeywell shares in addition to, or in lieu of, Resideo common stock

transactions. A significant amount of time and resources were required to closely review such Claims.

## EXCLUDED PERSONS

21.    JND also reviewed all Claims to ensure that they were not submitted by, or on behalf of, "Excluded Persons," to the extent that the identities of such persons or entities were known to JND through the list of Defendants and other excluded persons and entities excluded by the definition set forth in the Stipulation, the Notice and from the Claimants' certifications on the Claim Forms.  JND also reviewed all Claims against the list of persons that were excluded from the Settlement Class pursuant to request.  JND identified twenty-one (21) Claims submitted on behalf of or by persons and entities excluded by definition and sent notifications informing the individual or entity that filed the Claim that the Claimant was identified as an "Excluded Person."  Two (2) responses were received from the twenty-one (21) Claimants notified, requesting further information regarding the determination. Neither of the two (2) responders have contested the rejections.  Responses were not received for the remaining nineteen (19) Claimants that were notified of JND's determination.

## THE DEFICIENCY PROCESS

### A.    Paper and Online Claims

22.    Approximately 53% of the paper Claims (*i.e.*, 2,980 of the 5,624 paper Claims) and 44.5% of the online Claims (*i.e.*, 1,176 of the 2,644 online Claims) were incomplete or had one or more defects or conditions of ineligibility, such as the Claim not being signed, not being properly documented or indicating no eligible transactions in Resideo common stock during the Class Period.  The "Deficiency Process," which primarily involved mailing

letters or sending emails to Claimants and responding to communications from Claimants by email and/or telephone, was intended to assist Claimants in properly completing their deficient submissions so that they could be eligible to participate in the Settlement.

23.     If paper or online Claims were determined to be defective, a Notice of Deficient and/or Ineligible Claim ("Deficiency Notice") was sent to the Claimants describing the defect(s) in the Claims and what, if anything, was necessary to cure the defect(s) in these Claims.   The Deficiency Notice advised Claimants that submission of appropriate information and/or documentary evidence to complete the Claim had to be sent within twenty (20) days from the date of the Deficiency Notice, or the Claim would be recommended for rejection to the extent that the deficiency or condition of ineligibility was not cured.  The Deficiency Notice also advised Claimants that to contest these administrative determinations, they were required to submit written statements to JND requesting Court review of their Claims and setting forth the basis for such requests.   JND sent a total of 4,156 Deficiency Notices to Claimants that filed paper or online Claims that JND determined to be defective.  Attached hereto as Exhibit A are examples of Deficiency Notices.

24.     Claimants' responses to Deficiency Notices were scanned into the Settlement Database and associated with the corresponding Claims.  The responses were then carefully reviewed and evaluated by JND's team of processors.  If a Claimant's response corrected the

-11-

defect(s), JND manually updated the Settlement Database to reflect the changes in the status of the Claim.

### B.    Electronic Claims

25.    Approximately 77.3% of the E-Claims (*i.e.*, 347,076 of the 448,759 E-Claims) were incomplete or had one or more defects or conditions of ineligibility. 347,076 deficient E-Claims were filed by a total of 79 E-Claim Filers. JND informed each of these 79 E-Claim Filers of the deficiencies by sending an email ("Deficiency Email") to the email address included with the respective E-Claim Filers' Claim Form with an attached report containing detailed information associated with the Claims and indicating which of the Claims within the original submission were deficient and/or rejected ("Deficiency Spreadsheet"). Attached hereto as Exhibit B is an example of the Deficiency Email and Deficiency Spreadsheet.

26.    The Deficiency Email:

(a)    Notified the E-Claim Filer that any Claims with deficiencies not corrected within twenty (20) days from the date of the email may be rejected;

(b)    Advised the E-Claim Filer of his, her or its right to contest the rejection of the Claim(s) and request the Court's review of JND's administrative determination within twenty (20) days from the date of the Deficiency Email; and

(c)    Provided instructions for how to submit corrections.

-12-

27. The Deficiency Spreadsheet attached to the Deficiency Email identified each of the individual Claims that were found to be deficient or ineligible and the basis for that deficiency or condition of ineligibility.

28. The E-Claim Filers' responses were reviewed, scanned and/or loaded into the Settlement Database, and associated with the corresponding Electronic Claims. If a response corrected the defect(s) or affected an Electronic Claim's status, JND manually and/or programmatically updated the database to reflect such change in status of the Electronic Claim.

**C.     Outreach Campaign to Claimants Who Did Not Cure Deficiencies**

29. JND also emailed and/or initiated automated calls to Claimants with still-deficient Claims to provide them with a final opportunity to cure the deficiencies in their Claims. JND contacted the still-deficient Claimants prior to their deficiency response deadline to inform them that there are still outstanding deficiencies in their Claim(s) and to advise them to contact JND by phone or email with any questions about the deficiencies.

30. When a JND agent communicated with a Claimant by phone or email, he or she explained the Claim submitted was still deficient and advised the Claimant of the steps required to cure the deficiency. JND provided assistance to Claimants where possible, depending on the nature of the deficiency. For example, if a Claimant needed additional supporting documentation, JND explained the types of documentation that would render the Claim eligible, and how the Claimant could obtain the necessary documentation. JND also provided some Claimants with direct phone numbers and email addresses of

JND employees, so that Claimants could receive continued personalized attention and assistance.

31.     JND also performed individual outreach for high value deficient Claims. JND's agents advised the Claimants of the steps required to cure the deficiency or left a voice message, when possible, requesting a call back when JND could not reach one of these Claimants to speak one-on-one. JND explained in the voice message that it was calling to assist the Claimant in remedying outstanding deficiencies in the Claim.

32.     If, in response to a telephone call or email, a Claimant cured the deficiency in his, her or its Claim by providing the appropriate information and/or supporting documentation, JND updated the Settlement Database to reflect the change in the status of the Claim.

## DISPUTED CLAIMS

33.     Claimants were advised they had the right to contest JND's administrative determination of deficiency or ineligibility within twenty (20) days from the date of notification and that they could request that the dispute be submitted to the Court for review. More specifically, Claimants were advised in the Deficiency Notice that, if they disputed JND's determination, they had to provide a statement of reasons indicating the grounds for contesting the determination, along with supporting documentation, and if the dispute concerning their Claim could not otherwise be resolved, Co-Lead Counsel would thereafter present the request for review to the Court for a final determination.

34.     During this administration, JND received thirteen (13) requests for Court review from individual Claimants.  JND reached out to the Claimants that requested Court

review ("Disputing Claimants") where possible to fully explain JND's administration determination with respect to their Claim(s). Through this additional outreach and explanation, six (6) Claimants understood the reason for JND's determination to wholly or partially reject their Claims and they subsequently withdrew their requests for Court review. Seven (7) Claimants resolved their deficiencies, withdrew their requests for Court review, and their Claims are now recommended for approval.

## LATE BUT OTHERWISE ELIGIBLE CLAIMS

35.    Of the Claims received through July 6, 2023, 8,876 were received or postmarked after the March 4, 2022 Claim submission deadline established by the Court. JND processed all late Claims received through July 6, 2023 and 2,481 have been found to be otherwise eligible in whole or in part (the "Late But Otherwise Eligible Claims"). JND has not rejected any Claim received through July 6, 2023 solely based on its late submission. It is typical, and in fact the norm, for courts to accept late filed claims in securities cases. Therefore, to the extent these Claims are eligible, but for the fact that they were late, they are recommended for payment by JND, subject to the Court's determination.

36.    However, there must be a final cut-off date after which no more Claims will be accepted so that there may be a proportional allocation of the Net Settlement Fund and the distribution may be accomplished. Acceptance of additional Claims or responses to notices of deficiency received during the finalization of the administration and the preparation of this application would necessarily require a delay in the distribution. Accordingly, JND respectfully requests that the Court order that no Claim received or

adjusted after July 6, 2023 be eligible for payment for any reason whatsoever. Co-Lead Counsel approve of this Claim cut-off date.

## QUALITY ASSURANCE

37.     An integral part of the claims administration process is the Quality Assurance review. Throughout the administration process, JND's Quality Assurance personnel worked to verify that Claims were processed properly by ensuring that information was entered correctly into the database, deficiency and/or rejection message codes were assigned accurately and deficiency and/or rejection notification letters were sent appropriately. After all Claims were processed, deficiency and/or rejection letters were mailed and Claimants' responses to the deficiency and/or rejection letters were reviewed and processed, JND's Quality Assurance personnel performed additional Quality Assurance reviews. These final Quality Assurance reviews further ensured the correctness and completeness of all Claims processed prior to the preparation of this declaration and JND's final documents in support of the distribution of the Net Settlement Fund. As part of the Quality Assurance reviews, JND:

(a)     Verified that Claim Forms had signatures of authorized individuals;

(b)     Verified that true duplicate Claims were identified and rejected;

(c)     Verified that persons and entities excluded from the Settlement Class did not file Claims or their Claims were rejected;

(d)     Performed a final Quality Assurance audit of Claims and all supporting documentation to ensure completeness of Claims;

(e)     Performed an audit of deficient Claims;

(f)    Performed additional review of Claims with high Recognized Loss amounts;

(g)    Audited Claims that were designated invalid;

(h)    Audited Claims with a Recognized Loss amount equal to zero;

(i)    Performed other auditing based on Claim completion requirements and calculation specifications based on the Court-approved Plan of Allocation; and

(j)    Re-tested the accuracy of the Recognized Loss amount calculation program.

38.    In support of the work described above, JND's computer staff designed and implemented, and the project team tested, the following programs for this administration: (a) data entry screens that store Claim information (including all transactional data included with each Claim Form) and attach messages and, where necessary, text to denote conditions existing within the Claim; (b) programs to load and analyze transactional data submitted electronically for all Electronic Claims; (c) a program to compare the claimed transaction prices against the reported market prices to confirm that the claimed transactions were within an acceptable range of the reported market prices; (d) a calculation program to analyze the transactional data for all Claims and calculate each Claimant's Recognized Loss based on the Court-approved Plan of Allocation; and (e) programs to generate

-17-

various reports throughout and at the conclusion of the administration, including lists of all eligible and ineligible Claims.

39.     JND also used a variety of fraud protection controls throughout the administration process to identify potential fraudulent Claims.  Duplicate Claim searches, high value reviews, spot reviews and other standard audit reports that examined the information in a variety of ways were used during the Claim review process.

40.     As part of its due diligence in processing the Claims, JND reviewed and compared the entire Settlement Database against a "watch list" of known questionable filers that JND has developed throughout its years of experience as a Claim Administrator.  JND has worked closely with law enforcement to update that watch list with the latest information available.  JND performs searches based on names, aliases, addresses and city/zip codes.  In addition, JND's claim processors are trained to identify any potentially inauthentic documentation when processing Claims, including Claims submitted by Claimants not previously captured in the "watch list."  Processors are instructed to message code any Claim that matches to a record on the "watch list" and escalate them to management for review.  JND's Fraud Protection procedures identified no potentially fraudulent Claims.

### RECOMMENDATIONS FOR APPROVAL AND REJECTION

41.     As noted above, through July 6, 2023, 457,027 Claims have been processed.

### A.     Timely Submitted and Valid Claims

42.     A total of 448,151 Claims were received or postmarked on or before the Court-approved Claim submission deadline of March 4, 2022, of which 109,048 were determined by JND to be eligible and are recommended for approval ("Timely Eligible Claims").  The

total Recognized Loss amount for these Claims is $1,138,685,564.61.  A list with the timely

Eligible Claims showing each Claimant's Recognized Loss is attached hereto as Exhibit C.

### B.      Late But Otherwise Eligible Claims

43.      A total of 8,876 Claims were received or postmarked after the Court-approved

Claim submission deadline of March 4, 2022 but received on or before July 6, 2023.  Of

those, 2,481 were determined by JND to be otherwise eligible and are recommended for

approval ("Late But Otherwise Eligible Claims").  The total Recognized Loss amount for

these Claims is $21,778,918.42. A list with the Late But Otherwise Eligible Claims showing

each Claimant's Recognized Loss is attached hereto as Exhibit D.

### C.      Rejected Claims

44.      After the responses to Deficiency Notices were processed, a total of 345,498

Claims remain recommended for rejection by the Court ("Rejected Claims") for the

following reasons:

> (a)      291,876 Claims did not result in a Recognized Loss pursuant to the
>
>          Court approved Plan of Allocation;
>
> (b)      12,822  Claims did not fit the definition of the Settlement Class;
>
> (c)      40,369 Deficient Claims never cured;
>
> (d)      230 Duplicate Claims; and
>
> (f)      201 Claims were withdrawn.

45.      A list of the Rejected Claims with the reasons for rejection is attached hereto

as Exhibit E.

## FEES AND EXPENSES

46.    JND agreed to be the Claims Administrator in exchange for payment of its fees and expenses, pursuant to the terms of the Stipulation.  JND has done its best to keep costs as low as possible. JND's total fees and expenses for this matter through July 9, 2023 are $1,459,208.04 which includes brokerage firm and nominee expenses of $300,474.62 charged to JND for the costs assessed by nominees in connection with providing notice of the Settlement. To date, JND has been paid $1,459,208.04. JND anticipates that its fees and expenses for the work to be performed in conjunction with the initial distribution of the Net Settlement Fund will be $42,747.69.  *See* Exhibit F.  If this estimate of fees and expenses to conduct the initial distribution is greater than the actual cost to conduct the distribution, the excess will be returned to the Net Settlement Fund.

## DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

47.    Should the Court concur with JND's determinations concerning the provisionally accepted and rejected Claims, including the Late But Otherwise Eligible Claims, JND recommends the following distribution plan (the "Distribution Plan"):

(a)    JND will conduct an initial distribution (the "Initial Distribution") of the Net Settlement Fund, after deducting all payments approved by the Court, and after payment of any Taxes, the costs of preparing appropriate tax returns and any escrow fees, while maintaining a 5% reserve (the "Reserve") to address any tax liability and claims administration-related contingencies that may arise, including paying amounts resulting from adjustments to Claims received on or before July

6, 2023 for good cause shown, as follows:

(i)    JND will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Fund were to be distributed now.  In accordance with the Court-approved Plan of Allocation, JND will calculate each Authorized Claimant's *pro rata* share of the Net Settlement Fund in accordance with the Court-approved Plan of Allocation.

(ii)    JND will, pursuant to the terms of the Plan of Allocation, eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00. These Claimants will not receive any payment from the Net Settlement Fund and JND will send notifications to those Authorized Claimants advising them of that fact.

(iii)    After eliminating Authorized Claimants who would receive less than $10.00, JND will deduct the Reserve from the Net Settlement Fund.  The remaining Authorized Claimants' *pro rata* distribution amounts will be calculated by dividing the total updated Net Settlement Fund by the Recognized Claims of all remaining Authorized Claimants.

(iv)    JND will then conduct the Initial Distribution of the Net Settlement Fund in accordance with the Court's order.

(b)    In order to encourage Authorized Claimants to promptly deposit their

-21-

payments, all distribution checks will bear a notation: "CASH PROMPTLY.   VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY 90 DAYS AFTER ISSUE DATE."[2]

(c)    Authorized Claimants that do not cash their Initial Distribution checks within the time allotted or on the conditions set forth in footnote 2 will irrevocably forfeit all recovery from the Settlement.   The funds allocated to all such stale-dated checks will be available to be redistributed to other Authorized Claimants if Co-Lead Counsel, in consultation with JND, determine that it is cost-effective to conduct a second distribution.   Similarly, Authorized Claimants that do not cash their second or subsequent distribution checks (should such

---

[2]   For Authorized Claimants whose checks are returned as undeliverable, JND will endeavor to locate new addresses by running the undeliverable addresses through address-lookup services.   Where a new address is located, JND will update the database accordingly and reissue a distribution check to the Authorized Claimant at the new address.   In the event an Authorized Claimant loses or damages his, her or its check, or otherwise requires a new check, JND will issue replacements.   Distribution reissues will be undertaken only upon written instructions from the Authorized Claimant, provided that the Authorized Claimant returns the previous check where appropriate.   For all checks, JND will void the initial payment prior to reissuing a payment.   In order not to delay further distributions to Authorized Claimants that have timely cashed their checks, JND's outreach program, described in the preceding sentences, shall end 30 days after the initial void date.   Authorized Claimants will be informed that, if they do not cash their Initial Distribution checks within 90 days of the mail date, or they do not cash reissued checks within 30 days of the mailing of such reissued check, their check will lapse, their entitlement to recovery will be irrevocably forfeited and the funds will be reallocated to other Authorized Claimants.   Reissue requests for lost or damaged checks will be granted after the void date on the checks as long as the request for the reissue is received no later than 45 days prior to the next planned distribution.   Requests for reissued checks in connection with any subsequent distributions (should such distributions occur) will be handled in the same manner.

distributions occur) within the time allotted or on the conditions set forth in footnote 2 will irrevocably forfeit any further recovery from the Net Settlement Fund.

(d)     Consistent with the Court-approved Plan of Allocation, after JND has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, which efforts shall consist of the follow-up efforts described in footnote 2, but not earlier than six (6) months after the Initial Distribution, JND will, if Co-Lead Counsel, in consultation with JND, determine that it is cost-effective to do so, conduct a second distribution of the Net Settlement Fund (the "Second Distribution"). Any residual funds remaining in the Net Settlement Fund after the Initial Distribution (i.e., the funds for all void stale-dated checks), including the Reserve to the extent not depleted, after deducting any outstanding Notice and Administration Expenses (including JND's estimated costs of the Second Distribution), and after deducting the payment of any Taxes, the costs of preparing appropriate tax returns and any escrow fees, will be distributed to all Authorized Claimants that cashed their first distribution check and that would receive at least $10.00 from such distribution based on their *pro rata* share of the remaining funds. Additional distributions, after deduction of costs and expenses as described above and subject to the same conditions, may occur until Co-Lead Counsel, in consultation with JND, determine that further

-23-

distribution is not cost-effective.

(e)  At such time as Co-Lead Counsel, in consultation with JND, determine that further distribution of the funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance of the Net Settlement Fund, after payment of any unpaid Notice and Administration Expenses and after the payment of any Taxes, the costs of preparing appropriate tax returns and any escrow fees, will be contributed to the American Red Cross, a non-sectarian, not-for-profit charitable organization serving the public interest designated by Lead Plaintiffs and subject to approval by the Court.

(f)  No new Claims may be accepted after July 6, 2023, and no further adjustments to Claims received on or before July 6, 2023 may be made after July 6, 2023, except for good cause shown.

(g)  Unless otherwise ordered by the Court, one year after the Second Distribution, if that occurs, or, if there is no Second Distribution, two years after the Initial Distribution, JND may destroy the paper copies of the Claim Forms and all supporting documentation, and one year after all funds have been distributed, JND may destroy electronic copies of the same.

## CONCLUSION

48.   JND respectfully requests that the Court enter an Order approving its administrative determinations accepting and rejecting the Claims submitted in the Settlement and approving the proposed Distribution Plan.  JND further respectfully submits that its initial distribution estimate, as outlined in paragraph 46 and reflected on the estimate attached hereto as Exhibit F, should be approved for payment from the Settlement Fund.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in New Hyde Park, New York, on August 9, 2023.

_____
Luiggy Segura